# EXHIBIT 20

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| FIRST BRANDS GROUP, LLC, *et al.*, | ) | Case No. 25-90399 (CML) |
| Debtors.[1] | ) | Jointly Administered |
| EVOLUTION CREDIT OPPORTUNITY MASTER FUND II-B, L.P., | ) | Adversary. No. 25-03800 |
| Plaintiff, | ) | |
| -against- | ) | |
| FIRST BRANDS GROUP, LLC; FIRST BRANDS GROUP INTERMEDIATE, LLC; PATTERSON INVENTORY HOLDINGS, LLC; PATTERSON INVENTORY, LLC; STARLIGHT INVENTORY HOLDINGS I, LLC; STARLIGHT INVENTORY I, LLC; TRICO LIMITED; TRICO BELGIUM SA; BRAKE PARTS INC LLC; BANK OF AMERICA, N.A.; WILMINGTON SAVINGS FUND SOCIETY, FSB; and GLAS USA LLC, | ) | |
| Defendants. | ) | |

**JOINT MOTION OF EVOLUTION AND SPV DEBTORS' TRUSTEE RONALD J. SOMMERS FOR AN ORDER AMENDING THE CASE CAPTION AND AUTHORIZING THE FILING OF A SECOND AMENDED COMPLAINT**

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Evolution Credit Opportunity Master Fund II-B, L.P. ("Evolution") and Ronald J. Sommers, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estates of Patterson Inventory Holdings, LLC, Patterson Inventory, LLC, Starlight Inventory Holdings I, LLC, and Starlight Inventory I, LLC (collectively, the "SPV Debtors"), jointly submit this motion (the "Motion") pursuant to Rule 7015 of the Federal Rules of Bankruptcy Procedure for entry of an order (a) amending the case caption; and (b) authorizing the filing of a Second Amended Complaint, substantially in the form attached hereto as **Exhibit A** (the "Second Amended Complaint"), which (i) realigns the SPV Debtors, currently named as defendants, as plaintiffs; (ii) adds the Trustee as a plaintiff; and (iii) makes certain other minor, non-substantive changes to the allegations of the First Amended Complaint [Docket No. 9] to conform to the realignment, as reflected in the redline comparison attached hereto as **Exhibit B**. In support of this Motion, Evolution and the Trustee respectfully state as follows:

## PRELIMINARY STATEMENT

1. Evolution and the Trustee should not have been forced to file this Motion. Evolution's operative complaint (the "First Amended Complaint") already seeks a declaration that the SPV Debtors "own the Collateral," which comprises inventory and the proceeds of sales of such inventory at warehouses located in City of Industry, CA, Patterson, CA, and McHenry, IL (collectively, the "Warehouses"). *See* Docket No. 9 ¶¶ 2, 32, 78. When Evolution filed the First Amended Complaint, the SPV Debtors were still Chapter 11 Debtors, and the Trustee had not yet been appointed. Since then, the SPV Debtors have converted into Chapter 7 cases, and the Trustee has been appointed. The Trustee agrees that the SPV Debtors own the Collateral and intends to participate in this proceeding (the "Adversary Proceeding") on behalf of the SPV Debtors—as is

the Trustee's right under Bankruptcy Rule 6009—to prove the SPV Debtors' ownership of the Collateral.[2]

2. The only remaining step is to realign the SPV Debtors as plaintiffs and make non-substantive, conforming edits to the First Amended Complaint that do not impact the pending motions to dismiss or otherwise prejudice any party.

3. Despite this, the remaining Defendants—the FBG Debtors, the ABL Lenders, and the 1L and 2L Lenders—have refused to consent, electing to force a motion for leave to amend, which is "freely give[n]." Fed. R. Civ. P. 15(a)(2).

4. Accordingly, Evolution and the Trustee jointly move pursuant to Rule 15 of the Federal Rules of Civil Procedure, applicable to this Adversary Proceeding under Bankruptcy Rule 7015, for entry of an order, substantially in the form of the proposed order attached hereto (the "Proposed Order"), amending the case caption and authorizing the filing of the Second Amended Complaint as set forth herein.

## I. THE COURT SHOULD GRANT LEAVE TO AMEND

5. Rule 15(a) allows a party to amend its pleading by leave of court and directs that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fifth Circuit has explained that this mandate to freely grant leave "is to be heeded," and there is "bias in favor of granting leave to amend." *Calhoun v. Collier*, 78 F.4th 846, 854 (5th Cir. 2023) (citations omitted). Thus, unless there is "a substantial reason to deny leave to amend"—*i.e.*, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

---

[2] Bankruptcy Rule 6009 gives the Trustee the right, "[w]ith or without court approval," to "prosecute—or appear in and defend—any pending action or proceeding by or against the debtor," or to prosecute "an action or proceeding on the estate's behalf." Fed. R. Bankr. P. 6009. The SPV Debtors are parties to this Adversary Proceeding, so the Trustee has a right to appear on their behalf. *See also* 11 U.S.C. § 323(a) (providing that the trustee "is the representative of the estate").

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."—then the party's request for leave to amend "should, as the rules require, be 'freely given'" and the court's discretion "is not broad enough to permit denial." *Id.* (citations omitted).

6. Moreover, courts "enjoy the discretion to realign parties as necessary, according to their actual interests in the litigation." *In re Imel*, 169 B.R. 37, 38-39 (Bankr. W.D. Tex. 1994) (granting motion to realign parties); *see also Nelson v. Allstate Vehicle & Prop. Ins. Co.*, 2026 WL 1558382, at *3 (N.D. Miss. June 2, 2026) ("Courts within this district have consistently recognized that realignment is the appropriate procedural mechanism to ensure that party designations accurately reflect the parties' true interests in the litigation."). Indeed, federal courts "have a duty to ensure that parties are properly aligned" and "must determine whether there is a 'collision of interest' between the parties in question" when deciding whether parties should be realigned. *GuideOne Specialty Mut. Ins. Co. v. Missionary Church of Disciples of Jesus Christ*, 687 F.3d 676, 681 n.2 (5th Cir. 2012).

7. Here, the Court should grant leave to allow the filing of the proposed Second Amended Complaint and realign the parties to properly reflect their interests in this Adversary Proceeding.

8. *First*, the Trustee wishes to appear in this Adversary Proceeding on behalf of the SPV Debtors (which the Trustee has the unqualified right to do under Bankruptcy Rule 6009), and the remaining Defendants consent to the Trustee's participation on behalf of the SPV Debtors. The operative complaint should accurately reflect this.

9. *Second*, the Trustee and SPV Debtors' interests are aligned with Evolution's request for a declaratory judgment that the SPV Debtors "respectively own the Collateral," *see*

Docket No. 9 ¶ 78, and that request for a declaratory judgment is adverse to the interests of the remaining Defendants in the action. Thus, the Trustee and SPV Debtors should be listed as plaintiffs both in the complaint and in the case caption of this Adversary Proceeding.

10. *Finally*, there is no "substantial reason" to deny this request for leave to amend. *See Calhoun*, 78 F.4th at 854. There is no undue delay, bad faith, or dilatory motive. Defendants would also suffer no prejudice from the proposed amendment. Other than realigning the parties and making a few other minor, non-substantive changes to reflect such realignment, the proposed Second Amended Complaint is identical to the First Amended Complaint. There are no new substantive claims or factual allegations requiring a response from Defendants. Thus, although Defendants already have pending motions to dismiss the First Amended Complaint [Docket Nos. 27, 32, 33] ("Defendants' Motions to Dismiss"), the proposed Second Amended Complaint is not intended to, and should not, affect the arguments raised in, or otherwise impact, Defendants' Motions to Dismiss. Defendants' pending motions should simply apply to the Second Amended Complaint, with the following exceptions: (a) the SPV Debtors should be deemed to have withdrawn, solely with respect to them, the arguments raised in Defendants' Motions to Dismiss; (b) the SPV Debtors should cease to be defendants in the Adversary Proceeding, and any claims asserted against them in the First Amended Complaint should be deemed withdrawn; and (c) the Trustee and the SPV Debtors should be deemed to have joined the allegations asserted in the Second Amended Complaint. In other words, Defendants would not need to refile their motions to dismiss, and no deadlines in the case would need to be adjusted.

11. In the absence of any prejudice or other "substantial reason" to deny leave, *see Calhoun*, 78 F.4th at 854, the Court should grant leave to amend.

## II. THE COURT SHOULD AMEND THE CASE CAPTION

12. In connection with their request for leave to amend, Evolution and the Trustee also respectfully request that the Court amend the case caption to accurately reflect the parties' interests, as set forth herein. Federal courts "generally will allow an amendment under Rule 15 to correct technical defects in the caption when that is thought necessary." *Abecassis v. Wyatt*, 902 F. Supp. 2d 881, 911 (S.D. Tex. 2012) (quoting WRIGHT & MILLER, FED. PRACTICE & PROCEDURE § 1321 (3d ed. 2012)); *see also Brady v. IAT Ins. Grp.*, 2024 WL 1092907, at *1-2 (E.D. La. Mar. 13, 2024) (granting leave to file amended complaint and amend case caption).

13. Here, as set forth in the proposed Second Amended Complaint, the caption should be amended to (a) add the Trustee as a plaintiff, and (b) remove the SPV Debtors as defendants and add them as plaintiffs.

## NO PRIOR REQUEST

14. No previous motion or application for the relief sought herein has been made to this or any other court.

## CONCLUSION

15. For the foregoing reasons, Evolution and the Trustee respectfully request that the Court enter an order, substantially in the form of the Proposed Order filed contemporaneously herewith, authorizing the filing of the Second Amended Complaint and amending the case caption accordingly.

Respectfully submitted this 22nd day of July 2026,


**GRAY REED**

*/s/ Jason S. Brookner*
Jason S. Brookner
Texas Bar No. 24033684
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100
Email: jbrookner@grayreed.com

-and-

**PROSKAUER ROSE LLP**
Vincent Indelicato (admitted *pro hac vice*)
Matthew R. Koch (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036-8299
Telephone: (212) 969-3000
Facsimile:` (212) 969-2900
Email: vindelicato@proskauer.com
mkoch@proskauer.com

-and-

Charles A. Dale (admitted *pro hac vice*)
One International Plaza
Boston, MA 02110-2600
Telephone: (617) 526-9600
Email: cdale@proskauer.com

*Counsel to Evolution*

**JONES MURRAY LLP**

*/s/ Erin E. Jones*
Erin E. Jones
Chris R. Murray
602 Sawyer, Suite 400
Houston, Texas 77007
Telephone: (832) 529-1999
Facsimile: (832) 529-3393
Email: erin.jones@jonesmurray.com
chris@jonesmurray.com

*Counsel for Ronald J. Sommers, Chapter 7 Trustee for the SPV Debtors*

-and-

**ELSBERG BAKER & MARURI PLLC**
David Elsberg (admitted *pro hac vice*)
Michael Duke (admitted *pro hac vice*)
Vivek Tata (admitted *pro hac vice*)
Andrew Parks (admitted *pro hac vice*)
Ella Epstein (admitted *pro hac vice*)
350 Fifth Avenue, 38th Floor
New York, NY 10018
Telephone: (212) 597-2600
Email: delsberg@elsberglaw.com
mduke@elsberglaw.com
vtata@elsberglaw.com
aparks@elsberglaw.com
eepstein@elsberglaw.com

*Special Litigation Counsel for Ronald J. Sommers, Chapter 7 Trustee for the SPV Debtors*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of July, 2026, the undersigned caused a true and correct copy of the foregoing Motion to be filed on the Court's CM/ECF system and served on all counsel of record registered in this Adversary Proceeding through CM/ECF.

*/s/ Erin E. Jones*
Erin E. Jones

**<u>Exhibit A</u>**

*Second Amended Complaint*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST BRANDS GROUP, LLC, *et al.*, | Case No. 25-90399 (CML) |
| Debtors.[1] | Jointly Administered |
| EVOLUTION CREDIT OPPORTUNITY MASTER FUND II-B, L.P.,; PATTERSON INVENTORY HOLDINGS, LLC; PATTERSON INVENTORY, LLC; STARLIGHT INVENTORY HOLDINGS I, LLC; STARLIGHT INVENTORY I, LLC; and RONALD J. SOMMERS, in his capacity as Chapter 7 Trustee for the SPV Debtors, | Adversary. No. 25-03800 |
| Plaintiffs, | |
| -against- | |
| FIRST BRANDS GROUP, LLC; FIRST BRANDS GROUP INTERMEDIATE, LLC; TRICO LIMITED; TRICO BELGIUM SA; BRAKE PARTS INC LLC; BANK OF AMERICA, N.A.; WILMINGTON SAVINGS FUND SOCIETY, FSB; and GLAS USA LLC, | |
| Defendants. | |

**SECOND AMENDED COMPLAINT**

Plaintiffs Evolution Credit Opportunity Master Fund II-B, L.P. (the "Evolution Inventory Lender") Starlight Inventory I, LLC (the "Starlight Borrower"); Starlight Inventory Holdings I, LLC (the "Starlight Parent"); Patterson Inventory, LLC (the "Patterson Borrower" and together with the Starlight Borrower, each a "Borrower" and together the "Borrowers"); Patterson

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Inventory Holdings, LLC (the "Patterson Parent" and together with the Starlight Parent, each a "Parent Holding Company" and together the "Parent Holding Companies," and together with the Borrowers, the "SPV Debtors"); and Ronald J. Sommers, in his capacity as Chapter 7 Trustee for the SPV Debtors (together with Evolution Inventory Lender and the SPV Debtors, "Plaintiffs"), for their Second Amended Complaint against Debtors First Brands Group, LLC; First Brands Group Intermediate, LLC; Brake Parts Inc LLC; Trico Limited, in its capacity as a borrower under the ABL Facility (defined below); and Trico Belgium SA, in its capacity as a borrower under the ABL Facility (collectively, the "FBG Debtors"); Bank of America, N.A., in its capacity as administrative agent and collateral agent for certain prepetition secured asset-based loan lenders (the "ABL Agent"); Wilmington Savings Fund Society, FSB, in its capacity as administrative agent and collateral agent for certain prepetition first lien term loan lenders (the "1L Term Loan Agent") and in its capacity as administrative agent and collateral agent for certain prepetition second lien term loan lenders (the "2L Term Loan Agent"); and GLAS USA LLC as administrative agent and collateral agent (the "Side Car Agent") for certain Side Car Loan lenders (the 1L Term Loan Agent, 2L Term Loan Agent, and Side Car Agent, collectively, the "Term Loan Agents," and together with FBG Debtors and ABL Agent, the "Defendants"), allege as follows:

## NATURE OF THE ACTION

1. One or more of the FBG Debtors and/or their affiliates formed the SPV Debtors as bankruptcy-remote special purpose vehicles to own and hold certain inventory as collateral security for loans made by the Evolution Inventory Lender.

2. Between November 2023 and March 2024, the Evolution Inventory Lender entered into a series of agreements with the SPV Debtors which provided for up to $300 million in advances to the Borrowers to be secured by perfected, first-priority security interests in all assets of the Borrowers, including then-owned and after-acquired inventory, accounts, deposit accounts,

and proceeds of each of the foregoing (all such property, the "Collateral"). The proceeds of the up-to-$300-million facility provided to the SPV Debtors were used to purchase inventory from certain of the FBG Debtors and to pay related costs and expenses.

