United States Bankruptcy Court
Southern District of Texas
**ENTERED**
November 09, 2025
Nathan Ochsner, Clerk

# EXHIBIT 4

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**STIPULATION AND AGREED ORDER REGARDING ADEQUATE PROTECTION AMONG DEBTORS AND EVOLUTION CREDIT PARTNERS**

This Stipulation and Order (this "**Stipulation**") is entered into by and among (i) the above-captioned debtors (collectively, the "**Debtors**") and (ii) Evolution[2] (together with the Debtors, the "**Parties**").[3] The Parties hereby stipulate and agree as follows:

WHEREAS, on September 24, 2025 and September 28, 2025 (as applicable, the "**Petition Date**"), the Debtors commenced the chapter 11 cases in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**");

WHEREAS, on September 30, 2025, the Debtors filed an emergency motion seeking entry of an interim order and a final order (the "**DIP Orders**") authorizing the Debtors to, among other things, obtain postpetition financing and use cash collateral (Docket No 49).

---

1 A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

2 "**Evolution**" shall mean, collectively, Evolution Credit Opportunity Master Fund II-B, L.P., Evolution Credit Partners Trade Finance Master L.P. (as successor in interest to Evolution Credit Partners Trade Finance L.P.), Evolution Credit Opportunity Master Fund III-B, LP, and certain other Evolution affiliated funds.

3 Capitalized terms not defined herein have the meaning ascribed to such terms in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions and First Day Relief* (Docket No. 22) (the "**First Day Declaration**") or the DIP Orders (as defined herein).

WHEREAS, on October 1, 2025, the Bankruptcy Court (a) entered the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (Docket No. 217) (the "**Interim DIP Order**"), and (b) approved that certain *Stipulation and Agreed Interim Order Regarding Adequate Protection Among Debtors and Evolution Credit Partners* (Docket No. 216) (the "**Interim Stipulation**").

WHEREAS, on October 9, 2025, the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (Docket No. 313) (the "**Committee**") in each of the Debtors' chapter 11 cases.

WHEREAS, on March 28, 2023, Debtors (1) Strongarm, LLC, (2) Carter Fuel Systems, LLC, (3) Trico Products Corporation, (4) ASC Industries, Inc., (5) Fram Group Operations LLC, (6) Brake Parts Inc. LLC, (7) First Brands Group, LLC and (8) Champion Laboratories, Inc. (collectively, the "**Receivables Sellers**") entered into that certain *Master Receivables Purchase Agreement* (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Evolution Receivables Facility**") with Evolution;

WHEREAS, pursuant to the Evolution Receivables Facility, the Receivables Sellers have assertedly sold certain receivables to Evolution up to a maximum facility limit of $80 million;

WHEREAS, on November 9, 2023, Debtor Patterson Inventory, LLC (the "**Patterson Borrower**") entered into that certain *Uncommitted Inventory Finance Agreement* (together with any related credit documentation, as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Patterson Credit Documents**" and

the debt facility thereunder, the "**Patterson Facility**") with Evolution Credit Opportunity Master Fund II-B, L.P., as lender;

WHEREAS, under the Patterson Facility, Evolution provided an uncommitted asset-based revolving credit facility with a maximum aggregate amount of advances available to the Patterson Borrower of $150 million;

WHEREAS, the Patterson Borrower's obligations under the Patterson Facility are assertedly (i) guaranteed by Debtor Patterson Inventory Holdings, LLC (the "**Patterson Parent**"), (ii) secured by a pledge of 100% of the equity of the Patterson Borrower that the Patterson Parent owns, and (iii) secured by a first-priority security interest in and continuing lien on substantially all assets of the Patterson Borrower, including, without limitation, inventory, accounts, equipment, goods, investment property, and intellectual property of the Patterson Borrower and the proceeds (including cash proceeds) and products of each of the foregoing (collectively, the "**Patterson Collateral**").

