**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | : | |
| | : | Chapter 11 |
| In re: | : | |
| | : | |
| FIRST BRANDS GROUP, *et al.*, | : | Case No. 25-90399 (CML) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |

**OMNIBUS REPLY IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER (I) CLARIFYING THAT THE MAY 29, 2026 ORDER (ECF NO. 2845) MODIFIES THE AUTOMATIC STAY TO AUTHORIZE PAYMENTS BY THE EXCESS ABC INSURERS, OR ALTERNATIVELY (II) AUTHORIZING, AND, TO THE EXTENT NECESSARY, MODIFYING THE AUTOMATIC STAY TO ALLOW THE EXCESS ABC INSURERS TO MAKE PAYMENTS, INCLUDING THE ADVANCEMENT OF DEFENSE COSTS, OF INSURED PERSONS**

XL Specialty Insurance Company ("XL Specialty"), Endurance American Insurance Company, Markel American Insurance Company, Berkley Insurance Company, Arch Insurance Company, Federal Insurance Company, Twin City Fire Insurance Company, and Old Republic Insurance Company (collectively, the "Movants" or "Excess ABC Insurers") respectfully submit this reply in support of this motion (this "Motion"):

1. As described in the Motion, Movants are insurers who issued excess ABC directors and officers ("D&O") insurance policies to non-Debtor Mayfair Enterprises, LLC ("Mayfair") (the "Excess ABC Policies").[2] Debtor First Brands Group LLC (the "Debtor" or "First Brands") was a subsidiary of

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] The Excess ABC Policies are listed in Exhibit C to ECF No. 10 (ECF No. 10-3, at 2). For the avoidance of doubt, the Excess ABC Policies include: (1) Policy No. ELU202151-25, issued by XL

Mayfair.

2. This Court's January 7, 2026 *Order Regarding Motion for Entry of an Order (I) Authorizing and, to the Extent Necessary, Modifying the Automatic Stay to Allow Use of Proceeds of Directors and Officers Liability Insurance Policies Issued to Non-Debtor Mayfair Enterprises, LLC for Insureds' Defense Costs or, in the alternative, (II) Confirming that Advancement of Defense Costs and Providing Notice in Accordance with Directors and Officers Liability Insurance Policies Does Not Violate the Automatic Stay (ECF No. 798)* (ECF No. 1231) (the "January Order"), in part, denied without prejudice the motion by certain former First Brands directors and/or officers of First Brands for relief from the automatic stay to permit the insurers who issued "ABC" insurance policies to Mayfair to pay Defense Costs under their policies (ECF No. 798). This Court's *May 29, 2026 Order* (ECF No. 2845) clearly and unequivocally reversed the portion of the January Order on that limited issue (that was never appealed). Accordingly, the automatic stay with respect to the Excess ABC Policies has been lifted, allowing Movants to make payments, including the advancement of Insured Person Defense Costs, under the Excess ABC Policies.

3. While Movant XL Specialty was preparing to review submitted Defense Costs and pay covered Claims in light of the *May 29, 2026 Order*, XL Specialty and the other Movants were forced to file this Motion because the Official Committee of Unsecured Creditors ("UCC") and creditor Katsumi Servicing LLP ("Katsumi") disagreed with Movants' interpretation of the *May 29, 2026 Order*. The UCC

Specialty Insurance Company. (2) Policy No. DOX30001499505, issued by Endurance American Insurance Company, (3) Policy No. MKLM3MXM000752, issued by Markel American Insurance Company, (4) Policy No. BPRO8120547, issued by Berkley Insurance Company, (5) Policy No. PCX1000134-05, issued by Arch Insurance Company, (6) Policy No. G46865017 008, issued by Federal Insurance Company, (7) Policy No. 83 PE 0423884-25, issued by Twin City Fire Insurance Company, (8) Policy No. PC8EX00256-251, issued by Everest National Insurance Company, and (9) Policy No. ORPRO 13 103159, issued by Old Republic Insurance Company. *See* Mot., Ex. A.

and Katsumi claimed the Court did not intend to lift the automatic stay with respect to the Excess ABC Policies.