3. Since the FBG Petition Date (defined below), the FBG Debtors have put forth different theories regarding what allegedly happened to the Collateral, all apparently to suggest (if not argue) that the Evolution Inventory Lender does not have perfected, first-priority liens against and security interests in the Collateral (or portions of the Collateral).

4. In the Moore Declaration (defined below), the FBG Debtors suggested that, before the FBG Petition Date, one or more of the FBG Debtors or their affiliates may have caused the SPV Debtors to transfer the Collateral to Debtor entities other than the SPV Debtors and improperly pledge the Evolution Inventory Lender's Collateral to certain other lenders, including the ABL Agent on behalf of the lenders under the ABL Facility (together with the ABL Agent and any other secured parties under the ABL Facility, the "ABL Secured Parties"). The FBG Debtors posited that this alleged transfer of the Collateral away from the SPV Debtors somehow eliminated the Evolution Inventory Lender's rights and liens.

5. In subsequent testimony, filings, and communications between counsel for the Evolution Inventory Lender and the FBG Debtors, the FBG Debtors have suggested other reasons why the Evolution Inventory Lender's liens may not extend to all or some of the Collateral as it existed on the FBG Petition Date or why the Collateral to which its liens originally attached was dissipated (and not replenished) prior to the FBG Petition Date. Based on these allegations, the priority of any asserted liens held by the Evolution Inventory Lender against the Collateral—which Collateral the Evolution Inventory Lender understood had been sold to the SPV Debtors—is arguably uncertain relative to the liens held by at least the ABL Agent and the Term Loan Agents.

6. The Evolution Inventory Lender now seeks a declaratory judgment that it has perfected, first-priority liens against and security interests in the Collateral as of the FBG Petition Date.

## JURISDICTION AND VENUE

7. This adversary proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to (i) determine the validity, priority, or extent of a lien or other interest in property, and (ii) obtain a declaratory judgment relating to the foregoing. Fed. R. Bankr. P. 7001(2), (9).

8. This adversary proceeding also constitutes a "Challenge"[2] to any competing lien or claim held by any creditor asserting a competing lien or claim against the Collateral.

9. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334. Pursuant to Bankruptcy Rule 7008 and Bankruptcy Local Rule 7008-1, the Evolution Inventory Lender consents to entry of final orders or judgment by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

10. This Court has jurisdiction over this action because it is a core proceeding under 28 U.S.C. § 157(b)(2) and also pursuant to 28 U.S.C. § 1334.

11. This adversary proceeding relates to the chapter 11 cases being jointly administered for procedural purposes under *In re First Brands Group, LLC*, Case No. 25-90399 (CML) (Bankr. S.D. Tex.) (the "Bankruptcy Cases"), which are pending in the United States Bankruptcy Court

---

[2] As such term is defined in the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (II) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 608] (the "Final DIP Order")

for the Southern District of Texas, Houston Division. Pursuant to Bankruptcy Rule 7008, Plaintiffs state that they consent to the entry of final orders and judgments by this Court.

12. Venue lies in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**THE PARTIES**

13. Evolution Inventory Lender is a Delaware limited partnership with a principal place of business in Boston, Massachusetts.

14. Patterson Inventory Holdings, LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases.

15. Patterson Inventory, LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases.

16. Starlight Inventory Holdings I, LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases.

17. Starlight Inventory I, LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases.

18. Ronald J. Sommers, in his capacity as the Chapter 7 Trustee for the bankruptcy estates of the SPV Debtors following the conversion of the SPV Debtors' proceedings under chapter 11 of the Bankruptcy Code to proceedings under chapter 7 of the Bankruptcy Code [Case No. 25-90399, Docket No. 2396], maintains an office at 1400 Post Oak Blvd., Suite 300, Houston, TX 77056.

19. First Brands Group, LLC is a Delaware limited liability company with a principal place of business in Cleveland, Ohio. First Brands Group, LLC was formerly known as Trico Group, LLC (a borrower under the Term Loans and ABL Facility).

20. First Brands Group, LLC; Starlight Borrower; Starlight Parent; Patterson Borrower; and Patterson Parent are all indirectly owned and controlled by the same corporate entity. *See* ECF 1 at Ex. A.

21. Bank of America, N.A. ("BofA") is a national banking association with a principal place of business in North Carolina. BofA is named in its capacity as administrative agent and collateral agent for prepetition secured ABL Secured Parties pursuant to that certain ABL Credit Agreement, dated as of February 2, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "ABL Facility").

22. Wilmington Savings Fund Society, FSB ("WSFS") is a bank incorporated and with a principal place of business in Delaware. WSFS is named in its capacity as the administrative agent and collateral agent for prepetition term loan lenders pursuant to that certain First Lien Term Loan Agreement, dated as of February 2, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "1L Term Loan") and also as administrative agent and collateral agent for prepetition term loan lenders pursuant to that certain Second Lien Term Loan Agreement dated as of February 26, 2019 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "2L Term Loan").

23. GLAS USA LLC ("GLAS") is a New Jersey limited liability company with a principal place of business in New Jersey. GLAS is named in its capacity as the administrative and collateral agent for certain prepetition side car term loan lenders pursuant to that certain First Lien Term Loan Agreement, dated as of June 16, 2025 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Side Car Loan"). The Side Car Loan, 1L Term Loan, and 2L Term Loan are referred to herein collectively as the "Term Loans."

24. First Brands Group Intermediate, LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases. First Brands Group Intermediate, LLC was formerly known as Trico Group Holdings, LLC (a borrower under the Term Loans and ABL Facility).

25. Brake Parts Inc LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases.

26. Trico Limited is a limited company incorporated under the laws of England and Wales. Trico Limited is a borrower under the ABL Facility.

27. Trico Belgium SA is a Belgian limited liability company incorporated under the laws of Belgium. Trico Belgium SA is a borrower under the ABL Facility.

## FACTUAL BACKGROUND

### A. The SPV Debtors and the Evolution Facilities

28. The FBG Debtors are in the business of supplying aftermarket automotive parts. In need of additional capital, one or more of the FBG Debtors or their affiliates caused the SPV Debtors to be created for the purpose of owning certain assets and pledging the same to lenders in exchange for new money financing.

29. To that end, in late 2023 and early 2024, the SPV Debtors entered into two structured inventory financing facilities: one dated November 9, 2023, and the other dated March 28, 2024.

30. Specifically, on November 9, 2023, Patterson Borrower entered into that certain *Uncommitted Inventory Finance Agreement* (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Patterson Facility") with the Evolution Inventory Lender. *See* **Exhibit A** (Patterson Inventory Finance Agreement).

31. On March 28, 2024, Starlight Borrower entered into that certain *Uncommitted Inventory Finance Agreement* (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Starlight Facility" and together with the Patterson Facility, the "Facilities") with the Evolution Inventory Lender. *See* **Exhibit B** (Starlight Inventory Finance Agreement).

32. Under the Facilities, the Evolution Inventory Lender provided uncommitted asset-based revolving credit facilities with maximum aggregate advances of (i) $150 million to Patterson Borrower and (ii) $150 million to Starlight Borrower.[3] Upon information and belief, the funds advanced under the Facilities were used to purchase inventory from one or more of the FBG Debtors and to pay related costs and expenses.

33. Under the Facilities, the Evolution Inventory Lender's Collateral consisted of then-owned and after-acquired inventory, accounts, deposit accounts, and proceeds of each of the foregoing. The Evolution Inventory Lender and the Borrowers entered into Waiver and Collateral Access Agreements and Administration Agreements wherein the parties agreed that the inventory Collateral would be stored in certain designated warehouses located at (i) 14528 Bonelli St., City of Industry, CA 91746; (ii) 2701 Keystone Pacific Pkwy, Suite 100 Patterson, CA 95363; (iii) 1100 Corporate Drive McHenry, IL 60050; and (iv) 1380 Corporate Drive McHenry, IL 60050 (collectively, the "Warehouses").

34. The Borrowers' obligations under the Facilities are (i) guaranteed by their respective Parent Holding Company; (ii) secured by pledges of 100% of the equity of each Borrower by its respective Parent Holding Company; and (iii) secured by a first-priority lien on

[3] As of the SPV Petition Date (defined below), more than $110 million in total principal amount of obligations were outstanding under the Starlight Facility, and more than $120 million in total principal amount of obligations were outstanding under the Patterson Facility.

the Collateral, including all assets of the Borrowers (including inventory, accounts, deposit accounts, and proceeds of the foregoing), pursuant to security agreements and deposit account control agreements executed in connection with each Facility. *See* **Exhibit E** (Patterson Guaranty); **Exhibit F** (Starlight Guaranty); **Exhibit G** (Patterson Pledge Agreement); **Exhibit H** (Starlight Pledge Agreement); **Exhibit I** (Patterson Security Agreement); **Exhibit J** (Starlight Security Agreement) (Exhibits I–J, each a "Security Agreement," and collectively the "Security Agreements"); **Exhibit K** (Patterson Deposit Account Control Agreement; **Exhibit L** (Starlight Deposit Account Control Agreement). The Borrowers further "unconditionally promise[d]" to repay to the Evolution Inventory Lender the outstanding principal owed under the Facilities on applicable maturity dates. *See* **Exhibit A** § 2.5(a); **Exhibit B** § 2.5(a).

35. The obligations of the Borrower under each Facility are further evidenced by a separate Revolving Credit Note executed in favor of the Evolution Inventory Lender and governed by the applicable Facility. *See* **Exhibit C** (Patterson Promissory Note); **Exhibit D** (Revolving Credit Note).

36. In each Security Agreement, the Borrowers represented there were no other liens on the Collateral (other than permitted exceptions that are not relevant here), represented there were no other financing statements of record against the Collateral (other than permitted exceptions that are not relevant here), and covenanted not to authorize any other financing statements. *See* **Exhibits I–J**, §§ 3(b)–(c); *see also* **Exhibits A–B**, § 6.2.

37. The Evolution Inventory Lender filed UCC-1 Financing Statements on November 9, 2023, and March 28, 2024, perfecting (i) the Evolution Inventory Lender's security interests in the Borrowers' assets; and (ii) the Evolution Inventory Lender's security interests in

the pledge of 100% of the Borrowers' equity. *See* **Exhibits O–Q** (Patterson UCC-1 Evidence); **Exhibit R–T** (Starlight UCC-1 Evidence).

38. Each Borrower was organized as a bankruptcy-remote special purpose vehicle for the limited purpose of purchasing finished goods inventory from First Brands Group, LLC and its affiliates from time to time pursuant to a Master Origin Sale and Exchange Agreement. The Master Origin Sale and Exchange Agreement related to Patterson Borrower was made and entered into on November 9, 2023 (the "Patterson Sale Agreement") and the Master Origin Sale and Exchange Agreement related to Starlight Borrower was made and entered into on March 28, 2024 (together with the Patterson Sale Agreement, the "Sale Agreements"). *See* **Exhibits M** (Patterson) & **N** (Starlight). The Sale Agreements contemplated subsequent sales of inventory from the Borrowers to First Brands Group, LLC or its affiliates from time to time for the purpose of on-selling inventory to third party customers, and the replenishment of inventory through purchases from First Brands Group, LLC or its affiliates from time to time pursuant to subsequent closings under the Sale Agreements.

39. Upon information and belief, neither Borrower had any employees; pursuant to the Administration Agreements, First Brands Group, LLC acted as service administrator, and personnel of First Brands Group, LLC (or its affiliates) administered each Borrower's ordinary course operations and administration in connection with the inventory.

40. Under the Sale Agreements, First Brands Group, LLC sold designated finished goods inventory, meeting enumerated quality and title criteria, to the Borrowers "free and clear of any liens, security interests, or other encumbrances" to be held at approved warehouse locations exclusively leased by First Brands Group, LLC, in each case subject to the Evolution Inventory Lender's liens. *See* **Exhibits M–N**.

41. The Sale Agreements expressly state that each transfer was intended to be a "true, absolute and irrevocable sale," and, as backup protection if a court were to recharacterize the transaction as a secured loan, First Brands Group, LLC granted the Borrowers a first-priority security interest in the same assets and proceeds. *See* **Exhibits M–N**, § 9.

42. At the time of the initial closings under the Facilities, the Evolution Inventory Lender's Collateral consisted of the Borrowers' then-owned inventory, accounts, deposit accounts, and proceeds of each of the foregoing.

43. Upon information and belief, following the initial closings, Borrowers would, from time to time, replenish their finished goods inventory through purchases from First Brands Group, LLC or one or more of its subsidiaries in exchange for consideration provided in accordance with the Sale Agreements, to be stored in the designated, First Brands Group, LLC serviced Warehouses. *See* **Exhibit A–B; Exhibits M–N**. At all times the finished goods inventory was required to be held at the approved First Brands Group, LLC serviced Warehouses, subject to the Evolution Inventory Lender's first-priority liens. *Id.*

44. Upon information and belief, from time to time, the Borrowers satisfied the purchase price for new inventory (i) in cash with the proceeds of the Facilities; (ii) in cash with available funds of the Borrowers paid to or at the direction of First Brands Group, LLC and its affiliates; (iii) through exchanges-in-kind involving Borrower-owned inventory of equivalent value as contemplated by the Sale Agreements; and/or (iv) other contractually authorized forms of consideration as agreed by the parties. *See* **Exhibits A–B**, § 2.3(b); **Exhibits M–N.**

45. Upon information and belief, where cash was utilized, original loan proceeds and subsequent advances were delivered directly to First Brands Group, LLC or affiliated entities, and subsequent cash payments by the Borrowers to purchase inventory were paid to or at the direction

of First Brands Group, LLC or affiliated entities, in each case under the Sale Agreements. Upon information and belief, cash transfers were made from the Borrowers at the direction of First Brands Group, LLC or its affiliated entities and constituted payments to or for the benefit of First Brands Group, LLC and its affiliates for additional inventory actually delivered to (or kept in) the Warehouses and reflected on contemporaneous borrowing base certificates. Upon information and belief, all such payments were supported by borrowing base certificates identifying eligible inventory, certifying compliance with the Facilities, and evidencing that the purchased inventory satisfied the Sale Agreements' eligibility criteria, including that the seller conveyed good, valid, and marketable title free and clear of third-party liens, in each case subject only to the Evolution Inventory Lender's liens. *Id*.

46. In addition to the periodic borrowing base certificates received from the Borrowers, the Evolution Inventory Lender received independent auditor reports confirming the existence of the Borrowers' inventory. *See* **Exhibits A–B**, § 5.1 (reporting), § 5.8(c) (inventory counts; perpetual inventory system). This reporting and other monitoring showed indicated cash and inventory movement in and out of the Borrowers as contemplated by each Facility and the Sale Agreements.

47. Upon information and belief, at all relevant times the inventory constituting the Evolution Inventory Lender's Collateral remained at the approved Warehouses identified in the Waiver and Collateral Access Agreements for each Facility, was consistently accounted for, and was subject at all times to the Evolution Inventory Lender's perfected first-priority security interest.

48. The Evolution Inventory Lender, and the Borrowers as secured parties, filed UCC-1 Financing Statements against First Brands Group, LLC in respect of each Facility, documenting

the sale of the inventory and the Borrower's respective back up liens against all finished goods inventory of First Brands Group, LLC which First Brands Group, LLC sold or exchanged to the Borrowers, together with all income and proceeds thereof. *See* **Exhibits O–Q** (Patterson UCC-1 Evidence); **Exhibit R–T** (Starlight UCC-1 Evidence). The Parent Holding Companies further reaffirmed their obligations on March 24, 2025. *See* **Exhibit U** (Consent of Guarantor); **Exhibit V** (Consent of Guarantor).