WHEREAS, on March 28, 2024, Starlight Inventory I, LLC (the "**Starlight Borrower**," and together with the Patterson Borrower, the "**Evolution Borrowers**") entered into that certain *Uncommitted Inventory Finance Agreement* (together with any related credit documentation, as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Starlight Credit Documents**" and the debt facility thereunder, the "**Starlight Facility**"; the Starlight Facility and the Patterson Facility, collectively, the "**Evolution Inventory Facilities**");

WHEREAS, under the Starlight Facility, Evolution provided an uncommitted asset-based revolving credit facility with a maximum aggregate amount of advances available to the Starlight Borrower of $150 million;

WHEREAS, the Starlight Borrower's obligations under the Starlight Facility are assertedly (i) guaranteed by Starlight Inventory Holdings I, LLC (the "**Starlight Parent**"), (ii) secured by a pledge of 100% of the equity of the Starlight Borrower that the Starlight Parent owns, and (iii) secured by a first-priority security interest in and continuing lien on substantially all assets of the Starlight Borrower, including, without limitation, inventory, accounts, equipment, goods, investment property, and intellectual property of the Starlight Borrower and the proceeds (including cash proceeds) and products of each of the foregoing (collectively, the "**Starlight Collateral**," and together with the Patterson Collateral and such other property in which Evolution has asserted an ownership or security interest, including, without limitation, accounts, accounts receivable (including all receivables covered by the Evolution Receivables Facility), and inventory, together with the products and proceeds (including cash proceeds) of each of the foregoing, collectively, the "**Evolution Collateral**");[4]

WHEREAS, approximately $230 million of principal obligations under the Evolution Inventory Facilities is assertedly outstanding (the "**Evolution Inventory Claims**"); and

WHEREAS, the Debtors and other stakeholders, including the DIP Secured Parties, the Prepetition Secured Parties, and other parties in interest, are reviewing the validity, priority, and extent of the claims and liens asserted by Evolution against the Evolution Collateral (the "**Evolution Collateral Review**").

[4] As of the Petition Date, the Starlight Collateral was located at the BPI – 1100 Corporate Drive, McHenry, IL 60050 facility and the BPI – 1380 Corporate Drive, McHenry, IL 60050 facility, and the Patterson Collateral was located at the BPI – 2701 Keystone Pacific Parkway, Patterson, CA 95363 facility and the BPI – 14528 Bonelli St., City of Industry, CA 91746 facility.

**NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, AND ORDERED THAT:**

1. ***Debtors' Continued Use***. The Debtors are authorized and permitted to continue using Evolution Collateral in the ordinary course of business through and including the earlier of January 5, 2026 and the date that is 90 days after entry of this Stipulation by the Bankruptcy Court, as may be extended in writing by each of the Parties (the "**Interim Period**"), subject to the terms and conditions set forth herein and to the entry of a DIP Order consistent with this Stipulation in all respects.

2. ***Adequate Protection Liens; Replacement Collateral***. Subject to the Evolution Collateral Review and true sales or cash sweeps in paragraph 4 below, Evolution shall: (a) retain its asserted ownership interest, first-priority liens, and/or other rights with respect to any Evolution Collateral, including, without limitation, pre- and postpetition accounts receivable generated from the sale by any Debtor at any time of any Evolution Collateral and any cash collections in respect of Evolution Collateral; and (b) retain its asserted first-priority lien on any Evolution Collateral purchased or collected by any Debtor (or non-Debtor affiliate) prior to, on, and after the Petition Date (clauses (a) and (b), collectively, the "**Evolution Lien**").

3. ***No Other Indebtedness or Priming or Pari Liens***. During the Interim Period, no Order of the Bankruptcy Court (including the DIP Orders) shall grant any liens on or claims against the Evolution Collateral, including liens that are senior to or *pari passu* with any Evolution Lien. During the Interim Period, no Order of the Bankruptcy Court shall grant liens against or claims to any proceeds of any claim or cause of action, including so-called avoidance actions arising under chapter 5 of the Bankruptcy Code, to the extent that such claims or causes of action belong to an Evolution Borrower. For the avoidance of doubt, in the event the Evolution Liens on Evolution

Collateral are invalidated following a successful challenge as finally judicially determined by a court of competent jurisdiction, such Evolution Collateral shall be Collateral pursuant to the DIP Orders.

4. ***Sale and Replenishment of Inventory Relating to the Evolution Inventory Facilities***.