4. To ensure that they do not run afoul of this Court's directive, Movants filed this Motion for clarification of the *May 29, 2026 Order*. As alternative relief, the Motion also requests that this Court lift the automatic stay for the Excess ABC Insurers to pay covered Loss under their policies, if the Court did not intend for the *May 29, 2026 Order* to already allow those payments.

5. The UCC (which no longer exists), Katsumi and other Parties filed objections to the Motion. For the reasons outlined below, the Objectors offer no valid bases to deny the relief requested in the Motion. This Court should confirm that its *May 29, 2026 Order* lifted the automatic stay such that Movants are allowed to make payments, including the advancement of Insured Person Defense Costs, under the Excess ABC Policies.

## THE OBJECTIONS

6. Prior to this Court's August 24, 2026 *Order Denying Plan Confirmation* (ECF No. 3710) and subsequent conversion of the Debtors' Chapter 11 cases to a Chapter 7 cases, the UCC filed an objection to the Motion (ECF No. 3695) (the "UCC Objection").

7. More recently, after the Chapter 7 conversion, Katsumi filed an objection to the Motion (ECF No. 3876) (the "Katsumi Objection"), which was joined by creditors Evolution Credit Opportunity Master Fund II-B, L.P., Evolution Credit Partners Trade Finance Master, L.P., Evolution Credit Opportunity Master Fund III-B, LP, and certain other Evolution-affiliated funds (collectively, "Evolution") (ECF No. 3893) (the "Evolution Joinder").

8. Interim Chapter 7 Trustee Eva S. Engelhart also filed an objection (ECF No. 3904) (the "Trustee Objection") (the UCC Objection, Katsumi Objection, Evolution Joinder, and Trustee Objection are collectively referred to as the "Objections").

9. Interim Chapter 7 Trustee Ronald Sommers filed a statement of no objection, which confirms that the Trustee supports this Court clarifying the effect of its *May 29, 2026 Order* (ECF No. 3872).

10. The bases for the Objections are largely the same. At bottom, the Objectors argue that Movants' interpretation of the *May 29, 2026 Order* cannot be correct because the plain language does not support the Movants' interpretation. *See* Trustee Objection, ¶¶ 35-37, Katsumi Objection, ¶¶ 8-9. They also contend that the Court did not have jurisdiction to reconsider its denial of the lift stay request. *See* UCC Objection, ¶¶ 11–17, Katsumi Objection, ¶¶ 8, and Trustee Objection, ¶¶ 28-34. And they claim that any decision by this Court to reverse or reconsider its January Order would improperly moot the Edward James and Side A Insurer appeal currently pending in the District Court regarding certain findings in the January Order. S*ee* Katsumi Objection, ¶¶ 6-7, Evolution Joinder, ¶ 5, and Trustee Objection, ¶ 27.[3] The consolidated appeal is captioned *In re James*, No. 4:26-cv-00513 (S.D. Tex.) (the "Appeal").

11. The Objectors additionally argue that, should the Court clarify that the *May 29, 2026 Order* did not lift the automatic stay with respect to the Excess ABC Policies, Movants have not established cause to lift the stay at this time. *See* Trustee Objection, ¶¶ 38-43, Katsumi Objection, ¶¶ 10-13.

[3] The Evolution Joinder raises the additional argument that the Movants' interpretation of the *May 29, 2026* Order cannot be correct because the Court would not have issued a separate order lifting the stay without providing notice and an opportunity for hearing on the issue pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(1). *See* Evolution's Joinder, ¶ 3. However, Rule 4001(a)(1) sets forth what is required of a *movant* filing a motion under Section 362(g), not what is required of the Court if it decides to reexamine its prior ruling on a Section 362(g) motion.