49. First Brands Group, LLC also represented and warranted in Section 7(e) of each Sale Agreement that neither the execution nor delivery of the Sale Agreement nor the consummation of the transactions conflicted with or would result in a breach of any terms, conditions, provisions of, or constitute a default, event of default, acceleration, termination, or cancellation under, any contract material to the operation of the business of First Brands Group, LLC. **Exhibits M–N**.

50. Third-party legal opinions provided to the Evolution Inventory Lender by Borrowers' counsel further set forth that (i) each of the security interests in favor of the Evolution Inventory Lender were properly created, valid, and perfected by the filing of Uniform Commercial Code financing statements and (ii) each conveyance of inventory to the Borrowers constituted true sales of inventory from First Brands Group, LLC to the Borrowers.

51. The Borrowers from time to time obtained advances from the Evolution Inventory Lender against, and at all times maintained outstanding advances in accordance with, a "Borrowing Base"—a schedule outlining the eligible inventory serving as the Collateral for the Borrowing Request (defined below). The Borrowing Base was required to be comprised of eligible inventory acquired from First Brands Group, LLC under the Sale Agreements. Eligibility required that First

Brands Group, LLC as seller have "good, valid, and marketable title … free and clear of all Liens in favor of any third party." **<u>Exhibit M</u>** § 1(a); **<u>Exhibit N</u>** § 1(a).

52. The Evolution Inventory Lender's advances were secured by the purchased inventory and its proceeds, as well as other assets of the Borrowers. Prior to each advance, the Borrower was required to submit a "<u>Borrowing Request</u>", which outlined the total amount requested, attached a Borrowing Base, the schedule of eligible inventory including its book value, and in which the Borrower certified, represented, and warranted (i) that it remained in compliance with its obligations under the Facilities, (ii) the eligible inventory's value, and (iii) that the inventory had been acquired in accordance with the Sale Agreements.

53. In addition to the Borrowing Requests, the Borrower regularly certified, in borrowing base certificates, to the Evolution Inventory Lender that the information contained in the Borrowing Base was an accurate and true reflection of the Collateral's value and that the Collateral met the criteria for eligible inventory under the Facilities.

**B. Other Lenders**

54. As of the FBG Petition Date, the FBG Debtors' prepetition capital structure comprised multiple tranches of secured debt with differing lien priorities. Upon information and belief, under the ABL Facility, the ABL Secured Parties hold first-priority security interests in and liens on, *inter alia*, inventory, accounts and deposit accounts, certain cash collateral and substantially all proceeds, products accessions, rents and profits owned by the FBG Debtors, whether existing or after-acquired (collectively, the "<u>ABL Priority Collateral</u>"), as further described in that certain Amended and Restated Intercreditor Agreement Intercreditor Agreement, dated as of February 26, 2019 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "<u>ABL Intercreditor Agreement</u>"), and also hold a junior,

third-priority interest in the Term Priority Collateral (as defined below). Upon information and belief, under the 1L Term Loan and 2L Term Loan, respectively, the 1L Term Loan Agent, on behalf of the 1L Term Loan lenders, holds first-priority security interests in and liens on the Term Priority Collateral owned by the FBG Debtors (as defined in the ABL Intercreditor Agreement, the "Term Priority Collateral"), and a junior, second-priority interest in the ABL Priority Collateral, and the 2L Term Loan Agent, on behalf of the 2L Term Loan lenders, holds a junior, second-priority interest in the Term Priority Collateral and a junior, third-priority interest in the ABL Priority Collateral.

55. For emphasis and clarity, the Borrowers are not obligated under or subject to the ABL Facility, the 1L Term Loan, the 2L Term Loan, or the Side Car Loan, and upon information and belief the assets of the Borrowers are not included in the ABL Priority Collateral or the Term Priority Collateral.

**C. Allegations Concerning the Collateral**

56. On September 24, 2025 (the "SPV Petition Date"), the SPV Debtors each filed voluntary chapter 11 petitions.

57. On September 28, 2025 (the "FBG Petition Date"), the FBG Debtors each filed voluntary chapter 11 petitions.

58. In connection with the Evolution Inventory Lender's Collateral, the Debtors have put forth several different theories as to why the Evolution Inventory Lender may not have a perfected, first-priority security interest in the Collateral:

59. **First Day Assertions: Theft.** As part of their first-day filings, the Debtors' Chief Restructuring Officer testified that "the Evolution Borrowers [the SPV Debtors] collectively held approximately $376 million in inventory as of August 2, 2025", but that "certain inventory subject

to a security interest in favor of Evolution pursuant to the Evolution Facilities may have been commingled with collateral securing the ABL Facility." *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions*, ECF 22 ("Moore Declaration") ¶¶ 61, 95. Shortly prior to the FBG Petition Date, the Debtors informed the Evolution Inventory Lender that the FBG Debtors had transferred the Borrowers' assets to certain FBG Debtor entities and used those goods as collateral for additional borrowing under their ABL Facility.

60. Under this theory, the Debtors suggest that the ABL Agent has some interest in the Collateral, but the Debtors' purported theft of the Collateral does not supersede the Evolution Inventory Lender's perfected, first-priority security interest.

61. **Subsequent Assertion: Double Pledged After the Facilities.** The FBG Debtors subsequently advised that the Evolution Inventory Lender's Collateral may have been further pledged (*i.e.*, in addition to the ABL Agent and the Term Loan Agents) to support one or more of the FBG Debtors' loans from unnamed third-party lenders.

62. Under this theory, the FBG Debtors' fraudulent duplicative pledging of the Collateral does not supersede the Evolution Inventory Lender's perfected, first-priority security interest in the Collateral.

63. **Subsequent Assertion: Initially Invalid.** The FBG Debtors have also suggested the initial pledge of the Evolution Inventory Lender's Collateral may have been invalid. *See Declaration of Daniel Jerneycic*, ECF 812 ¶ 51. According to the Facilities' governing documents and the UCC-1 Financing Statements, this unclear suggestion that the Collateral was not validly pledged to the Evolution Inventory Lender in the first instance is without merit.

64. **Subsequent Assertion: Not Validly Replenished.** The FBG Debtors have also stated that "the assets utilized in [Evolution's] facilities was [sic] at some point included in the

asserted ABL … borrowing base or otherwise pledged under the ABL Facility and Term Loans." *Supplemental Declaration of Charles M. Moore in Support of DIP Motion*, ECF 22 ("Supplemental Declaration") ¶ 527.

65. In his Supplemental Declaration, Mr. Moore made multiple representations to suggest that the inventory comprising the Evolution Inventory Lender's Collateral was not adequately replenished from time to time through subsequent purchases by the Borrowers, and that the Collateral was dissipated and not validly replenished and thus is actually pledged to the ABL Facility. *See Supplemental Declaration* ¶ 24 (indicating that "the facts underlying [the SPV financing] transactions raise serious concerns and questions about whether certain SPV Lenders [including the Evolution Inventory Lender] have any collateral at all or if they do, what the status is of their liens relative to prepetition lenders."); ¶ 29 ("With respect to … Evolution, for example, the Debtors understand, based on discussions with the Company, an examination of records and email searches, the SPV Debtors and the FBG Debtors did not execute purchase agreements or similar transaction documents after the initial 'sale' to document transactions in respect of replacement inventory (i.e., inventory that would have replaced the inventory originally 'sold' by the FBG Debtor to the relevant SPV Debtor). Further, in many instances, the FBG Debtors' books and records do not show all the expected transactions between the relevant SPV Debtors and the FBG Debtors."); ¶ 30 ("After the alleged sale transactions, I further understand that, with possible exceptions, the inventory and PP&E remained on the FBG Debtors' books and records. In addition, the inventory and equipment also remained in the FBG Debtors' physical possession. Based on these facts, the priority and existence of any asserted lien held by Evolution … against the collateral allegedly sold to [its] SPV Debtor counterparty is subject to legitimate dispute relative to the liens held by at least the ABL Agent and Term Loan Agents (as well as the agent for the DIP

Lenders).”); ¶ 32 (“Given the lack of evidence that replacement inventory was purchased or was otherwise the property of the relevant SPV Debtors as of the Petition Date, I believe that there are legitimate questions about whether and to what extent (if any) the SPV Lenders have any lien or property interest in inventory or PP&E, given that they would have obtained their lien or interest through the SPV Debtors (which themselves may not have had any interests), not FBG Debtors.”); ¶ 34 (questioning whether the ABL Agent’s and Term Loan Agent’s respective liens on the Evolution inventory were released in the first instance.); ¶ 34 (“I understand that proper documentation is missing with respect to subsequent sales of inventory. Accordingly, even if Evolution had a valid first lien position on the inventory initially transferred, most of that inventory would have been sold or transferred out of the relevant SPV Debtor. Based on these facts, the priority of any asserted lien held by Evolution against the collateral allegedly sold to their respective SPV Debtor counterparty is uncertain relative to the liens held by at least the ABL Agent and the Term Loan Agents.)

66. Any purported duplicative pledging by the FBG Debtors of inventory that was purchased by and transferred to the Borrowers, pursuant to inventory sales permitted under the terms of the ABL Facility and the Term Loans, does not supersede or interfere with the Evolution Inventory Lender’s perfected, first-priority security interest in the Collateral.

67. As evidenced by the Sale Agreements, First Brands Group, LLC, by itself or through its affiliates, intended to sell (or, if recharacterized as a financing, to finance) inventory to the Borrowers from time to time, free and clear of the liens under the ABL Facility and Term Loans. The ABL Facility and Term Loan documentation provides for multiple alternative options for the disposition of inventory free and clear of liens, including through ordinary course sales, like-kind exchanges, and permitted inventory sales, among others.

68. Further, the Borrowers submitted borrowing base certificates and frequently certified that the Facilities were in good standing and that the Borrowers were in compliance with their respective obligations. In fact, in June 2025, only a few months prior to the Petition Date, the Borrowers submitted independent auditor's reports indicating that the Borrowers' inventory was in accord with the prior representations made by the Borrowers in connection with each advance.

69. In light of the foregoing, to the extent that the ABL Agent, 1L Term Loan Agent, 2L Term Loan Agent, or Side Car Agent claim to be the holder of a security interest in the Collateral that secures the Evolution Inventory Lender's claims, the Evolution Inventory Lender disputes that any party other than Evolution Inventory Lender has a valid claim against or lien upon the Collateral.

## **CLAIM FOR RELIEF**[4]

### **Declaratory Relief Pursuant to 28 U.S.C. § 2201**

70. The allegations contained in paragraphs 1 through 69 are adopted as if fully restated herein.

71. Pursuant to the Facilities, the Evolution Inventory Lender was granted first-priority security interests in the Collateral, free and clear of any liens in favor of the ABL Agent or the Term Loan Agents.

72. In return for those first-priority security interests in the Collateral, the Evolution Inventory Lender advanced approximately $230 million to the Borrowers, which was used by the Borrowers to purchase inventory from the FBG Debtors and to pay related costs and expenses.

---

[4] Plaintiffs reserve all rights to seek leave to amend this Complaint to add claims or causes of action, including damages claims against non-debtors, that may become known to Plaintiffs at any time during this adversary proceeding, through formal discovery or otherwise, and for such amendments to relate back to the filing of the original Complaint. Alternatively, Plaintiffs reserve the right to bring such claims in a separate action in an appropriate forum.

73. The Evolution Inventory Lender advanced the funds to the Borrowers in reliance upon (i) the provision of the first-priority security interests in the Collateral and (ii) Borrowers' representations and warranties, and third-party legal opinions from Borrowers' counsel that the Collateral was property of the Borrowers, not the FBG Debtors.

74. The Evolution Inventory Lender filed all necessary UCC financing statements to perfect its security interests in the Collateral, and those financing statements have not lapsed, nor been terminated or otherwise amended.

75. Any inventory that was purportedly transferred by Borrowers was made subject to the Evolution Inventory Lender's valid, perfected and first-priority lien. Upon information and belief, to the extent the inventory was subsequently dissipated, it was validly replenished such that the replacement inventory constitutes the Evolution Inventory Lender's Collateral and is subject to the Evolution Inventory Lender's valid, perfected, and first-priority lien.

76. Plaintiffs now seek a declaratory judgment pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001(9) for the purpose of determining and adjudicating questions of actual controversy between the parties.

77. A declaratory judgment is necessary and appropriate because there exists an actual case and controversy as to whether the Evolution Inventory Lender has a perfected, first-priority security interest in the Collateral and whether the Collateral was dissipated and not replenished, in whole or in part, before the commencement of these Bankruptcy Cases.

78. This Adversary Proceeding presents an actual controversy within the Court's jurisdiction.

79. Evolution Inventory Lender is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Evolution Inventory Lender has a perfected, first-priority lien and security interest in the Collateral.

80. Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Borrowers respectively own the Collateral, subject only to the first-priority, perfected lien and security interest in the Collateral held by the Evolution Inventory Lender.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that the Court enter judgment against Defendants, as follows:

(a) A declaratory judgment declaring that the Evolution Inventory Lender has a perfected, first-priority security interest in the Collateral, free and clear of any liens in favor of the ABL Agent or the Term Loan Agents;

(b) A declaratory judgment that the Borrowers respectively own the Collateral, subject only to the first-priority, perfected lien and security interest in the Collateral held by the Evolution Inventory Lender;

(c) Costs in bringing this action under Bankruptcy Rule 7054 and the Security Agreements § 3(p); and

(d) Such other and further relief as the Court may deem just and proper.

Respectfully submitted this 22nd day of July, 2026.