A. From the entry by the Bankruptcy Court of this Stipulation until termination by its terms, the Debtors shall not sell or transfer any inventory, or otherwise use any other assets (including, without limitation, cash collateral) that is Evolution Collateral, except as provided in this Stipulation. During the Interim Period, the Evolution Borrowers may sell Evolution Collateral that is inventory to the FBG Debtor purchasers for 102% of the cost value of the Evolution Collateral. Such inventory shall be purchased through an intercompany transfer by the FBG Debtors to the applicable Evolution Borrower of (a) cash in immediately available funds deposited into the Segregated Accounts (defined below) to be held as cash collateral subject to the asserted liens of Evolution (and any other parties), and/or (ii) inventory of the same type that would constitute Eligible Inventory (as used in this Stipulation, as defined in the Patterson Credit Documents and Starlight Credit Documents).

B. From and after the applicable Petition Date, with respect to the Evolution Inventory Facilities, the Debtors shall maintain the Evolution Collateral such that, on any True-Up Date (as defined below), (x) the sum of (A) the cost value of the Evolution Collateral that is inventory, *plus* (B) all cash deposited in the Segregated Accounts (as defined below) (collectively, the "**Collateral Value**") equals or exceeds $170,000,000 with respect to the Patterson Collateral and $165,000,000 with respect to the Starlight Collateral (collectively, the "**Collateral Maintenance Threshold**" and the collateral maintenance requirement, the "**Collateral Maintenance Covenant**").

C. At the end of each week prior to the termination of this Stipulation (the "**True-Up Date**"), the Debtors shall test the Collateral Value against the Collateral Maintenance Threshold. If, on the True-Up Date, the Collateral Value is less than the Collateral Maintenance Threshold, the Debtors shall be permitted to cure such deficiency within five (5) business days of the applicable True-Up Date by any combination of (at the FBG Debtors' election) (i) transferring cash in immediately available funds in the amount by which the Collateral Maintenance Threshold exceeds the Collateral Value into one or more segregated accounts corresponding to the Evolution Collateral (the "**Segregated Accounts**") to be held as cash collateral subject to the asserted liens of Evolution to the extent such liens and their priority is validated as finally judicially determined by a court of competent jurisdiction (the "**Segregated Cash**"), or (ii) purchasing and transferring to the Evolution Borrowers free and clear of any liens, claims, security interests, or other encumbrances, new Eligible Inventory with a gross inventory valuation at cost equal to or exceeding the amount by which the Collateral Maintenance Threshold exceeds the Collateral Value (the actions described in clauses (i) and/or (ii), the "**Curative Actions**"). If the Debtors exercise Curative Actions within the five (5) business day cure period, the Debtors shall be permitted to continue purchasing without disruption the Evolution Collateral related to the Evolution Inventory Facilities (but not the Segregated Cash in the Segregated Accounts). In the event the Debtors fail to exercise Curative Actions prior to expiration of the five (5) business day cure period, the Debtors shall be prohibited from continuing to purchase Evolution Collateral.

D. On any True-Up Date, so long as the Evolution Borrowers are in compliance with the Collateral Maintenance Covenant, the FBG Debtors may sweep Segregated Cash in an amount such that, following such sweep, the Collateral Value equals or exceeds the Collateral Maintenance Threshold (the "**Excess Cash**"**).** Any sweep of Excess Cash shall require (a) that such sweep will

not result in the Collateral Value falling below the Collateral Maintenance Threshold, and (b) prior notice (email being sufficient) to Proskauer Rose LLP regarding the effect of such sweep on the Collateral Value. Excess Cash received by the FBG Debtors shall be deemed to be DIP Collateral for all purposes of the DIP Orders when received by the FBG Debtors.