# REPLY

## I. THE OBJECTORS' INTERPRETATION OF THE MAY 29, 2026 ORDER IS ILLOGICAL

12. The *May 29, 2026 Order* provides that Berkshire Hathaway Specialty Insurance Company (the "Primary ABC Insurer") and "all related Side A Insurers are authorized to make payments, including the advancement of Defense Costs (as defined in the [Primary] ABC Policy) to, or on behalf of, any eligible party in accordance with the terms of the [Primary] ABC Policy, without further notice or relief of this Court." May 29, 2026 Order, ¶ 1. The order goes on to confirm that "[t]he automatic stay set forth in section 362 of the Bankruptcy Code, to the extent applicable, is modified to permit the Primary [ABC] Insurer and Side A Insurers to pay and/or advance Defense Costs consistent with their obligations under the [Primary] ABC Policy." *Id.*, ¶ 2.

13. The *May 29, 2026 Order* is clear that the terms "Side A Insurers" and "Side A Policies" are to be given the same meanings as provided in the Insured Persons' original lift stay motion (ECF No. 798) (the "Insured Persons' Lift Stay Motion"). As explained in the Motion and in the various joinders and responses filed thereto, these terms are plainly defined to reference the Excess ABC Insurers and the Excess ABC Policies **that provide Side A coverage** to Insured Persons. *See* Edward James Joinder (ECF No. 3824), at 3, Patrick James Response (ECF No. 3848), ¶ 4. Thus, on its face, the *May 29, 2026 Order* must be read to allow the Excess ABC Insurers to make payments under the Excess ABC Policies, as the Court has lifted the automatic stay with respect to those policies.

14. The Objectors dispute this conclusion because the Court's January Order omits the use of "Side A Insurers." *See* Katsumi Objection, ¶¶ 8-9, Trustee Objection, ¶¶ 35-36. The January Order states: "For the reasons stated on the record at the January 7, 2026 hearing, IT IS ORDERED that the Side A Policies and the proceeds of the Side A Policies are not property of the estate under § 541 of

the Bankruptcy Code. Thus, the automatic stay under § 362 of the Bankruptcy Code does not apply to the Side A Policies or their proceeds . . .". ECF No. 1231. The January Order uses the term "Side A Policies" to refer only to those policies traditionally referred to as "Side A" policies because those policies provide only Side A coverage to Insured Persons. But the ABC Policies, including the Berkshire Hathaway "ABC Policy" referenced in the January Order, **also** provide Side A coverage. Exhibit A to Evolution Joinder (ECF No. 3896), at 207:21-208:1. Nothing in the January Order addresses the issue here: whether the Court understood "Side A Insurers" in the *May 29, 2026 Order* to include the Excess ABC Insurers.

15. Context matters. *See United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023) (quoting *United States v. Koutsostamatis*, 956 F.3d 301, 306 (5th Cir. 2020)) ("[t]ext should never be divorced from context."). The January Order confirmed the Court's oral rulings during the hearing on the Insured Persons' Lift Stay Motion. *See generally* Exhibit A to the Evolution Joinder (ECF No. 3896), at 207-220. The Court issued separate rulings with respect to the traditional Side A Policies and the ABC Policies. *See* January Order. The Court concluded that the proceeds of the Side A Policies are not property of the estate, and the proceeds of Berkshire Hathaway's Primary ABC Policy are property of the estate. *Id.* The Court denied without prejudice the Insured Persons' request to lift the stay for Berkshire Hathway to pay under the Primary ABC Policy. *Id.*

16. The *May 29, 2026 Order* plainly allows the Primary ABC Insurer (Berkshire Hathaway) to make payments under the Primary ABC Policy and modifies the automatic stay for that reason. ECF No. 2845. The *May 29, 2026 Order* similarly allows the "related" "Side A Insurers" to pay in a manner consistent with the "obligations under the ABC Policy," modifying the stay for them too. *Id.* Contrary to the Objectors' interpretation, in May, the Court was not referring to the "Side A Insurers" as the issuers of the Side A Policies. The Court had already concluded in January that the

automatic stay was inapplicable to the proceeds of the Side A Policies. ECF No. 1231; *see also See* Exhibit A to Evolution Joinder, at 209:3-4 (The Court: "The automatic stay would only come into effect if something is property of the estate."). There was no need for the Court to issue a subsequent order lifting the stay for anyone other than the issuers of the ABC Policies.