**GRAY REED**
By: /s/ *Jason S. Brookner*
Jason S. Brookner
Texas Bar No. 24033684
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100
Email: jbrookner@grayreed.com

- and -

**PROSKAUER ROSE LLP**
Vincent Indelicato (admitted *pro hac vice*)
Matthew R. Koch (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: vindelicato@proskauer.com
mkoch@proskauer.com

- and -

Charles A. Dale (admitted *pro hac vice*)
One International Plaza
Boston, MA 02110-2600
Telephone: (617) 526-9600
Email: cdale@proskauer.com

*Counsel to Evolution Inventory Lender*

**JONES MURRAY LLP**

/s/ *Erin E. Jones*
Erin E. Jones (24032478)
Christopher R. Murray (24081057)
602 Sawyer, Suite 400
Houston, Texas 77007
Telephone: (832) 529-1999
Email: erin@jonesmurray.com
chris@jonesmurray.com

-and-

**ELSBERG BAKER & MARURI PLLC**
David Elsberg
Michael Duke
Vivek Tata
Andrew Parks
Ella Epstein
350 Fifth Avenue, 38th Floor
New York, NY 10018
Telephone: (212) 597-2600
Email: delsberg@elsberglaw.com
mduke@elsberglaw.com
vtata@elsberglaw.com
aparks@elsberglaw.com
eepstein@elsberglaw.com

*Special Litigation Counsel for Ronald J. Sommers, Chapter 7 Trustee for the SPV Debtors*

**<u>Exhibit B</u>**

*Redline Comparison Between First Amended Complaint*

*and Proposed Second Amended Complaint*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST BRANDS GROUP, LLC, *et al.*, | Case No. 25-90399 (CML) |
| Debtors.[1] | Jointly Administered |
| ~~EVOLUTION CREDIT OPPORTUNITY MASTER FUND II-B, L.P.,~~ ~~Plaintiff,~~ ~~-against-~~ ~~FIRST BRANDS GROUP, LLC; FIRST BRANDS GROUP INTERMEDIATE, LLC~~EVOLUTION CREDIT OPPORTUNITY MASTER FUND II-B, L.P.,; PATTERSON INVENTORY HOLDINGS, LLC; PATTERSON INVENTORY, LLC; STARLIGHT INVENTORY HOLDINGS I, LLC; STARLIGHT INVENTORY I, LLC; and RONALD J. SOMMERS, in his capacity as Chapter 7 Trustee for the SPV Debtors, Plaintiffs, -against- FIRST BRANDS GROUP, LLC; FIRST BRANDS GROUP INTERMEDIATE, LLC; TRICO LIMITED; TRICO BELGIUM SA; BRAKE PARTS INC LLC; BANK OF AMERICA, N.A.; WILMINGTON SAVINGS FUND SOCIETY, FSB; and GLAS USA LLC, Defendants. | Adversary. No. 25-03800 |

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

**~~FIRST~~SECOND AMENDED COMPLAINT**

~~Plaintiff~~Plaintiffs Evolution Credit Opportunity Master Fund II-B, L.P. (the "Evolution Inventory Lender"~~ or "Plaintiff"), for its~~) Starlight Inventory I, LLC (the "Starlight Borrower"); Starlight Inventory Holdings I, LLC (the "Starlight Parent"); Patterson Inventory, LLC (the "Patterson Borrower" and together with the Starlight Borrower, each a "Borrower" and together the "Borrowers"); Patterson Inventory Holdings, LLC (the "Patterson Parent" and together with the Starlight Parent, each a "Parent Holding Company" and together the "Parent Holding Companies," and together with the Borrowers, the "SPV Debtors"); and Ronald J. Sommers, in his capacity as Chapter 7 Trustee for the SPV Debtors (together with Evolution Inventory Lender and the SPV Debtors, "Plaintiffs"), for their Second Amended Complaint against Debtors First Brands Group, LLC; First Brands Group Intermediate, LLC; ~~Patterson Inventory Holdings, LLC; Patterson Inventory, LLC; Starlight Inventory Holdings I, LLC; Starlight Inventory I, LLC;~~ Brake Parts Inc LLC~~ (collectively, the "Debtor Defendants")~~; Trico Limited, in its capacity as a borrower under the ABL Facility (defined below); and Trico Belgium SA, in its capacity as a borrower under the ABL Facility (collectively, the "FBG Debtors"); Bank of America, N.A., in its capacity as administrative agent and collateral agent for certain prepetition secured asset-based loan lenders (the "ABL Agent"); Wilmington Savings Fund Society, FSB, in its capacity as administrative agent and collateral agent for certain prepetition first lien term loan lenders (the "1L Term Loan Agent") and in its capacity as administrative agent and collateral agent for certain prepetition second lien term loan lenders (the "2L Term Loan Agent"); and GLAS USA LLC as administrative agent and collateral agent (the "Side Car Agent") for certain Side Car Loan lenders (the 1L Term Loan Agent, 2L Term Loan Agent, and Side Car Agent,

collectively, the "Term Loan Agents"), alleges," and together with FBG Debtors and ABL Agent, the "Defendants"), allege as follows:[2]

**NATURE OF THE ACTION**

1. One or more of the FBG Debtors and/or their affiliates formed the SPV Debtors as bankruptcy-remote special purpose vehicles to own and hold certain inventory as collateral security for loans made by the Evolution Inventory Lender.

2. Between November 2023 and March 2024, the Evolution Inventory Lender entered into a series of agreements with the SPV Debtors which provided for up to $300 million in advances to the Borrowers to be secured by perfected, first-priority security interests in all assets of the Borrowers, including then-owned and after-acquired inventory, accounts, deposit accounts, and proceeds of each of the foregoing (all such property, the "Collateral"). The proceeds of the up-to-$300-million facility provided to the SPV Debtors were used to purchase inventory from certain of the FBG Debtors and to pay related costs and expenses.

3. Since the FBG Petition Date (defined below), the FBG Debtors have put forth different theories regarding what allegedly happened to the Collateral, all apparently to suggest (if not argue) that the Evolution Inventory Lender does not have perfected, first-priority liens against and security interests in the Collateral (or portions of the Collateral).

[2] For the purposes of this complaint, unless otherwise defined, the following definitions will apply with respect to the Debtor Defendants: Starlight Inventory I, LLC (the "Starlight Borrower"); Starlight Inventory Holdings I, LLC (the "Starlight Parent"); Patterson Inventory, LLC (the "Patterson Borrower" and together with the Starlight Borrower, each a "Borrower" and together the "Borrowers"); Patterson Inventory Holdings, LLC (the "Patterson Parent" and together with the Starlight Parent, each a "Parent Holding Company" and together the "Parent Holding Companies," and together with the Borrowers, the "SPV Debtors"). The remaining Debtor Defendants are referred to as the "FBG Debtors").

4. In the Moore Declaration (defined below), the FBG Debtors suggested that, before the FBG Petition Date, one or more of the FBG Debtors or their affiliates may have caused the SPV Debtors to transfer the Collateral to Debtor entities other than the SPV Debtors and improperly pledge the Evolution Inventory Lender's Collateral to certain other lenders, including the ABL Agent on behalf of the lenders under the ABL Facility (together with the ABL Agent and any other secured parties under the ABL Facility, the "ABL Secured Parties"). The FBG Debtors posited that this alleged transfer of the Collateral away from the SPV Debtors somehow eliminated the Evolution Inventory Lender's rights and liens.

5. In subsequent testimony, filings, and communications between counsel for the Evolution Inventory Lender and the FBG Debtors, the FBG Debtors have suggested other reasons why the Evolution Inventory Lender's liens may not extend to all or some of the Collateral as it existed on the FBG Petition Date or why the Collateral to which its liens originally attached was dissipated (and not replenished) prior to the FBG Petition Date. Based on these allegations, the priority of any asserted liens held by the Evolution Inventory Lender against the Collateral—which Collateral the Evolution Inventory Lender understood had been sold to the SPV Debtors—is arguably uncertain relative to the liens held by at least the ABL Agent and the Term Loan Agents.

6. The Evolution Inventory Lender now seeks a declaratory judgment that it has perfected, first-priority liens against and security interests in the Collateral as of the FBG Petition Date.

## JURISDICTION AND VENUE

7. This adversary proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to (i) determine the validity, priority,

or extent of a lien or other interest in property, and (ii) obtain a declaratory judgment relating to the foregoing. Fed. R. Bankr. P. 7001(2), (9).

8. This adversary proceeding also constitutes a "Challenge"[32] to any competing lien or claim held by any creditor asserting a competing lien or claim against the Collateral.

9. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334. Pursuant to Bankruptcy Rule 7008 and Bankruptcy Local Rule 7008-1, the Evolution Inventory Lender consents to entry of final orders or judgment by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

10. This Court has jurisdiction over this action because it is a core proceeding under 28 U.S.C. § 157(b)(2) and also pursuant to 28 U.S.C. § 1334.

11. This adversary proceeding relates to the chapter 11 cases being jointly administered for procedural purposes under *In re First Brands Group, LLC*, Case No. 25-90399 (CML) (Bankr. S.D. Tex.) (the "Bankruptcy Cases"), which are pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. Pursuant to Bankruptcy Rule 7008, ~~Plaintiff states that it consents~~Plaintiffs state that they consent to the entry of final orders and judgments by this Court.

12. Venue lies in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

[32] As such term is defined in the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (II) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 608] (the "Final DIP Order")

**THE PARTIES**

13. ~~Plaintiff~~Evolution Inventory Lender is a Delaware limited partnership with a principal place of business in Boston, Massachusetts.

~~14. Defendant First Brands Group, LLC is a Delaware limited liability company with a principal place of business in Cleveland, Ohio. First Brands Group, LLC was formerly known as Trico Group, LLC (a borrower under the Term Loans and ABL Facility).~~

14. ~~15.~~ Patterson Inventory Holdings, LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases.

15. ~~16.~~ Patterson Inventory, LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases.

16. ~~17.~~ Starlight Inventory Holdings I, LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases.

17. ~~18.~~ Starlight Inventory I, LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases.

18. Ronald J. Sommers, in his capacity as the Chapter 7 Trustee for the bankruptcy estates of the SPV Debtors following the conversion of the SPV Debtors' proceedings under chapter 11 of the Bankruptcy Code to proceedings under chapter 7 of the Bankruptcy Code [Case No. 25-90399, Docket No. 2396], maintains an office at 1400 Post Oak Blvd., Suite 300, Houston, TX 77056.

19. First Brands Group, LLC is a Delaware limited liability company with a principal place of business in Cleveland, Ohio. First Brands Group, LLC was formerly known as Trico Group, LLC (a borrower under the Term Loans and ABL Facility).

20. ~~19.~~ First Brands Group, LLC; Starlight Borrower; Starlight Parent; Patterson Borrower; and Patterson Parent are all indirectly owned and controlled by the same corporate entity. *See* ECF 1 at Ex. A.

21. ~~20.~~ Bank of America, N.A. ("BofA") is a national banking association with a principal place of business in North Carolina. BofA is named in its capacity as administrative agent and collateral agent for prepetition secured ABL Secured Parties pursuant to that certain ABL Credit Agreement, dated as of February 2, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "ABL Facility").

22. ~~21.~~ Wilmington Savings Fund Society, FSB ("WSFS") is a bank incorporated and with a principal place of business in Delaware. WSFS is named in its capacity as the administrative agent and collateral agent for prepetition term loan lenders pursuant to that certain First Lien Term Loan Agreement, dated as of February 2, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "1L Term Loan") and also as administrative agent and collateral agent for prepetition term loan lenders pursuant to that certain Second Lien Term Loan Agreement dated as of February 26, 2019 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "2L Term Loan").

23. ~~22.~~ GLAS USA LLC ("GLAS") is a New Jersey limited liability company with a principal place of business in New Jersey. GLAS is named in its capacity as the administrative and collateral agent for certain prepetition side car term loan lenders pursuant to that certain First Lien Term Loan Agreement, dated as of June 16, 2025 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Side Car Loan"). The Side

Car Loan, 1L Term Loan, and 2L Term Loan are referred to herein collectively as the "Term Loans."

24. ~~23.~~ First Brands Group Intermediate, LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases. First Brands Group Intermediate, LLC was formerly known as Trico Group Holdings, LLC (a borrower under the Term Loans and ABL Facility).

25. ~~24.~~ Brake Parts Inc LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases.

26. ~~25.~~ Trico Limited is a limited company incorporated under the laws of England and Wales. Trico Limited is a borrower under the ABL Facility.

27. ~~26.~~ Trico Belgium SA is a Belgian limited liability company incorporated under the laws of Belgium. Trico Belgium SA is a borrower under the ABL Facility.

## FACTUAL BACKGROUND

### A. The SPV Debtors and the Evolution Facilities

28. ~~27.~~ The FBG Debtors are in the business of supplying aftermarket automotive parts. In need of additional capital, one or more of the FBG Debtors or their affiliates caused the SPV Debtors to be created for the purpose of owning certain assets and pledging the same to lenders in exchange for new money financing.

29. ~~28.~~ To that end, in late 2023 and early 2024, the SPV Debtors entered into two structured inventory financing facilities: one dated November 9, 2023, and the other dated March 28, 2024.

30. ~~29.~~ Specifically, on November 9, 2023, Patterson Borrower entered into that certain *Uncommitted Inventory Finance Agreement* (as may be amended, restated, amended and

restated, supplemented or otherwise modified from time to time, the "Patterson Facility") with the Evolution Inventory Lender. *See* **Exhibit A** (Patterson Inventory Finance Agreement).

31. ~~30.~~ On March 28, 2024, Starlight Borrower entered into that certain *Uncommitted Inventory Finance Agreement* (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Starlight Facility" and together with the Patterson Facility, the "Facilities") with the Evolution Inventory Lender. *See* **Exhibit B** (Starlight Inventory Finance Agreement).

32. ~~31.~~ Under the Facilities, the Evolution Inventory Lender provided uncommitted asset-based revolving credit facilities with maximum aggregate advances of (i) $150 million to Patterson Borrower and (ii) $150 million to Starlight Borrower.[43] Upon information and belief, the funds advanced under the Facilities were used to purchase inventory from one or more of the FBG Debtors and to pay related costs and expenses.

33. ~~32.~~ Under the Facilities, the Evolution Inventory Lender's Collateral consisted of then-owned and after-acquired inventory, accounts, deposit accounts, and proceeds of each of the foregoing. The Evolution Inventory Lender and the Borrowers entered into Waiver and Collateral Access Agreements and Administration Agreements wherein the parties agreed that the inventory Collateral would be stored in certain designated warehouses located at (i) 14528 Bonelli St., City of Industry, CA 91746; (ii) 2701 Keystone Pacific Pkwy, Suite 100 Patterson, CA 95363; (iii) 1100 Corporate Drive McHenry, IL 60050; and (iv) 1380 Corporate Drive McHenry, IL 60050 (collectively, the "Warehouses").

[43] As of the SPV Petition Date (defined below), more than $110 million in total principal amount of obligations were outstanding under the Starlight Facility, and more than $120 million in total principal amount of obligations were outstanding under the Patterson Facility.

34. ~~33.~~ The Borrowers' obligations under the Facilities are (i) guaranteed by their respective Parent Holding Company; (ii) secured by pledges of 100% of the equity of each Borrower by its respective Parent Holding Company; and (iii) secured by a first-priority lien on the Collateral, including all assets of the Borrowers (including inventory, accounts, deposit accounts, and proceeds of the foregoing), pursuant to security agreements and deposit account control agreements executed in connection with each Facility. *See* **Exhibit E** (Patterson Guaranty); **Exhibit F** (Starlight Guaranty); **Exhibit G** (Patterson Pledge Agreement); **Exhibit H** (Starlight Pledge Agreement); **Exhibit I** (Patterson Security Agreement); **Exhibit J** (Starlight Security Agreement) (Exhibits I–J, each a "Security Agreement," and collectively the "Security Agreements"); **Exhibit K** (Patterson Deposit Account Control Agreement; **Exhibit L** (Starlight Deposit Account Control Agreement). The Borrowers further "unconditionally promise[d]" to repay to the Evolution Inventory Lender the outstanding principal owed under the Facilities on applicable maturity dates. *See* **Exhibit A** § 2.5(a); **Exhibit B** § 2.5(a).

35. ~~34.~~ The obligations of the Borrower under each Facility are further evidenced by a separate Revolving Credit Note executed in favor of the Evolution Inventory Lender and governed by the applicable Facility. *See* **Exhibit C** (Patterson Promissory Note); **Exhibit D** (Revolving Credit Note).

36. ~~35.~~ In each Security Agreement, the Borrowers represented there were no other liens on the Collateral (other than permitted exceptions that are not relevant here), represented there were no other financing statements of record against the Collateral (other than permitted exceptions that are not relevant here), and covenanted not to authorize any other financing statements. *See* **Exhibits I–J**, §§ 3(b)–(c); *see also* **Exhibits A–B**, § 6.2.