E. To the extent Evolution Collateral that is inventory is purchased and transferred pursuant to the procedures set forth herein, all of Evolution's right, title, and interest in, to, and under such Evolution Collateral (including the Excess Cash) that is inventory shall be transferred to the applicable FBG Debtor free and clear of any and all liens, claims, or encumbrances. Transfers of Evolution Collateral (including the Excess Cash) pursuant to this Stipulation to a FBG Debtor shall constitute a legal, valid, binding, and effective transfer of such Evolution Collateral, and no such transfer shall be subject to avoidance under any provision of the Bankruptcy Code or otherwise. Each FBG Debtor, pursuant to a sale under this Stipulation, shall be deemed to be a good faith purchaser of the Evolution Collateral. Pursuant to section 363(m) of the Bankruptcy Code, if this Stipulation is reversed or modified on appeal, such reversal or modification shall not affect the validity of any transfer of Evolution Collateral or Excess Cash to the FBG Debtors pursuant to this paragraph 4(E).

5. ***Adequate Protection Liens and Superpriority Claims***. Subject to the Evolution Collateral Review and reservations set forth in paragraph 6 herein, Evolution will retain, and the Bankruptcy Court hereby grants, a first-priority, automatically perfected lien on any Evolution Collateral and the proceeds thereof (other than Evolution Collateral and Excess Cash transferred pursuant to paragraph 4 herein), including, without limitation, cash collateral, and will receive, and the Bankruptcy Court hereby grants, as adequate protection of the interests of Evolution in the Evolution Collateral (other than Evolution Collateral and Excess Cash transferred pursuant to

paragraph 4 herein) against any diminution in value of such interests, pursuant to sections 361 and 363(e) of the Bankruptcy Code, additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected postpetition first-priority security interests in and liens on all of the presently owned or hereafter acquired property and assets of the Evolution Borrowers. To the extent of any postpetition diminution in value of the interests of Evolution in the Evolution Collateral, the Bankruptcy Court hereby grants an allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "**507(b) Claim**"), which 507(b) Claim shall be an allowed claim against the Evolution Borrowers, with priority over any and all administrative expenses and all other claims against such Evolution Borrowers now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims against the Evolution Borrowers arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code.

6. ***Reservation of Rights***. The validity, amount, perfection, and priority of Evolution's asserted security, ownership, and/or any other interest in the Evolution Collateral (including amounts contained in the Segregated Accounts), its secured and unsecured claims, and the outcome of the Evolution Collateral Review, is not agreed by the Parties and will remain subject to review and challenge by the Debtors, the DIP Secured Parties, the Prepetition Secured Parties, the Committee, and other parties in interest. The rights of the Debtors, DIP Secured Parties, Prepetition Secured Parties, and any other party in interest with respect to Evolution's asserted liens, claims, interests, and priority are expressly preserved. Likewise, Evolution expressly retains all rights. Nothing in this Stipulation shall prejudice or enhance the rights of any

Party with respect to the Evolution Collateral Review, including with respect to any assets transferred to the Evolution Borrowers in accordance with paragraph 4. Notwithstanding the foregoing, nothing in this paragraph shall prejudice the rights of Evolution to the adequate protection provided pursuant to this Stipulation to the extent that any dispute pertaining to the Evolution Collateral is resolved in Evolution's favor.

7. ***Postpetition Interest; Fees and Expenses***. To the extent its claims are over-secured, Evolution's rights to receive postpetition interest on Evolution's prepetition claims, together with reasonable fees, costs, and charges as provided for under section 506(b) of the Bankruptcy Code, are reserved.

8. ***Rights to Surcharge***. The Debtors and other parties in interest reserve all rights to bring claims to surcharge the Evolution Collateral for necessary costs and expenses of preserving or disposing of property securing an allowed secured claim pursuant to section 506(c) of the Bankruptcy Code or the section 552 "equities of the case" exception.

9. ***Site Access; Books and Records***. The Evolution Borrowers shall coordinate to provide reasonable access to Evolution (and its representatives) to the Evolution Borrowers' warehouses, other facilities, and books and records to conduct updated appraisals, field exams, and inventory taking of the Evolution Collateral and to identify and trace the creation, acquisition, and transfer of, and any collections of and with respect to, the Evolution Collateral.

10. ***Reporting***. The Debtors shall provide weekly reporting of inventory balances by SKU for the Evolution Collateral and, to the best of their ability, weekly reporting of inventory transfers in and out by SKU for the Evolution Collateral. Evolution shall be provided all written reports set forth in the applicable DIP Order that are delivered to the ABL Lenders, First Lien

Lenders, and/or DIP Lenders on a confidential basis (subject to the Debtors' rights to redact or not share sensitive business information).