17. That "Side A Insurers" in the *May 29, 2026* Order includes the Excess ABC Insurers is also clear from the definition used by the Court. The Court defined "Side A Insurers" to have the same meaning as the identical term used by the Insured Persons in the Insured Persons' Lift Stay Motion. May 29, 2026 Order, ¶ 1 n.1 (citing Insured Persons' Lift Stay Mot. (ECF NO. 798)). In that Motion, the Insured Persons define "Side A Insurers" to mean all directors and officers liability insurers, referring to the same policies identified by the Debtors in a first day motion. Insured Persons' Lift Stay Mot., ¶ 4 (citing ECF No. 10). That first day motion references the entire D&O tower, including the Primary ABC Policy, the Excess ABC Policies, and the Side A Policies. ECF No. 10 (Emerg. Mot. of Debtors for Interim and Final Orders), ¶ 7; ECF No. 10-3 (Exhibit C), at 2-3. The Insured Persons clearly understood that the single D&O tower included both ABC Policies and Side A Policies. Their motion uses separate defined terms for "Side A Policies" and "ABC Policy." Insured Persons' Lift Stay Mot., ¶ 4.

18. Further, the Insured Persons' and the Court's identical definition of "Side A Insurers" to include all D&O insurers (not just the issuers of the Side A Policies) is consistent with the Insured Persons' request for access to the proceeds of the D&O policies. The only coverage to which the Insured Persons are arguably entitled is Side A coverage under the ABC Policies and the Side A Policies. *Id.*, ¶¶ 13-15; *see also* Exhibit A to Evolution Joinder, at 207:21-22 (confirming the Court's understanding that each type of policy contains Side A coverage).

19. Quite simply, the Objectors are attempting to contort the Court's clear definition of "Side A Insurers" and disregarding the context for that definition. The Movants request that that the Court grant this Motion by clarifying that the *May 29, 2026 Order* allows the Excess ABC Insurers to pay covered Loss under the Excess ABC Policies, including Side A payments for the advancement of Defense Costs to the Insured Persons.

## II. THIS COURT HAD JURISDICTION TO ENTER THE MAY 29, 2026 ORDER

20. The Objectors next argue that the *May 29, 2026 Order* could not have lifted the stay with respect to the Excess ABC Policies because the Court lacked jurisdiction to do so. Specifically, the Objectors argue that the filing of the Appeal divested this Court of jurisdiction to reconsider or modify the January Order in any way. *See* Katsumi Objection, ¶¶ 6-8, Evolution Joinder, ¶ 4, Trustee Objection, ¶¶ 28-34.

21. As stated in the *Side A Insurers' Joinder in Excess ABC Insurers' Motion for Clarification or, in the Alternative, Relief from the Automatic Stay* (ECF No. 3825) (the "Side A Insurer Joinder"), the January Order "did three things: it (1) held that the Side A Policies and proceeds are not property of the estate under § 541 of the Bankruptcy Code and therefore not subject to the automatic stay under § 362 of the Bankruptcy Code; (2) held that the Debtors have an interest in the proceeds of the [Primary] ABC Policy [and Excess ABC Policies] and that interest is property of the estate under § 541; and (3) denied the request to lift the automatic stay as to the [Primary] ABC Policy [and Excess ABC Policies] for cause under § 362(d), without prejudice." Side A Insurer Joinder, 3. The Appeal "is narrowly limited to the second part of the [January] Order only." *Id.*; *see also* Appeal ECF No. 1-1 (Notice of Appeal), at 2 ("such appeal is limited to only the parts of the Order … finding 'that Debtors have interest in the proceeds of the ABC Policy, and that interest is property of the estate under § 541'"); *accord* Mot. to Consolidate, Appeal ECF No. 36, at 3 ("the Side A Insurers filed a

substantively identical [notice of appeal]").