37. ~~36.~~ The Evolution Inventory Lender filed UCC-1 Financing Statements on November 9, 2023, and March 28, 2024, perfecting (i) the Evolution Inventory Lender's security interests in the Borrowers' assets; and (ii) the Evolution Inventory Lender's security interests in the pledge of 100% of the Borrowers' equity. *See* **Exhibits O–Q** (Patterson UCC-1 Evidence); **Exhibit R–T** (Starlight UCC-1 Evidence).

38. ~~37.~~ Each Borrower was organized as a bankruptcy-remote special purpose vehicle for the limited purpose of purchasing finished goods inventory from First Brands Group, LLC and its affiliates from time to time pursuant to a Master Origin Sale and Exchange Agreement. The Master Origin Sale and Exchange Agreement related to Patterson Borrower was made and entered into on November 9, 2023 (the "Patterson Sale Agreement") and the Master Origin Sale and Exchange Agreement related to Starlight Borrower was made and entered into on March 28, 2024 (together with the Patterson Sale Agreement, the "Sale Agreements"). *See* **Exhibits M** (Patterson) & **N** (Starlight). The Sale Agreements contemplated subsequent sales of inventory from the Borrowers to First Brands Group, LLC or its affiliates from time to time for the purpose of on-selling inventory to third party customers, and the replenishment of inventory through purchases from First Brands Group, LLC or its affiliates from time to time pursuant to subsequent closings under the Sale Agreements.

39. ~~38.~~ Upon information and belief, neither Borrower had any employees; pursuant to the Administration Agreements, First Brands Group, LLC acted as service administrator, and personnel of First Brands Group, LLC (or its affiliates) administered each Borrower's ordinary course operations and administration in connection with the inventory.

40. ~~39.~~ Under the Sale Agreements, First Brands Group, LLC sold designated finished goods inventory, meeting enumerated quality and title criteria, to the Borrowers "free

and clear of any liens, security interests, or other encumbrances" to be held at approved warehouse locations exclusively leased by First Brands Group, LLC, in each case subject to the Evolution Inventory Lender's liens. *See* **Exhibits M–N**.

41. ~~40.~~ The Sale Agreements expressly state that each transfer was intended to be a "true, absolute and irrevocable sale," and, as backup protection if a court were to recharacterize the transaction as a secured loan, First Brands Group, LLC granted the Borrowers a first-priority security interest in the same assets and proceeds. *See* **Exhibits M–N**, § 9.

42. ~~41.~~ At the time of the initial closings under the Facilities, the Evolution Inventory Lender's Collateral consisted of the Borrowers' then-owned inventory, accounts, deposit accounts, and proceeds of each of the foregoing.

43. ~~42.~~ Upon information and belief, following the initial closings, Borrowers would, from time to time, replenish their finished goods inventory through purchases from First Brands Group, LLC or one or more of its subsidiaries in exchange for consideration provided in accordance with the Sale Agreements, to be stored in the designated, First Brands Group, LLC serviced Warehouses. *See* **Exhibit A–B; Exhibits M–N**. At all times the finished goods inventory was required to be held at the approved First Brands Group, LLC serviced Warehouses, subject to the Evolution Inventory Lender's first-priority liens. *Id.*

44. ~~43.~~ Upon information and belief, from time to time, the Borrowers satisfied the purchase price for new inventory (i) in cash with the proceeds of the Facilities; (ii) in cash with available funds of the Borrowers paid to or at the direction of First Brands Group, LLC and its affiliates; (iii) through exchanges-in-kind involving Borrower-owned inventory of equivalent value as contemplated by the Sale Agreements; and/or (iv) other contractually authorized forms of consideration as agreed by the parties. *See* **Exhibits A–B**, § 2.3(b); **Exhibits M–N.**

45. ~~44.~~ Upon information and belief, where cash was utilized, original loan proceeds and subsequent advances were delivered directly to First Brands Group, LLC or affiliated entities, and subsequent cash payments by the Borrowers to purchase inventory were paid to or at the direction of First Brands Group, LLC or affiliated entities, in each case under the Sale Agreements. Upon information and belief, cash transfers were made from the Borrowers at the direction of First Brands Group, LLC or its affiliated entities and constituted payments to or for the benefit of First Brands Group, LLC and its affiliates for additional inventory actually delivered to (or kept in) the Warehouses and reflected on contemporaneous borrowing base certificates. Upon information and belief, all such payments were supported by borrowing base certificates identifying eligible inventory, certifying compliance with the Facilities, and evidencing that the purchased inventory satisfied the Sale Agreements' eligibility criteria, including that the seller conveyed good, valid, and marketable title free and clear of third-party liens, in each case subject only to the Evolution Inventory Lender's liens. *Id*.

46. ~~45.~~ In addition to the periodic borrowing base certificates received from the Borrowers, the Evolution Inventory Lender received independent auditor reports confirming the existence of the Borrowers' inventory. *See* **Exhibits A–B**, § 5.1 (reporting), § 5.8(c) (inventory counts; perpetual inventory system). This reporting and other monitoring showed indicated cash and inventory movement in and out of the Borrowers as contemplated by each Facility and the Sale Agreements.

47. ~~46.~~ Upon information and belief, at all relevant times the inventory constituting the Evolution Inventory Lender's Collateral remained at the approved Warehouses identified in the Waiver and Collateral Access Agreements for each Facility, was consistently accounted for,

and was subject at all times to the Evolution Inventory Lender's perfected first-priority security interest.

48. ~~47.~~ The Evolution Inventory Lender, and the Borrowers as secured parties, filed UCC-1 Financing Statements against First Brands Group, LLC in respect of each Facility, documenting the sale of the inventory and the Borrower's respective back up liens against all finished goods inventory of First Brands Group, LLC which First Brands Group, LLC sold or exchanged to the Borrowers, together with all income and proceeds thereof. *See* **Exhibits O–Q** (Patterson UCC-1 Evidence); **Exhibit R–T** (Starlight UCC-1 Evidence). The Parent Holding Companies further reaffirmed their obligations on March 24, 2025. *See* **Exhibit U** (Consent of Guarantor); **Exhibit V** (Consent of Guarantor).

49. ~~48.~~ First Brands Group, LLC also represented and warranted in Section 7(e) of each Sale Agreement that neither the execution nor delivery of the Sale Agreement nor the consummation of the transactions conflicted with or would result in a breach of any terms, conditions, provisions of, or constitute a default, event of default, acceleration, termination, or cancellation under, any contract material to the operation of the business of First Brands Group, LLC. **Exhibits M–N**.

50. ~~49.~~ Third-party legal opinions provided to the Evolution Inventory Lender by Borrowers' counsel further set forth that (i) each of the security interests in favor of the Evolution Inventory Lender were properly created, valid, and perfected by the filing of Uniform Commercial Code financing statements and (ii) each conveyance of inventory to the Borrowers constituted true sales of inventory from First Brands Group, LLC to the Borrowers.

51. ~~50.~~ The Borrowers from time to time obtained advances from the Evolution Inventory Lender against, and at all times maintained outstanding advances in accordance with, a

"Borrowing Base"—a schedule outlining the eligible inventory serving as the Collateral for the Borrowing Request (defined below). The Borrowing Base was required to be comprised of eligible inventory acquired from First Brands Group, LLC under the Sale Agreements. Eligibility required that First Brands Group, LLC as seller have "good, valid, and marketable title … free and clear of all Liens in favor of any third party." **Exhibit M** § 1(a); **Exhibit N** § 1(a).

52. ~~51.~~ The Evolution Inventory Lender's advances were secured by the purchased inventory and its proceeds, as well as other assets of the Borrowers. Prior to each advance, the Borrower was required to submit a "Borrowing Request", which outlined the total amount requested, attached a Borrowing Base, the schedule of eligible inventory including its book value, and in which the Borrower certified, represented, and warranted (i) that it remained in compliance with its obligations under the Facilities, (ii) the eligible inventory's value, and (iii) that the inventory had been acquired in accordance with the Sale Agreements.

53. ~~52.~~ In addition to the Borrowing Requests, the Borrower regularly certified, in borrowing base certificates, to the Evolution Inventory Lender that the information contained in the Borrowing Base was an accurate and true reflection of the Collateral's value and that the Collateral met the criteria for eligible inventory under the Facilities.

**B. Other Lenders**

54. ~~53.~~ As of the FBG Petition Date, the FBG Debtors' prepetition capital structure comprised multiple tranches of secured debt with differing lien priorities. Upon information and belief, under the ABL Facility, the ABL Secured Parties hold first-priority security interests in and liens on, *inter alia*, inventory, accounts and deposit accounts, certain cash collateral and substantially all proceeds, products accessions, rents and profits owned by the FBG Debtors, whether existing or after-acquired (collectively, the "ABL Priority Collateral"), as further

described in that certain Amended and Restated Intercreditor Agreement Intercreditor Agreement, dated as of February 26, 2019 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "ABL Intercreditor Agreement"), and also hold a junior, third-priority interest in the Term Priority Collateral (as defined below). Upon information and belief, under the 1L Term Loan and 2L Term Loan, respectively, the 1L Term Loan Agent, on behalf of the 1L Term Loan lenders, holds first-priority security interests in and liens on the Term Priority Collateral owned by the FBG Debtors (as defined in the ABL Intercreditor Agreement, the "Term Priority Collateral"), and a junior, second-priority interest in the ABL Priority Collateral, and the 2L Term Loan Agent, on behalf of the 2L Term Loan lenders, holds a junior, second-priority interest in the Term Priority Collateral and a junior, third-priority interest in the ABL Priority Collateral.

55. 54. For emphasis and clarity, the Borrowers are not obligated under or subject to the ABL Facility, the 1L Term Loan, the 2L Term Loan, or the Side Car Loan, and upon information and belief the assets of the Borrowers are not included in the ABL Priority Collateral or the Term Priority Collateral.

**C. Allegations Concerning the Collateral**

56. 55. On September 24, 2025 (the "SPV Petition Date"), the SPV Debtors each filed voluntary chapter 11 petitions.

57. 56. On September 28, 2025 (the "FBG Petition Date"), the FBG Debtors each filed voluntary chapter 11 petitions.

58. 57. In connection with the Evolution Inventory Lender's Collateral, the Debtors have put forth several different theories as to why the Evolution Inventory Lender may not have a perfected, first-priority security interest in the Collateral:

59. ~~58.~~ **First Day Assertions: Theft.** As part of their first-day filings, the Debtors' Chief Restructuring Officer testified that "the Evolution Borrowers [the SPV Debtors] collectively held approximately $376 million in inventory as of August 2, 2025", but that "certain inventory subject to a security interest in favor of Evolution pursuant to the Evolution Facilities may have been commingled with collateral securing the ABL Facility." *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions*, ECF 22 ("Moore Declaration") ¶¶ 61, 95. Shortly prior to the FBG Petition Date, the Debtors informed the Evolution Inventory Lender that the FBG Debtors had transferred the Borrowers' assets to certain FBG Debtor entities and used those goods as collateral for additional borrowing under their ABL Facility.

60. ~~59.~~ Under this theory, the Debtors suggest that the ABL Agent has some interest in the Collateral, but the Debtors' purported theft of the Collateral does not supersede the Evolution Inventory Lender's perfected, first-priority security interest.

61. ~~60.~~ **Subsequent Assertion: Double Pledged After the Facilities.** The FBG Debtors subsequently advised that the Evolution Inventory Lender's Collateral may have been further pledged (*i.e.*, in addition to the ABL Agent and the Term Loan Agents) to support one or more of the FBG Debtors' loans from unnamed third-party lenders.

62. ~~61.~~ Under this theory, the FBG Debtors' fraudulent duplicative pledging of the Collateral does not supersede the Evolution Inventory Lender's perfected, first-priority security interest in the Collateral.

63. ~~62.~~ **Subsequent Assertion: Initially Invalid.** The FBG Debtors have also suggested the initial pledge of the Evolution Inventory Lender's Collateral may have been invalid. *See Declaration of Daniel Jerneycic*, ECF 812 ¶ 51. According to the Facilities' governing documents and the UCC-1 Financing Statements, this unclear suggestion that the

Collateral was not validly pledged to the Evolution Inventory Lender in the first instance is without merit.

64. ~~63.~~ **Subsequent Assertion: Not Validly Replenished.** The FBG Debtors have also stated that "the assets utilized in [Evolution's] facilities was [sic] at some point included in the asserted ABL … borrowing base or otherwise pledged under the ABL Facility and Term Loans." *Supplemental Declaration of Charles M. Moore in Support of DIP Motion*, ECF 22 ("Supplemental Declaration") ¶ 527.

65. ~~64.~~ In his Supplemental Declaration, Mr. Moore made multiple representations to suggest that the inventory comprising the Evolution Inventory Lender's Collateral was not adequately replenished from time to time through subsequent purchases by the Borrowers, and that the Collateral was dissipated and not validly replenished and thus is actually pledged to the ABL Facility. *See Supplemental Declaration* ¶ 24 (indicating that "the facts underlying [the SPV financing] transactions raise serious concerns and questions about whether certain SPV Lenders [including the Evolution Inventory Lender] have any collateral at all or if they do, what the status is of their liens relative to prepetition lenders."); ¶ 29 ("With respect to … Evolution, for example, the Debtors understand, based on discussions with the Company, an examination of records and email searches, the SPV Debtors and the FBG Debtors did not execute purchase agreements or similar transaction documents after the initial 'sale' to document transactions in respect of replacement inventory (i.e., inventory that would have replaced the inventory originally 'sold' by the FBG Debtor to the relevant SPV Debtor). Further, in many instances, the FBG Debtors' books and records do not show all the expected transactions between the relevant SPV Debtors and the FBG Debtors."); ¶ 30 ("After the alleged sale transactions, I further understand that, with possible exceptions, the inventory and PP&E remained on the FBG

Debtors' books and records. In addition, the inventory and equipment also remained in the FBG Debtors' physical possession. Based on these facts, the priority and existence of any asserted lien held by Evolution … against the collateral allegedly sold to [its] SPV Debtor counterparty is subject to legitimate dispute relative to the liens held by at least the ABL Agent and Term Loan Agents (as well as the agent for the DIP Lenders)."); ¶ 32 ("Given the lack of evidence that replacement inventory was purchased or was otherwise the property of the relevant SPV Debtors as of the Petition Date, I believe that there are legitimate questions about whether and to what extent (if any) the SPV Lenders have any lien or property interest in inventory or PP&E, given that they would have obtained their lien or interest through the SPV Debtors (which themselves may not have had any interests), not FBG Debtors."); ¶ 34 (questioning whether the ABL Agent's and Term Loan Agent's respective liens on the Evolution inventory were released in the first instance.); ¶ 34 ("I understand that proper documentation is missing with respect to subsequent sales of inventory. Accordingly, even if Evolution had a valid first lien position on the inventory initially transferred, most of that inventory would have been sold or transferred out of the relevant SPV Debtor. Based on these facts, the priority of any asserted lien held by Evolution against the collateral allegedly sold to their respective SPV Debtor counterparty is uncertain relative to the liens held by at least the ABL Agent and the Term Loan Agents.)