11. ***Termination***. Evolution may, at its option, terminate this Stipulation if: (i) the Debtors have materially breached any provision under this Stipulation and such breach is not cured within five (5) business days of the breach; or (ii) the Bankruptcy Court enters an order converting the Evolution Borrowers' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code or appointing a chapter 11 trustee or examiner, in each case with expanded powers to operate or manage the financial affairs, business, and reorganization of the Debtors. This Stipulation shall automatically terminate on the 90th day after entry of this Stipulation (unless extended by each of the Parties in writing). Any Party may terminate this Stipulation on five (5) business days' written notice (a) upon the discovery of new material facts, including facts regarding the Evolution Inventory Claims, Evolution Collateral, or Evolution Collateral Review, or (b) the Debtors determine in good faith upon the advice of outside counsel that their continued performance under the Stipulation would be inconsistent with their fiduciary duties under applicable law.

12. Promptly following entry of this Stipulation, Evolution shall withdraw the *Evolution Inventory Lender's Limited Objection to Debtors' Cash Collateral Motion* (Docket No. 459), and the *Limited Objection of Evolution Inventory Lender to Application of Debtors for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for Debtors Effective as of Petition Date* (Docket No. 462).

13. In addition, the Parties have stipulated to an abatement of the *Evolution Inventory Lender's Emergency Motion for an Order Appointing a Chapter 11 Trustee* (Docket No. 461), including all deadlines, discovery, and other proceedings in connection therewith, until further notice. Either Party may file a notice to lift the abatement on 21 days' notice.

Case 25-90399 Document 360 Filed in TXSB on 11/09/25 Page 12 of 14

14. Evolution hereby waives any and all alleged defaults of the Debtors arising from or in connection with the *Stipulation and Agreed Interim Order Regarding Adequate Protection Among Debtors and Evolution Credit Partners* (Docket No. 216).

15. The rights, claims, causes of action, and defenses, at law and in equity, with respect to the Evolution Receivables Facility and Evolution Inventory Facilities of all parties in interest in the jointly administered chapter 11 cases of the Debtors are expressly reserved.

16. This Stipulation shall not be modified, altered, amended, or vacated without the written consent of each of the Parties or by further order of the Bankruptcy Court.

17. The Debtors are authorized to take all actions necessary to effectuate this Stipulation.

18. To the extent any provision of this Stipulation is inconsistent with the Interim DIP Order, the Final DIP Order, any order approving the use of cash collateral or the Debtors' cash management system, or any order granting "first day" relief in these chapter 11 cases, this Stipulation shall govern and control.

19. The Bankruptcy Court retains sole and exclusive jurisdiction over all matters related to this Stipulation.

Signed: November 09, 2025

Christopher Lopez
United States Bankruptcy Judge

Case 25-90399 Document 379 Filed in TXSB on 11/07/25 Page 13 of 14

**STIPULATED AND AGREED TO BY:**

Dated: November 7, 2025

*/s/ Clifford W. Carlson*

WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: gabriel.morgan@weil.com
clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (*pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: matt.barr@weil.com
sunny.singh@weil.com
andriana.georgallas@weil.com
kevin.bostel@weil.com
jason.george@weil.com

*Proposed Attorneys for Debtors and Debtors in Possession*

Dated: November 7, 2025

*/s/ Vincent Indelicato*

**GRAY REED**
Jason S. Brookner
Texas Bar No. 24033684
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100
Email: jbrookner@grayreed.com

-and-

**PROSKAUER ROSE LLP**
Vincent Indelicato (admitted *pro hac vice*)
Matthew R. Koch (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: vindelicato@proskauer.com
mkoch@proskauer.com

- and -

Charles A. Dale (admitted *pro hac vice*)
One International Plaza
Boston, MA 02110-2600
Telephone: (617) 526-9600
Email: cdale@proskauer.com

*Attorneys for Evolution*

Case 25-90399 Document 367 Filed in TXSB on 11/07/25 Page 14 of 14

**Certificate of Service**

I certify that on November 7, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Clifford W. Carlson*
Clifford W. Carlson