22. As stated plainly in the Motion, Movants do not seek to disturb the Court's ruling with respect to the issue of whether the proceeds of the Primary ABC Policy and the Excess ABC Policies are property of the estate. Mot., ¶ 43. Similarly, the *May 29, 2026 Order* does not in any way modify the January Order with respect to that issue. As the Fifth Circuit Court of Appeals stated in *In re Scopac*, 624 F.3d 274, 280 (5th Cir. 2010), *opinion modified on denial of reh'g*, 649 F.3d 320 (5th Cir. 2011), in bankruptcy cases, "discrete controversies within the overall case framework may often deserve separate appellate consideration." Moreover, "when a notice of appeal has been filed in a bankruptcy case, the bankruptcy court retains jurisdiction to address elements of the bankruptcy proceeding that are not the subject of that appeal." *Id.* The appellants sought relief through the Appeal on the discrete issue of whether the interests of the Primary ABC Policy and Excess ABC Policies were property of the estate. They did not appeal the entirety of the January Order. As such, this Court retained jurisdiction to reconsider whether there was cause to lift the automatic stay as to the ABC Policies, notwithstanding the appealed ruling that the proceeds of those Policies were property of the estate.

23. With respect to the Objectors' jurisdictional argument, Movants agree with all other responsive arguments made by Edward James (ECF Nos. 3824 and 3928), Patrick James (ECF Nos. 3848 and 3920), and the Side A Insurers (ECF No. 3825).

## III. THE *MAY 29, 2026* ORDER DOES NOT "MOOT" THE APPEAL

24. The Objectors additionally argue that the May 29, 2026 Order cannot be interpreted to allow payments under the Excess ABC Policies because that interpretation would effectively circumvent the District Court's authority and "moot" the pending Appeal. *See* Katsumi Objection, ¶ 7, Trustee Objection, ¶ 33. To support this argument, Objectors rely on status reports filed in the

Appeal by the appellants (Edward James and the Side A Insurers) to argue appellants themselves admit the *May 29, 2026 Order* inappropriately "mooted" the Appeal. *See* Trustee Objection, ¶ 20. However, Objectors, at best, misinterpret and, at worst, intentionally mischaracterize, what the appellants conveyed to the Court, as well as the import of appellants' status report representations.

25. On May 22, 2026, the appellants and appellees filed a joint motion to stay the Appeal pending this Court's decision on whether to confirm the Debtors' *Revised Plan*. Appeal ECF No. 55, ¶ 10. The District Court granted the stay the same day. *See* Appeal ECF No. 56.

26. The District Court ordered the parties to submit monthly status reports to keep it apprised of the status of bankruptcy matter and its impact on how the parties planned to proceed in the Appeal. *See id.* Following the issuance of this Court's *May 29, 2026 Order*, the appellants have informed the District Court, through a status report, that if the *May 29, 2026 Order* is deemed to have lifted the stay with respect to the Excess ABC Policies, the appellants would consider the Appeal "effectively [] resolved" because "[a]t its core, this Appeal involves a dispute over whether defense costs can be paid under the Primary ABC Policy and Excess ABC Policies." Appeal ECF No. 60 (Appellants' Status Report), ¶¶ 1, 7.

27. The appellants have not, to Movants' knowledge, ever represented to the District Court that the *May 29, 2026 Order* "mooted" the Appeal or that this Motion would "moot" it. Instead, the appellants have indicated they may be willing to "resolve" the Appeal by abandoning it, as the practical effect of the Motion would result in the Excess ABC Policies paying the costs the Side A Insurers believe are covered under those policies. Whether that hypothetical plays out is of no import here, because the Motion does not seek any relief regarding the portion of the January Order at issue in the Appeal.

## IV. MOVANTS WILL PRESENT EVIDENCE THAT CAUSE EXISTS TO LIFT THE STAY

28. If this Court does not grant Movants' requested clarification of the *May 29, 2026 Order*, Movants intend to present evidence at a hearing to prove that there is cause to lift the stay with respect to the Excess ABC Policies. As previewed in the Motion, the Edward James Joinder and the Patrick James Response, the legal fees incurred by Insured Persons have now exceeded $60 million, more than half of which are currently outstanding. The Criminal Proceeding involving Patrick and Edward James has required and will continue to require significant legal work in preparation for next year's trial. The Excess ABC Policies, subject to their terms, conditions and exclusions, were purchased by Mayfair to protect its directors and officers and, as relevant here, to ensure payment of covered Defense Costs even in instances of alleged criminal liability.