66. ~~65.~~ Any purported duplicative pledging by the FBG Debtors of inventory that was purchased by and transferred to the Borrowers, pursuant to inventory sales permitted under the terms of the ABL Facility and the Term Loans, does not supersede or interfere with the Evolution Inventory Lender's perfected, first-priority security interest in the Collateral.

67. ~~66.~~ As evidenced by the Sale Agreements, First Brands Group, LLC, by itself or through its affiliates, intended to sell (or, if recharacterized as a financing, to finance) inventory

to the Borrowers from time to time, free and clear of the liens under the ABL Facility and Term Loans. The ABL Facility and Term Loan documentation provides for multiple alternative options for the disposition of inventory free and clear of liens, including through ordinary course sales, like-kind exchanges, and permitted inventory sales, among others.

68. ~~67.~~ Further, the Borrowers submitted borrowing base certificates and frequently certified that the Facilities were in good standing and that the Borrowers were in compliance with their respective obligations. In fact, in June 2025, only a few months prior to the Petition Date, the Borrowers submitted independent auditor's reports indicating that the Borrowers' inventory was in accord with the prior representations made by the Borrowers in connection with each advance.

69. ~~68.~~ In light of the foregoing, to the extent that the ABL Agent, 1L Term Loan Agent, 2L Term Loan Agent, or Side Car Agent claim to be the holder of a security interest in the Collateral that secures the Evolution Inventory Lender's claims, the Evolution Inventory Lender disputes that any party other than Evolution Inventory Lender has a valid claim against or lien upon the Collateral.

## CLAIM FOR RELIEF[~~5~~][4]

## Declaratory Relief Pursuant to 28 U.S.C. § 2201

70. ~~69.~~ The allegations contained in paragraphs 1 through ~~68~~69 are adopted as if fully restated herein.

[~~5~~] ~~Plaintiff reserves~~[4] Plaintiffs reserve all rights to seek leave to amend this Complaint to add claims or causes of action, including damages claims against non-debtors, that may become known to ~~Plaintiff~~Plaintiffs at any time during this adversary proceeding, through formal discovery or otherwise, and for such amendments to relate back to the filing of the original Complaint. Alternatively, ~~Plaintiff reserves~~Plaintiffs reserve the right to bring such claims in a separate action in an appropriate forum.

71. ~~70.~~ Pursuant to the Facilities, the Evolution Inventory Lender was granted first-priority security interests in the Collateral, free and clear of any liens in favor of the ABL Agent or the Term Loan Agents.

72. ~~71.~~ In return for those first-priority security interests in the Collateral, the Evolution Inventory Lender advanced approximately $230 million to the Borrowers, which was used by the Borrowers to purchase inventory from the FBG Debtors and to pay related costs and expenses.

73. ~~72.~~ The Evolution Inventory Lender advanced the funds to the Borrowers in reliance upon (i) the provision of the first-priority security interests in the Collateral and (ii) Borrowers' representations and warranties, and third-party legal opinions from Borrowers' counsel that the Collateral was property of the Borrowers, not the FBG Debtors.

74. ~~73.~~ The Evolution Inventory Lender filed all necessary UCC financing statements to perfect its security interests in the Collateral, and those financing statements have not lapsed, nor been terminated or otherwise amended.

75. ~~74.~~ Any inventory that was purportedly transferred by Borrowers was made subject to the Evolution Inventory Lender's valid, perfected and first-priority lien. Upon information and belief, to the extent the inventory was subsequently dissipated, it was validly replenished such that the replacement inventory constitutes the Evolution Inventory Lender's Collateral and is subject to the Evolution Inventory Lender's valid, perfected, and first-priority lien.

76. ~~75. The Evolution Inventory Lender~~Plaintiffs now ~~seeks~~seek a declaratory judgment pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001(9) for the purpose of determining and adjudicating questions of actual controversy between the parties.

77. ~~76.~~ A declaratory judgment is necessary and appropriate because there exists an actual case and controversy as to whether the Evolution Inventory Lender has a perfected, first-priority security interest in the Collateral and whether the Collateral was dissipated and not replenished, in whole or in part, before the commencement of these Bankruptcy Cases.

78. ~~77.~~ This Adversary Proceeding presents an actual controversy within the Court's jurisdiction.

79. ~~78. The~~ Evolution Inventory Lender is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that ~~(i)~~ the Evolution Inventory Lender has a perfected, first-priority lien and security interest in the Collateral ~~and (ii)~~ .

80. Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Borrowers respectively own the Collateral, subject only to the first-priority, perfected lien and security interest in the Collateral held by the Evolution Inventory Lender.

## PRAYER FOR RELIEF

**WHEREFORE**, ~~Plaintiff prays~~Plaintiffs pray that the Court enter judgment against Defendants, as follows:

(a) A declaratory judgment declaring that the Evolution Inventory Lender has a perfected, first-priority security interest in the Collateral, free and clear of any liens in favor of the ABL Agent or the Term Loan Agents;

(b) A declaratory judgment that the Borrowers respectively own the Collateral, subject only to the first-priority, perfected lien and security interest in the Collateral held by the Evolution Inventory Lender;

(c) Costs in bringing this action under Bankruptcy Rule 7054 and the Security Agreements § 3(p); and

Case 25-90399 Document 953-2 Filed in TXSB on 07/21/25 Page 24 of 27

(d) Such other and further relief as the Court may deem just and proper.

Respectfully submitted this ~~10th~~22nd day of ~~December 2025~~July, 2026.

**GRAY REED**
By: */s/ Jason S. Brookner*
Jason S. Brookner
Texas Bar No. 24033684
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100
Email: jbrookner@grayreed.com

- and -

**PROSKAUER ROSE LLP**
Vincent Indelicato (admitted *pro hac vice*)
Matthew R. Koch (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: vindelicato@proskauer.com
mkoch@proskauer.com

- and -

Charles A. Dale (admitted *pro hac vice*)
One International Plaza
Boston, MA 02110-2600
Telephone: (617) 526-9600
Email: cdale@proskauer.com

*Counsel to Evolution Inventory Lender*

**JONES MURRAY LLP**

*/s/ Erin E. Jones*
Erin E. Jones (24032478)
Christopher R. Murray (24081057)
602 Sawyer, Suite 400
Houston, Texas 77007
Telephone: (832) 529-1999
Email: erin@jonesmurray.com
chris@jonesmurray.com

-and-

**ELSBERG BAKER & MARURI PLLC**
David Elsberg
Michael Duke
Vivek Tata
Andrew Parks
Ella Epstein
350 Fifth Avenue, 38th Floor
New York, NY 10018
Telephone: (212) 597-2600
Email: delsberg@elsberglaw.com
mduke@elsberglaw.com
vtata@elsberglaw.com
aparks@elsberglaw.com
eepstein@elsberglaw.com

*Special Litigation Counsel for Ronald J. Sommers, Chapter 7 Trustee for the SPV Debtors*

| **Summary report:**<br>**Litera Compare for Word 11.8.0.56 Document comparison done on 7/22/2026 3:51:50 PM** | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** FB - Evolution Amended Complaint (AS FILED).docx | |
| **Modified filename:** 2026.07.22 - FB - Evolution Inventory - Second Amended Complaint(435958.5).docx | |
| **Changes:** | |
| Add | 136 |
| ~~Delete~~ | 98 |
| ~~Move From~~ | 0 |
| Move To | 0 |
| Table Insert | 0 |
| ~~Table Delete~~ | 0 |
| Table moves to | 0 |
| ~~Table moves from~~ | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 234 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| FIRST BRANDS GROUP, LLC, *et al.*, | ) | Case No. 25-90399 (CML) |
| Debtors.[1] | ) | Jointly Administered |
| EVOLUTION CREDIT OPPORTUNITY MASTER FUND II-B, L.P., | ) | Adversary. No. 25-03800 |
| Plaintiff, | ) | |
| -against- | ) | |
| FIRST BRANDS GROUP, LLC; FIRST BRANDS GROUP INTERMEDIATE, LLC; PATTERSON INVENTORY HOLDINGS, LLC; PATTERSON INVENTORY, LLC; STARLIGHT INVENTORY HOLDINGS I, LLC; STARLIGHT INVENTORY I, LLC; TRICO LIMITED; TRICO BELGIUM SA; BRAKE PARTS INC LLC; BANK OF AMERICA, N.A.; WILMINGTON SAVINGS FUND SOCIETY, FSB; and GLAS USA LLC, | ) | |
| Defendants. | ) | |

**ORDER AMENDING CASE CAPTION AND**
**AUTHORIZING PLAINTIFF TO FILE A SECOND AMENDED COMPLAINT**

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Upon the joint motion (the "Motion") of plaintiff Evolution Credit Opportunity Master Fund II-B, L.P. ("Evolution") and Ronald J. Sommers, Chapter 7 Trustee (the "Trustee") for the bankruptcy estates of Patterson Inventory Holdings, LLC, Patterson Inventory, LLC, Starlight Inventory Holdings I, LLC, and Starlight Inventory I, LLC (collectively, the "SPV Debtors"), for entry of an order (this "Order") (a) amending the case caption; and (b) authorizing the filing of a Second Amended Complaint, which (i) realigns the SPV Debtors, currently named as defendants, as plaintiffs; (ii) adds the Trustee as a plaintiff; and (iii) makes certain other minor changes to the operative First Amended Complaint [Docket No. 9] to conform to the realignment; and this Court having considered the Motion; having the authority to grant the relief requested therein; having reviewed the record; having considered any objections to the Motion; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is GRANTED as set forth herein.

2. Evolution is authorized to file a Second Amended Complaint, in the form attached hereto as Exhibit 1, within seven (7) days of entry of this Order. Upon filing, the Second Amended Complaint shall be the operative complaint in this Adversary Proceeding and shall be deemed served on all Defendants.

3. Upon the filing of the Second Amended Complaint, the caption of the Adversary Proceeding shall be amended to reflect the realignment of the parties and the addition of the Trustee as a plaintiff, and the revised caption set forth below shall be the caption of the Adversary Proceeding for all purposes:

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST BRANDS GROUP, LLC, *et al.*, | Case No. 25-90399 (CML) |
| Debtors. | Jointly Administered |
| EVOLUTION CREDIT OPPORTUNITY MASTER FUND II-B, L.P.; PATTERSON INVENTORY HOLDINGS, LLC; PATTERSON INVENTORY, LLC; STARLIGHT INVENTORY HOLDINGS I, LLC; STARLIGHT INVENTORY I, LLC; and RONALD J. SOMMERS, in his capacity as Chapter 7 Trustee for the SPV Debtors, | Adversary No. 25-03800 |
| Plaintiffs, | |
| -against- | |
| FIRST BRANDS GROUP, LLC; FIRST BRANDS GROUP INTERMEDIATE, LLC; TRICO LIMITED; TRICO BELGIUM SA; BRAKE PARTS INC LLC; BANK OF AMERICA, N.A.; WILMINGTON SAVINGS FUND SOCIETY, FSB; and GLAS USA LLC, | |
| Defendants. | |

4. The amendments reflected in the Second Amended Complaint shall not affect the arguments raised in, or otherwise impact, Defendants' pending Motions to Dismiss [Docket Nos. 27, 32, 33], except that upon the filing of the Second Amended Complaint: (a) the SPV Debtors shall be deemed to have withdrawn, solely with respect to them, the arguments raised in the Debtors' Motion to Dismiss [Docket No. 32]; (b) the SPV Debtors shall cease to be defendants in this Adversary Proceeding, and any claims asserted against the SPV Debtors in the First Amended

Complaint [Docket No. 9] shall be deemed withdrawn; and (c) the Trustee and the SPV Debtors shall be deemed to have joined the allegations asserted in the Second Amended Complaint.

5. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed: _______________, 2026

_______________________________________
THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

*Second Amended Complaint*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>FIRST BRANDS GROUP, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-90399 (CML)<br><br>Jointly Administered |
| EVOLUTION CREDIT OPPORTUNITY MASTER FUND II-B, L.P.,; PATTERSON INVENTORY HOLDINGS, LLC; PATTERSON INVENTORY, LLC; STARLIGHT INVENTORY HOLDINGS I, LLC; STARLIGHT INVENTORY I, LLC; and RONALD J. SOMMERS, in his capacity as Chapter 7 Trustee for the SPV Debtors,<br><br>Plaintiffs,<br><br>-against-<br><br>FIRST BRANDS GROUP, LLC; FIRST BRANDS GROUP INTERMEDIATE, LLC; TRICO LIMITED; TRICO BELGIUM SA; BRAKE PARTS INC LLC; BANK OF AMERICA, N.A.; WILMINGTON SAVINGS FUND SOCIETY, FSB; and GLAS USA LLC,<br><br>Defendants. | Adversary. No. 25-03800 |

## SECOND AMENDED COMPLAINT

Plaintiffs Evolution Credit Opportunity Master Fund II-B, L.P. (the "Evolution Inventory Lender") Starlight Inventory I, LLC (the "Starlight Borrower"); Starlight Inventory Holdings I, LLC (the "Starlight Parent"); Patterson Inventory, LLC (the "Patterson Borrower" and together with the Starlight Borrower, each a "Borrower" and together the "Borrowers"); Patterson

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Inventory Holdings, LLC (the "Patterson Parent" and together with the Starlight Parent, each a "Parent Holding Company" and together the "Parent Holding Companies," and together with the Borrowers, the "SPV Debtors"); and Ronald J. Sommers, in his capacity as Chapter 7 Trustee for the SPV Debtors (together with Evolution Inventory Lender and the SPV Debtors, "Plaintiffs"), for their Second Amended Complaint against Debtors First Brands Group, LLC; First Brands Group Intermediate, LLC; Brake Parts Inc LLC; Trico Limited, in its capacity as a borrower under the ABL Facility (defined below); and Trico Belgium SA, in its capacity as a borrower under the ABL Facility (collectively, the "FBG Debtors"); Bank of America, N.A., in its capacity as administrative agent and collateral agent for certain prepetition secured asset-based loan lenders (the "ABL Agent"); Wilmington Savings Fund Society, FSB, in its capacity as administrative agent and collateral agent for certain prepetition first lien term loan lenders (the "1L Term Loan Agent") and in its capacity as administrative agent and collateral agent for certain prepetition second lien term loan lenders (the "2L Term Loan Agent"); and GLAS USA LLC as administrative agent and collateral agent (the "Side Car Agent") for certain Side Car Loan lenders (the 1L Term Loan Agent, 2L Term Loan Agent, and Side Car Agent, collectively, the "Term Loan Agents," and together with FBG Debtors and ABL Agent, the "Defendants"), allege as follows:

## NATURE OF THE ACTION

1. One or more of the FBG Debtors and/or their affiliates formed the SPV Debtors as bankruptcy-remote special purpose vehicles to own and hold certain inventory as collateral security for loans made by the Evolution Inventory Lender.

2. Between November 2023 and March 2024, the Evolution Inventory Lender entered into a series of agreements with the SPV Debtors which provided for up to $300 million in advances to the Borrowers to be secured by perfected, first-priority security interests in all assets of the Borrowers, including then-owned and after-acquired inventory, accounts, deposit accounts,

and proceeds of each of the foregoing (all such property, the "Collateral"). The proceeds of the up-to-$300-million facility provided to the SPV Debtors were used to purchase inventory from certain of the FBG Debtors and to pay related costs and expenses.