29. The Objectors' denial that there is sufficient "cause" to lift the stay is based entirely on the false premise that the Chapter 7 Trustee and the creditors have some direct and current or future right to the proceeds of the Excess ABC Policies. They do not. At most, the Chapter 7 Trustee and the creditors may have an indirect right to the proceeds if and when they succeed in any legal claims against the Insured Persons, either through settlement of or judgment on those claims. And even then, any amounts owed to them by any Insured would have to be covered under the express contractual terms and conditions of the Excess ABC Policies.

30. What the Objectors are doing is inappropriately attempting to reserve policy proceeds based on their speculation that, at some point in the future, they may succeed on certain legal claims against the Insured Persons. Not only do the Excess ABC policies require the Excess ABC Insurers to prioritize Side A coverage to the Insured Persons over any other claimed Loss, the Excess ABC Policies ***explicitly forbid*** the Excess ABC Insurers from "consider[ing] [] other future payment

obligations" when faced with Loss that is currently due and payable under their policies. *See* Mot., ¶ 16. The Objectors can neither rewrite nor disregard this policy language, which establishes cause to lift the stay. *See In re Crippin*, 877 F.2d 594, 598 (7th Cir. 1989) ("[B]ankruptcy courts do not have the power to rewrite contracts"); *In re MF Global Holdings Ltd.*, 469 B.R. 177 194-95 (Bankr. S.D.N.Y. 2012) ("The filing of a bankruptcy petition does not alter the scope or terms of a debtor's insurance policy "); *In re Mitchell*, 2012 WL 5988841, at *6 (Bankr. D. Md. Nov. 29, 2012) ("[T]he insurance contracts cannot be rewritten by this Court.").

31. Based on the totality of the evidence presented, this Court should find sufficient cause to lift the stay with respect to the Excess ABC Policies so that the Excess ABC Insurers may pay covered amounts related to Claims asserted against the Insured Persons.

Respectfully submitted this 19th day of October, 2026.


By: s/ Justin S. Levy
**WERNER AHARI MANGEL LLP**
Justin S. Levy
Tex. Bar No. 24078852
S.D. Tex. No. 1673395
4514 Cole Ave, Suite 600
Dallas, TX 75205
Telephone: 202-599-1131
Email: jlevy@wam.law

*Attorney for XL Specialty Insurance Company and Federal Insurance Company*

By: s/ Christopher Brown (with consent)
**KAUFMAN DOLOWICH**
Christopher Brown
Tex. Bar No. 24145884
S.D. Tex. No. 3904100
14643 Dallas Parkway, Suite 550
Dallas, TX 75254

Telephone: 407-904-0919
Email: cbrown@kaufmandolowich.com

*Attorney for Endurance American Insurance Company*

By: s/ Cary Joy Economou (with consent)

**WERNER AHARI MANGEL LLP**
Cary Joy Economou
Tex. Bar No. 24082201
S.D. Tex. No. 1125319
4514 Cole Ave, Suite 600
Dallas, TX 75205
Telephone: 202-599-1069
Email: ceconomou@wam.law

*Attorney for Markel American Insurance Company, Berkley Insurance Company, and Arch Insurance Company*

By: s/Sara E. Nau (with consent)

**PHELPS DUNBAR LLP**
Sara E. Nau
Tex. Bar No. 24083551
S.D. Tex. No. 3030010
1001 Fannin Street, Suite 2200
Houston, TX 77002
Telephone: 713-877-5503
Email: sara.nau@phelps.com

*Attorney for Twin City Fire Insurance Company*

By: s/Tony L. Draper (with consent)

**WALKER WILCOX MATOUSEK LLP**
Tony L. Draper
Tex. Bar No. 00798156
S.D. Tex. No. 24352
1001 McKinney Street, Suite 2000
Houston, TX 77002
Telephone: 713-654-8001
Email: tdraper@walkerwilcox.com

*Attorney for Old Republic Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2026, I served a true and correct copy of the above and foregoing instrument via the Court's CM/EDF electronic system to all parties consenting to service through the same, and on all parties required by Local Rule 4001-1(a)(4).

s/ Justin S. Levy