3. Since the FBG Petition Date (defined below), the FBG Debtors have put forth different theories regarding what allegedly happened to the Collateral, all apparently to suggest (if not argue) that the Evolution Inventory Lender does not have perfected, first-priority liens against and security interests in the Collateral (or portions of the Collateral).

4. In the Moore Declaration (defined below), the FBG Debtors suggested that, before the FBG Petition Date, one or more of the FBG Debtors or their affiliates may have caused the SPV Debtors to transfer the Collateral to Debtor entities other than the SPV Debtors and improperly pledge the Evolution Inventory Lender's Collateral to certain other lenders, including the ABL Agent on behalf of the lenders under the ABL Facility (together with the ABL Agent and any other secured parties under the ABL Facility, the "ABL Secured Parties"). The FBG Debtors posited that this alleged transfer of the Collateral away from the SPV Debtors somehow eliminated the Evolution Inventory Lender's rights and liens.

5. In subsequent testimony, filings, and communications between counsel for the Evolution Inventory Lender and the FBG Debtors, the FBG Debtors have suggested other reasons why the Evolution Inventory Lender's liens may not extend to all or some of the Collateral as it existed on the FBG Petition Date or why the Collateral to which its liens originally attached was dissipated (and not replenished) prior to the FBG Petition Date. Based on these allegations, the priority of any asserted liens held by the Evolution Inventory Lender against the Collateral—which Collateral the Evolution Inventory Lender understood had been sold to the SPV Debtors—is arguably uncertain relative to the liens held by at least the ABL Agent and the Term Loan Agents.

6. The Evolution Inventory Lender now seeks a declaratory judgment that it has perfected, first-priority liens against and security interests in the Collateral as of the FBG Petition Date.

**JURISDICTION AND VENUE**

7. This adversary proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to (i) determine the validity, priority, or extent of a lien or other interest in property, and (ii) obtain a declaratory judgment relating to the foregoing. Fed. R. Bankr. P. 7001(2), (9).

8. This adversary proceeding also constitutes a "Challenge"[2] to any competing lien or claim held by any creditor asserting a competing lien or claim against the Collateral.

9. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334. Pursuant to Bankruptcy Rule 7008 and Bankruptcy Local Rule 7008-1, the Evolution Inventory Lender consents to entry of final orders or judgment by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

10. This Court has jurisdiction over this action because it is a core proceeding under 28 U.S.C. § 157(b)(2) and also pursuant to 28 U.S.C. § 1334.

11. This adversary proceeding relates to the chapter 11 cases being jointly administered for procedural purposes under *In re First Brands Group, LLC*, Case No. 25-90399 (CML) (Bankr. S.D. Tex.) (the "Bankruptcy Cases"), which are pending in the United States Bankruptcy Court

[2] As such term is defined in the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (II) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 608] (the "Final DIP Order")

for the Southern District of Texas, Houston Division. Pursuant to Bankruptcy Rule 7008, Plaintiffs state that they consent to the entry of final orders and judgments by this Court.

12. Venue lies in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

13. Evolution Inventory Lender is a Delaware limited partnership with a principal place of business in Boston, Massachusetts.

14. Patterson Inventory Holdings, LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases.

15. Patterson Inventory, LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases.

16. Starlight Inventory Holdings I, LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases.

17. Starlight Inventory I, LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases.

18. Ronald J. Sommers, in his capacity as the Chapter 7 Trustee for the bankruptcy estates of the SPV Debtors following the conversion of the SPV Debtors' proceedings under chapter 11 of the Bankruptcy Code to proceedings under chapter 7 of the Bankruptcy Code [Case No. 25-90399, Docket No. 2396], maintains an office at 1400 Post Oak Blvd., Suite 300, Houston, TX 77056.

19. First Brands Group, LLC is a Delaware limited liability company with a principal place of business in Cleveland, Ohio. First Brands Group, LLC was formerly known as Trico Group, LLC (a borrower under the Term Loans and ABL Facility).

20. First Brands Group, LLC; Starlight Borrower; Starlight Parent; Patterson Borrower; and Patterson Parent are all indirectly owned and controlled by the same corporate entity. *See* ECF 1 at Ex. A.

21. Bank of America, N.A. ("BofA") is a national banking association with a principal place of business in North Carolina. BofA is named in its capacity as administrative agent and collateral agent for prepetition secured ABL Secured Parties pursuant to that certain ABL Credit Agreement, dated as of February 2, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "ABL Facility").

22. Wilmington Savings Fund Society, FSB ("WSFS") is a bank incorporated and with a principal place of business in Delaware. WSFS is named in its capacity as the administrative agent and collateral agent for prepetition term loan lenders pursuant to that certain First Lien Term Loan Agreement, dated as of February 2, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "1L Term Loan") and also as administrative agent and collateral agent for prepetition term loan lenders pursuant to that certain Second Lien Term Loan Agreement dated as of February 26, 2019 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "2L Term Loan").

23. GLAS USA LLC ("GLAS") is a New Jersey limited liability company with a principal place of business in New Jersey. GLAS is named in its capacity as the administrative and collateral agent for certain prepetition side car term loan lenders pursuant to that certain First Lien Term Loan Agreement, dated as of June 16, 2025 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Side Car Loan"). The Side Car Loan, 1L Term Loan, and 2L Term Loan are referred to herein collectively as the "Term Loans."

24. First Brands Group Intermediate, LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases. First Brands Group Intermediate, LLC was formerly known as Trico Group Holdings, LLC (a borrower under the Term Loans and ABL Facility).

25. Brake Parts Inc LLC is a Delaware limited liability company with an address in Cleveland, Ohio. It is one of the Debtors in these Bankruptcy Cases.

26. Trico Limited is a limited company incorporated under the laws of England and Wales. Trico Limited is a borrower under the ABL Facility.

27. Trico Belgium SA is a Belgian limited liability company incorporated under the laws of Belgium. Trico Belgium SA is a borrower under the ABL Facility.

## FACTUAL BACKGROUND

### A. The SPV Debtors and the Evolution Facilities

28. The FBG Debtors are in the business of supplying aftermarket automotive parts. In need of additional capital, one or more of the FBG Debtors or their affiliates caused the SPV Debtors to be created for the purpose of owning certain assets and pledging the same to lenders in exchange for new money financing.

29. To that end, in late 2023 and early 2024, the SPV Debtors entered into two structured inventory financing facilities: one dated November 9, 2023, and the other dated March 28, 2024.

30. Specifically, on November 9, 2023, Patterson Borrower entered into that certain *Uncommitted Inventory Finance Agreement* (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Patterson Facility") with the Evolution Inventory Lender. *See* **Exhibit A** (Patterson Inventory Finance Agreement).

31. On March 28, 2024, Starlight Borrower entered into that certain *Uncommitted Inventory Finance Agreement* (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Starlight Facility" and together with the Patterson Facility, the "Facilities") with the Evolution Inventory Lender. *See* **Exhibit B** (Starlight Inventory Finance Agreement).

32. Under the Facilities, the Evolution Inventory Lender provided uncommitted asset-based revolving credit facilities with maximum aggregate advances of (i) $150 million to Patterson Borrower and (ii) $150 million to Starlight Borrower.[3] Upon information and belief, the funds advanced under the Facilities were used to purchase inventory from one or more of the FBG Debtors and to pay related costs and expenses.

33. Under the Facilities, the Evolution Inventory Lender's Collateral consisted of then-owned and after-acquired inventory, accounts, deposit accounts, and proceeds of each of the foregoing. The Evolution Inventory Lender and the Borrowers entered into Waiver and Collateral Access Agreements and Administration Agreements wherein the parties agreed that the inventory Collateral would be stored in certain designated warehouses located at (i) 14528 Bonelli St., City of Industry, CA 91746; (ii) 2701 Keystone Pacific Pkwy, Suite 100 Patterson, CA 95363; (iii) 1100 Corporate Drive McHenry, IL 60050; and (iv) 1380 Corporate Drive McHenry, IL 60050 (collectively, the "Warehouses").

34. The Borrowers' obligations under the Facilities are (i) guaranteed by their respective Parent Holding Company; (ii) secured by pledges of 100% of the equity of each Borrower by its respective Parent Holding Company; and (iii) secured by a first-priority lien on

[3] As of the SPV Petition Date (defined below), more than $110 million in total principal amount of obligations were outstanding under the Starlight Facility, and more than $120 million in total principal amount of obligations were outstanding under the Patterson Facility.

the Collateral, including all assets of the Borrowers (including inventory, accounts, deposit accounts, and proceeds of the foregoing), pursuant to security agreements and deposit account control agreements executed in connection with each Facility. *See* **Exhibit E** (Patterson Guaranty); **Exhibit F** (Starlight Guaranty); **Exhibit G** (Patterson Pledge Agreement); **Exhibit H** (Starlight Pledge Agreement); **Exhibit I** (Patterson Security Agreement); **Exhibit J** (Starlight Security Agreement) (Exhibits I–J, each a "Security Agreement," and collectively the "Security Agreements"); **Exhibit K** (Patterson Deposit Account Control Agreement; **Exhibit L** (Starlight Deposit Account Control Agreement). The Borrowers further "unconditionally promise[d]" to repay to the Evolution Inventory Lender the outstanding principal owed under the Facilities on applicable maturity dates. *See* **Exhibit A** § 2.5(a); **Exhibit B** § 2.5(a).

35. The obligations of the Borrower under each Facility are further evidenced by a separate Revolving Credit Note executed in favor of the Evolution Inventory Lender and governed by the applicable Facility. *See* **Exhibit C** (Patterson Promissory Note); **Exhibit D** (Revolving Credit Note).

36. In each Security Agreement, the Borrowers represented there were no other liens on the Collateral (other than permitted exceptions that are not relevant here), represented there were no other financing statements of record against the Collateral (other than permitted exceptions that are not relevant here), and covenanted not to authorize any other financing statements. *See* **Exhibits I–J**, §§ 3(b)–(c); *see also* **Exhibits A–B**, § 6.2.

37. The Evolution Inventory Lender filed UCC-1 Financing Statements on November 9, 2023, and March 28, 2024, perfecting (i) the Evolution Inventory Lender's security interests in the Borrowers' assets; and (ii) the Evolution Inventory Lender's security interests in

the pledge of 100% of the Borrowers' equity. *See* **Exhibits O–Q** (Patterson UCC-1 Evidence); **Exhibit R–T** (Starlight UCC-1 Evidence).

38. Each Borrower was organized as a bankruptcy-remote special purpose vehicle for the limited purpose of purchasing finished goods inventory from First Brands Group, LLC and its affiliates from time to time pursuant to a Master Origin Sale and Exchange Agreement. The Master Origin Sale and Exchange Agreement related to Patterson Borrower was made and entered into on November 9, 2023 (the "Patterson Sale Agreement") and the Master Origin Sale and Exchange Agreement related to Starlight Borrower was made and entered into on March 28, 2024 (together with the Patterson Sale Agreement, the "Sale Agreements"). *See* **Exhibits M** (Patterson) & **N** (Starlight). The Sale Agreements contemplated subsequent sales of inventory from the Borrowers to First Brands Group, LLC or its affiliates from time to time for the purpose of on-selling inventory to third party customers, and the replenishment of inventory through purchases from First Brands Group, LLC or its affiliates from time to time pursuant to subsequent closings under the Sale Agreements.

39. Upon information and belief, neither Borrower had any employees; pursuant to the Administration Agreements, First Brands Group, LLC acted as service administrator, and personnel of First Brands Group, LLC (or its affiliates) administered each Borrower's ordinary course operations and administration in connection with the inventory.

40. Under the Sale Agreements, First Brands Group, LLC sold designated finished goods inventory, meeting enumerated quality and title criteria, to the Borrowers "free and clear of any liens, security interests, or other encumbrances" to be held at approved warehouse locations exclusively leased by First Brands Group, LLC, in each case subject to the Evolution Inventory Lender's liens. *See* **Exhibits M–N**.

41. The Sale Agreements expressly state that each transfer was intended to be a "true, absolute and irrevocable sale," and, as backup protection if a court were to recharacterize the transaction as a secured loan, First Brands Group, LLC granted the Borrowers a first-priority security interest in the same assets and proceeds. *See* **Exhibits M–N**, § 9.

42. At the time of the initial closings under the Facilities, the Evolution Inventory Lender's Collateral consisted of the Borrowers' then-owned inventory, accounts, deposit accounts, and proceeds of each of the foregoing.

43. Upon information and belief, following the initial closings, Borrowers would, from time to time, replenish their finished goods inventory through purchases from First Brands Group, LLC or one or more of its subsidiaries in exchange for consideration provided in accordance with the Sale Agreements, to be stored in the designated, First Brands Group, LLC serviced Warehouses. *See* **Exhibit A–B; Exhibits M–N**. At all times the finished goods inventory was required to be held at the approved First Brands Group, LLC serviced Warehouses, subject to the Evolution Inventory Lender's first-priority liens. *Id.*

44. Upon information and belief, from time to time, the Borrowers satisfied the purchase price for new inventory (i) in cash with the proceeds of the Facilities; (ii) in cash with available funds of the Borrowers paid to or at the direction of First Brands Group, LLC and its affiliates; (iii) through exchanges-in-kind involving Borrower-owned inventory of equivalent value as contemplated by the Sale Agreements; and/or (iv) other contractually authorized forms of consideration as agreed by the parties. *See* **Exhibits A–B**, § 2.3(b); **Exhibits M–N.**

45. Upon information and belief, where cash was utilized, original loan proceeds and subsequent advances were delivered directly to First Brands Group, LLC or affiliated entities, and subsequent cash payments by the Borrowers to purchase inventory were paid to or at the direction

of First Brands Group, LLC or affiliated entities, in each case under the Sale Agreements. Upon information and belief, cash transfers were made from the Borrowers at the direction of First Brands Group, LLC or its affiliated entities and constituted payments to or for the benefit of First Brands Group, LLC and its affiliates for additional inventory actually delivered to (or kept in) the Warehouses and reflected on contemporaneous borrowing base certificates. Upon information and belief, all such payments were supported by borrowing base certificates identifying eligible inventory, certifying compliance with the Facilities, and evidencing that the purchased inventory satisfied the Sale Agreements' eligibility criteria, including that the seller conveyed good, valid, and marketable title free and clear of third-party liens, in each case subject only to the Evolution Inventory Lender's liens. *Id*.

46. In addition to the periodic borrowing base certificates received from the Borrowers, the Evolution Inventory Lender received independent auditor reports confirming the existence of the Borrowers' inventory. *See* **Exhibits A–B**, § 5.1 (reporting), § 5.8(c) (inventory counts; perpetual inventory system). This reporting and other monitoring showed indicated cash and inventory movement in and out of the Borrowers as contemplated by each Facility and the Sale Agreements.

47. Upon information and belief, at all relevant times the inventory constituting the Evolution Inventory Lender's Collateral remained at the approved Warehouses identified in the Waiver and Collateral Access Agreements for each Facility, was consistently accounted for, and was subject at all times to the Evolution Inventory Lender's perfected first-priority security interest.

48. The Evolution Inventory Lender, and the Borrowers as secured parties, filed UCC-1 Financing Statements against First Brands Group, LLC in respect of each Facility, documenting

the sale of the inventory and the Borrower's respective back up liens against all finished goods inventory of First Brands Group, LLC which First Brands Group, LLC sold or exchanged to the Borrowers, together with all income and proceeds thereof. *See* **Exhibits O–Q** (Patterson UCC-1 Evidence); **Exhibit R–T** (Starlight UCC-1 Evidence). The Parent Holding Companies further reaffirmed their obligations on March 24, 2025. *See* **Exhibit U** (Consent of Guarantor); **Exhibit V** (Consent of Guarantor).

49. First Brands Group, LLC also represented and warranted in Section 7(e) of each Sale Agreement that neither the execution nor delivery of the Sale Agreement nor the consummation of the transactions conflicted with or would result in a breach of any terms, conditions, provisions of, or constitute a default, event of default, acceleration, termination, or cancellation under, any contract material to the operation of the business of First Brands Group, LLC. **Exhibits M–N**.

50. Third-party legal opinions provided to the Evolution Inventory Lender by Borrowers' counsel further set forth that (i) each of the security interests in favor of the Evolution Inventory Lender were properly created, valid, and perfected by the filing of Uniform Commercial Code financing statements and (ii) each conveyance of inventory to the Borrowers constituted true sales of inventory from First Brands Group, LLC to the Borrowers.

51. The Borrowers from time to time obtained advances from the Evolution Inventory Lender against, and at all times maintained outstanding advances in accordance with, a "Borrowing Base"—a schedule outlining the eligible inventory serving as the Collateral for the Borrowing Request (defined below). The Borrowing Base was required to be comprised of eligible inventory acquired from First Brands Group, LLC under the Sale Agreements. Eligibility required that First

Brands Group, LLC as seller have "good, valid, and marketable title … free and clear of all Liens in favor of any third party." **<u>Exhibit M</u>** § 1(a); **<u>Exhibit N</u>** § 1(a).

52. The Evolution Inventory Lender's advances were secured by the purchased inventory and its proceeds, as well as other assets of the Borrowers. Prior to each advance, the Borrower was required to submit a "<u>Borrowing Request</u>", which outlined the total amount requested, attached a Borrowing Base, the schedule of eligible inventory including its book value, and in which the Borrower certified, represented, and warranted (i) that it remained in compliance with its obligations under the Facilities, (ii) the eligible inventory's value, and (iii) that the inventory had been acquired in accordance with the Sale Agreements.

53. In addition to the Borrowing Requests, the Borrower regularly certified, in borrowing base certificates, to the Evolution Inventory Lender that the information contained in the Borrowing Base was an accurate and true reflection of the Collateral's value and that the Collateral met the criteria for eligible inventory under the Facilities.

**B. Other Lenders**

54. As of the FBG Petition Date, the FBG Debtors' prepetition capital structure comprised multiple tranches of secured debt with differing lien priorities. Upon information and belief, under the ABL Facility, the ABL Secured Parties hold first-priority security interests in and liens on, *inter alia*, inventory, accounts and deposit accounts, certain cash collateral and substantially all proceeds, products accessions, rents and profits owned by the FBG Debtors, whether existing or after-acquired (collectively, the "<u>ABL Priority Collateral</u>"), as further described in that certain Amended and Restated Intercreditor Agreement Intercreditor Agreement, dated as of February 26, 2019 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "<u>ABL Intercreditor Agreement</u>"), and also hold a junior,

third-priority interest in the Term Priority Collateral (as defined below). Upon information and belief, under the 1L Term Loan and 2L Term Loan, respectively, the 1L Term Loan Agent, on behalf of the 1L Term Loan lenders, holds first-priority security interests in and liens on the Term Priority Collateral owned by the FBG Debtors (as defined in the ABL Intercreditor Agreement, the "Term Priority Collateral"), and a junior, second-priority interest in the ABL Priority Collateral, and the 2L Term Loan Agent, on behalf of the 2L Term Loan lenders, holds a junior, second-priority interest in the Term Priority Collateral and a junior, third-priority interest in the ABL Priority Collateral.

55. For emphasis and clarity, the Borrowers are not obligated under or subject to the ABL Facility, the 1L Term Loan, the 2L Term Loan, or the Side Car Loan, and upon information and belief the assets of the Borrowers are not included in the ABL Priority Collateral or the Term Priority Collateral.

**C. Allegations Concerning the Collateral**

56. On September 24, 2025 (the "SPV Petition Date"), the SPV Debtors each filed voluntary chapter 11 petitions.

57. On September 28, 2025 (the "FBG Petition Date"), the FBG Debtors each filed voluntary chapter 11 petitions.

58. In connection with the Evolution Inventory Lender's Collateral, the Debtors have put forth several different theories as to why the Evolution Inventory Lender may not have a perfected, first-priority security interest in the Collateral:

59. **First Day Assertions: Theft.** As part of their first-day filings, the Debtors' Chief Restructuring Officer testified that "the Evolution Borrowers [the SPV Debtors] collectively held approximately $376 million in inventory as of August 2, 2025", but that "certain inventory subject

to a security interest in favor of Evolution pursuant to the Evolution Facilities may have been commingled with collateral securing the ABL Facility." *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions*, ECF 22 ("Moore Declaration") ¶¶ 61, 95. Shortly prior to the FBG Petition Date, the Debtors informed the Evolution Inventory Lender that the FBG Debtors had transferred the Borrowers' assets to certain FBG Debtor entities and used those goods as collateral for additional borrowing under their ABL Facility.

60. Under this theory, the Debtors suggest that the ABL Agent has some interest in the Collateral, but the Debtors' purported theft of the Collateral does not supersede the Evolution Inventory Lender's perfected, first-priority security interest.

61. **Subsequent Assertion: Double Pledged After the Facilities.** The FBG Debtors subsequently advised that the Evolution Inventory Lender's Collateral may have been further pledged (*i.e.*, in addition to the ABL Agent and the Term Loan Agents) to support one or more of the FBG Debtors' loans from unnamed third-party lenders.

62. Under this theory, the FBG Debtors' fraudulent duplicative pledging of the Collateral does not supersede the Evolution Inventory Lender's perfected, first-priority security interest in the Collateral.

63. **Subsequent Assertion: Initially Invalid.** The FBG Debtors have also suggested the initial pledge of the Evolution Inventory Lender's Collateral may have been invalid. *See Declaration of Daniel Jerneycic*, ECF 812 ¶ 51. According to the Facilities' governing documents and the UCC-1 Financing Statements, this unclear suggestion that the Collateral was not validly pledged to the Evolution Inventory Lender in the first instance is without merit.

64. **Subsequent Assertion: Not Validly Replenished.** The FBG Debtors have also stated that "the assets utilized in [Evolution's] facilities was [sic] at some point included in the

asserted ABL … borrowing base or otherwise pledged under the ABL Facility and Term Loans." *Supplemental Declaration of Charles M. Moore in Support of DIP Motion*, ECF 22 ("Supplemental Declaration") ¶ 527.

65. In his Supplemental Declaration, Mr. Moore made multiple representations to suggest that the inventory comprising the Evolution Inventory Lender's Collateral was not adequately replenished from time to time through subsequent purchases by the Borrowers, and that the Collateral was dissipated and not validly replenished and thus is actually pledged to the ABL Facility. *See Supplemental Declaration* ¶ 24 (indicating that "the facts underlying [the SPV financing] transactions raise serious concerns and questions about whether certain SPV Lenders [including the Evolution Inventory Lender] have any collateral at all or if they do, what the status is of their liens relative to prepetition lenders."); ¶ 29 ("With respect to … Evolution, for example, the Debtors understand, based on discussions with the Company, an examination of records and email searches, the SPV Debtors and the FBG Debtors did not execute purchase agreements or similar transaction documents after the initial 'sale' to document transactions in respect of replacement inventory (i.e., inventory that would have replaced the inventory originally 'sold' by the FBG Debtor to the relevant SPV Debtor). Further, in many instances, the FBG Debtors' books and records do not show all the expected transactions between the relevant SPV Debtors and the FBG Debtors."); ¶ 30 ("After the alleged sale transactions, I further understand that, with possible exceptions, the inventory and PP&E remained on the FBG Debtors' books and records. In addition, the inventory and equipment also remained in the FBG Debtors' physical possession. Based on these facts, the priority and existence of any asserted lien held by Evolution … against the collateral allegedly sold to [its] SPV Debtor counterparty is subject to legitimate dispute relative to the liens held by at least the ABL Agent and Term Loan Agents (as well as the agent for the DIP

Lenders).”); ¶ 32 (“Given the lack of evidence that replacement inventory was purchased or was otherwise the property of the relevant SPV Debtors as of the Petition Date, I believe that there are legitimate questions about whether and to what extent (if any) the SPV Lenders have any lien or property interest in inventory or PP&E, given that they would have obtained their lien or interest through the SPV Debtors (which themselves may not have had any interests), not FBG Debtors.”); ¶ 34 (questioning whether the ABL Agent’s and Term Loan Agent’s respective liens on the Evolution inventory were released in the first instance.); ¶ 34 (“I understand that proper documentation is missing with respect to subsequent sales of inventory. Accordingly, even if Evolution had a valid first lien position on the inventory initially transferred, most of that inventory would have been sold or transferred out of the relevant SPV Debtor. Based on these facts, the priority of any asserted lien held by Evolution against the collateral allegedly sold to their respective SPV Debtor counterparty is uncertain relative to the liens held by at least the ABL Agent and the Term Loan Agents.)

66. Any purported duplicative pledging by the FBG Debtors of inventory that was purchased by and transferred to the Borrowers, pursuant to inventory sales permitted under the terms of the ABL Facility and the Term Loans, does not supersede or interfere with the Evolution Inventory Lender’s perfected, first-priority security interest in the Collateral.

67. As evidenced by the Sale Agreements, First Brands Group, LLC, by itself or through its affiliates, intended to sell (or, if recharacterized as a financing, to finance) inventory to the Borrowers from time to time, free and clear of the liens under the ABL Facility and Term Loans. The ABL Facility and Term Loan documentation provides for multiple alternative options for the disposition of inventory free and clear of liens, including through ordinary course sales, like-kind exchanges, and permitted inventory sales, among others.

68. Further, the Borrowers submitted borrowing base certificates and frequently certified that the Facilities were in good standing and that the Borrowers were in compliance with their respective obligations. In fact, in June 2025, only a few months prior to the Petition Date, the Borrowers submitted independent auditor's reports indicating that the Borrowers' inventory was in accord with the prior representations made by the Borrowers in connection with each advance.

69. In light of the foregoing, to the extent that the ABL Agent, 1L Term Loan Agent, 2L Term Loan Agent, or Side Car Agent claim to be the holder of a security interest in the Collateral that secures the Evolution Inventory Lender's claims, the Evolution Inventory Lender disputes that any party other than Evolution Inventory Lender has a valid claim against or lien upon the Collateral.

## CLAIM FOR RELIEF[4]

### Declaratory Relief Pursuant to 28 U.S.C. § 2201

70. The allegations contained in paragraphs 1 through 69 are adopted as if fully restated herein.

71. Pursuant to the Facilities, the Evolution Inventory Lender was granted first-priority security interests in the Collateral, free and clear of any liens in favor of the ABL Agent or the Term Loan Agents.

72. In return for those first-priority security interests in the Collateral, the Evolution Inventory Lender advanced approximately $230 million to the Borrowers, which was used by the Borrowers to purchase inventory from the FBG Debtors and to pay related costs and expenses.

[4] Plaintiffs reserve all rights to seek leave to amend this Complaint to add claims or causes of action, including damages claims against non-debtors, that may become known to Plaintiffs at any time during this adversary proceeding, through formal discovery or otherwise, and for such amendments to relate back to the filing of the original Complaint. Alternatively, Plaintiffs reserve the right to bring such claims in a separate action in an appropriate forum.

73. The Evolution Inventory Lender advanced the funds to the Borrowers in reliance upon (i) the provision of the first-priority security interests in the Collateral and (ii) Borrowers' representations and warranties, and third-party legal opinions from Borrowers' counsel that the Collateral was property of the Borrowers, not the FBG Debtors.

74. The Evolution Inventory Lender filed all necessary UCC financing statements to perfect its security interests in the Collateral, and those financing statements have not lapsed, nor been terminated or otherwise amended.

75. Any inventory that was purportedly transferred by Borrowers was made subject to the Evolution Inventory Lender's valid, perfected and first-priority lien. Upon information and belief, to the extent the inventory was subsequently dissipated, it was validly replenished such that the replacement inventory constitutes the Evolution Inventory Lender's Collateral and is subject to the Evolution Inventory Lender's valid, perfected, and first-priority lien.

76. Plaintiffs now seek a declaratory judgment pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001(9) for the purpose of determining and adjudicating questions of actual controversy between the parties.

77. A declaratory judgment is necessary and appropriate because there exists an actual case and controversy as to whether the Evolution Inventory Lender has a perfected, first-priority security interest in the Collateral and whether the Collateral was dissipated and not replenished, in whole or in part, before the commencement of these Bankruptcy Cases.

78. This Adversary Proceeding presents an actual controversy within the Court's jurisdiction.

79. Evolution Inventory Lender is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Evolution Inventory Lender has a perfected, first-priority lien and security interest in the Collateral.

80. Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Borrowers respectively own the Collateral, subject only to the first-priority, perfected lien and security interest in the Collateral held by the Evolution Inventory Lender.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that the Court enter judgment against Defendants, as follows:

(a) A declaratory judgment declaring that the Evolution Inventory Lender has a perfected, first-priority security interest in the Collateral, free and clear of any liens in favor of the ABL Agent or the Term Loan Agents;

(b) A declaratory judgment that the Borrowers respectively own the Collateral, subject only to the first-priority, perfected lien and security interest in the Collateral held by the Evolution Inventory Lender;

(c) Costs in bringing this action under Bankruptcy Rule 7054 and the Security Agreements § 3(p); and

(d) Such other and further relief as the Court may deem just and proper.

Case 25-90399 Document 953-1 Filed in TXSB on 07/22/26 Page 27 of 28

Respectfully submitted this 22nd day of July, 2026.

**GRAY REED**
By: */s/ Jason S. Brookner*
Jason S. Brookner
Texas Bar No. 24033684
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100
Email: jbrookner@grayreed.com

- and -

**PROSKAUER ROSE LLP**
Vincent Indelicato (admitted *pro hac vice*)
Matthew R. Koch (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: vindelicato@proskauer.com
mkoch@proskauer.com

- and -

Charles A. Dale (admitted *pro hac vice*)
One International Plaza
Boston, MA 02110-2600
Telephone: (617) 526-9600
Email: cdale@proskauer.com

*Counsel to Evolution Inventory Lender*

**JONES MURRAY LLP**

*/s/ Erin E. Jones*
Erin E. Jones (24032478)
Christopher R. Murray (24081057)
602 Sawyer, Suite 400
Houston, Texas 77007
Telephone: (832) 529-1999
Email: erin@jonesmurray.com
chris@jonesmurray.com

-and-

**ELSBERG BAKER & MARURI PLLC**
David Elsberg
Michael Duke
Vivek Tata
Andrew Parks
Ella Epstein
350 Fifth Avenue, 38th Floor
New York, NY 10018
Telephone: (212) 597-2600
Email: delsberg@elsberglaw.com
mduke@elsberglaw.com
vtata@elsberglaw.com
aparks@elsberglaw.com
eepstein@elsberglaw.com

*Special Litigation Counsel for Ronald J. Sommers, Chapter 7 Trustee for the SPV Debtors*