**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>FIRST BRANDS GROUP, LLC, et al.[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 25-90399 (CML)<br><br>(Jointly Administered) |

**TOTAL QUALITY LOGISTICS, LLC'S APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM <u>PURSUANT TO 11 U.S.C. SECTION 503(B)(1)(A)</u>**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Total Quality Logistics, LLC ("TQL") hereby files this Application for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)(A) ("Application"). In support of this Application, TQL respectfully states as follows:

## <u>PRELIMINARY STATEMENT</u>

1. As of the date of this Application, the above-captioned debtors (collectively, "Debtors") owe $268,499.20 ("Administrative Expense Claim") to TQL on account of essential post-petition logistics services provided by TQL to Debtors. The amounts owed are supported by the invoices attached as **Exhibit 1** ("Outstanding Invoices") to **Exhibit B** attached hereto.

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

2. Post-petition, Debtors explicitly requested that TQL provide the logistics and transportation services that now underlie the Administrative Expense Claim. TQL relied on that request and on the DIP Order's[2] express protection – a $200 million "basket" designated specifically for post-petition administrative expenses ("Administrative Expense Claims Basket") – and provided those services for approximately five months, generating the 114 documented **unpaid** Outstanding Invoices totaling $268,499.20.

3. Despite the Debtors' request for the post-petition services and the DIP Order protections, Debtors refused to pay TQL even while offering to stipulate to the amount of the Administrative Expense Claim.

4. TQL should be paid pro-rata from the Administrative Expense Claims Basket along with the other Chapter 11 administrative creditors and to the extent insufficient funds exist to pay TQL's Administrative Expense Claim in full from the Administrative Expense Claims Basket, any remainder of TQL's Administrative Expense Claim not paid from the Administrative Expense Claims Basket should be paid pursuant to the priority scheme outlined in 11 U.S.C. § 507.

5. Accordingly, TQL hereby files this Application for allowance and payment of the Administrative Expense Claim pursuant to 11 U.S.C. § 503(b)(1)(A), the terms of the DIP Order (defined below) including the Administrative Expense Claims Basket, and otherwise subject to the Chapter 7 priority scheme, and submits the Declaration of Joseph Wells ("Wells Decl."), attached hereto as **Exhibit B**, in support thereof.

## JURISDICTION AND VENUE

6. This Court has jurisdiction to consider this Application under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue for this case is proper in this district

[2]The "DIP Order" means are refers to the Final DIP Financing Order entered on November 9, 2025 [Dk. 608].

pursuant to 28 U.S.C. §§ 1408 and 1409. The legal predicates for the relief requested herein are 11 U.S.C. §§ 105(a) and 503.

## BACKGROUND

### A. Pre-Petition Relationship and Services

7. Just prior to the commencement of Debtors' Chapter 11 cases, TQL provided logistics services to First Brands Group, LLC and related Debtor entities, whereby TQL arranged the transportation of goods for the Debtors.

### B. Commencement of Bankruptcy Cases and Conversion to Chapter 7

8. On September 24, 2025 ("Petition Date"), Global Assets LLC and twelve affiliated Debtor entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this Court. On September 28, 2025, First Brands Group, LLC ("FBG"), and 98 additional Debtor entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. These cases have been jointly administered under Case No. 25-90399 (CML).

9. On September 1, 2026, these cases were converted to Chapter 7 [Dk. 3748 ("Conversion Order")], and Eva S. Engelhart was appointed as Chapter 7 trustee [Dk. 3749].

### C. Post-Petition Request for Continuation of Services

10. Following the commencement of the Chapter 11 cases, the Debtors, acting through their debtor-in-possession management, requested and/or otherwise authorized that TQL continue to provide logistics services in the ordinary course of business, including logistics services arranged through Ryder and other third-party providers.

11. On November 9, 2025, this Court entered the DIP Order authorizing post-petition financing. The DIP Order established, among other things, the $200 million Administrative Expense Claims Basket designated for post-petition administrative expenses to ensure the business

remained operational, to pay post-petition claims, and to maintain the Estate's administrative solvency.

12. TQL, relying upon the Debtors' request and the protections established in the DIP Order, [3] agreed to continue providing logistics services on a post-petition basis. TQL's decision to continue providing services was made in direct reliance on the DIP Order's explicit protection for post-petition administrative expenses.

**D. Post-Petition Services Rendered**

13. Following the Petition Date and continuing through approximately March 3, 2026, TQL provided logistics services to the Debtors, at the request of the Debtors made by the Debtors to either TQL directly or to Ryder Integrated Logistics Inc. as agent on behalf of shipper, whereby TQL arranged the transportation of goods for the Debtors. These post-petition services were necessary to enable the Debtors to continue ordinary course of business operations during their chapter 11 cases.

14. The post-petition services by TQL directly benefitted the Debtors' Estate by facilitating the transportation of supplies and materials necessary for the Debtors to continue ordinary course of business operations, generate revenue, preserve the Debtors' going-concern value thus providing value to the Estate and operational continuity, maintain customer relationships and fulfill customer orders, and prevent disruption to the Debtors' business operations during the Debtors' chapter 11 cases.

**E. Invoices, Payment Terms, and Non-Payment**

15. In connection with the post-petition services rendered, approximately one hundred fourteen (114) separate invoices, constituting the Outstanding Invoices, were issued by TQL to the Debtors. These Outstanding Invoices remain unpaid and further document the specific services

[3] While Debtors' cases were converted to Chapter 7, and the Administrative Expense Claim was incurred during the Chapter 11 phase of the case, the terms of the DIP Order remain in effect as outlined in the Conversion Order.

rendered, the dates of service, and the agreed rates. The Outstanding Invoices have not been paid by the Debtors within the agreed upon payment terms. *See* Wells Decl., ¶ 8, **Exhibit 1** (the Outstanding Invoices).

16. The Outstanding Invoices reflect invoice dates ranging from December 5, 2025 through March 23, 2026; specific logistics services requested by the Debtors; agreed rates for services consistent with the parties' arrangement; and all clearly reflect dates of services that are post-petition services.

17. TQL received a few post-petition payments from the Debtors (approximately 12 payments), demonstrating the Debtors' initial ability and willingness to pay and further inducing TQL's reliance on continued payment. However, the Outstanding Invoices remain unpaid, leaving a balance due of $268,499.20. *See* Wells Decl., **Exhibit 2** (aging schedule of Outstanding Invoices).

**F. Demand for Payment and Debtor's Response**

18. On April 2, 2026, TQL, through its counsel, made formal demand upon the Debtors' counsel for payment of all outstanding post-petition invoices totaling $161,182.99. On May 6, 2026, TQL, through its counsel, updated the amount to $268,499.20 upon discovery of additional post petition freight brokerage services to Toledo Molding & Die, arranged through its agent on its behalf, Ryder Integrated Logistics, Inc, which Debtors also requested and are responsible for. All of these relevant invoices are attached to the Wells Decl. as Exhibit 1.

19. In response to TQL's demand for payment, the Debtors' counsel indicated that the Debtors would stipulate to administrative expense claim status for TQL's invoices, thereby acknowledging the validity and priority of TQL's post-petition claim under the Bankruptcy Code.

20. However, the Debtors' counsel did not commit to any specific payment date, timeline, or amount. The Debtors' response was limited to an indication of willingness to stipulate

to administrative expense claim status, without any commitment regarding when, or if, payment would be made.[4]

21. A stipulation to administrative expense claim status, without commitment to payment from the $200,000,000.00 Administrative Expense Claims Basket or otherwise, provides TQL with no practical benefit. The Debtors have effectively acknowledged that TQL's post-petition services claim is valid, actual, necessary, and entitled to priority under the Bankruptcy Code – yet they refuse to honor that acknowledgment by paying the claim despite having funds available for this specific purpose.

22. When the Debtors commenced these chapter 11 cases in September 2025, TQL faced a critical choice: either continue providing essential logistics services postpetition—thereby extending postpetition credit to a distressed enterprise—or cease performance to avoid additional exposure. TQL continued providing services initially, with the thought of reevaluating as the case progressed. TQL then decided to continue to provide service in material reliance on the protections afforded to postpetition trade creditors under the DIP Order. The DIP Order establishes an Administrative Expense Claims Basket of up to $200 million for unpaid and undisputed specified administrative expense claims of the DIP Loan Parties, which expressly include postpetition trade claims such as TQL’s postpetition logistics invoices.

**RELIEF REQUESTED**

23. TQL's claim for post-petition logistics services qualifies as an allowed administrative expense under 11 U.S.C. § 503(b)(1)(A) and controlling Fifth Circuit precedent. The services were rendered entirely post-petition at the Debtors' explicit request and directly

[4] On May 12, 2026, while the case was still pending under Chapter 11, TQL filed an *Emergency Motion to Allow Administrative Expense Claim Pursuant to 11 U.S.C. Section 503(b)(1)(A) and Compel Payment* [Dk. 2644] (“Emergency Motion”). On July 8, 2026, Debtors filed an objection to the Emergency Motion [Dk. 3145]. The Emergency Motion was never heard or ruled on by the Court. Moreover, as the procedural posture of the Case has changed, TQL believes this new Application is warranted.

benefited the Estate by enabling operational continuity – a benefit the Fifth Circuit has recognized as sufficient even when not readily calculable in monetary terms.

24. Beyond allowance, payment is warranted under the Court's equitable authority and from the Administrative Expense Claims Basket under the terms of the DIP Order, subject to any remainder not paid from the Administrative Expense Claims Basket being paid pursuant to the priority scheme prescribed by 11 U.S.C. § 507. The Debtors depended upon, and used, TQL's logistics services, continuing to operate and justifying administrative expense status. Even post-conversion, the DIP Order remains effective and there has been no demonstration of an inability to pay, Debtors have in fact obtained the $200 million for the Administrative Expense Claims Basket, as well as substantially more funds, through the DIP Order which required it to make such payments, and have paid many other administrative claimants (including $60 million by order on March 12, 2026 to Weil, Gotshal & Manges LLP [Dk. 2121]).

25. TQL should be afforded the protections provided by the DIP Order and so the claim, the validity and amount of which has been acknowledged by Debtors, should be allowed in full and paid pro-rata from the Administrative Expense Claims Basket in accordance with the terms of the DIP Order, with any amount remaining unpaid to be paid pursuant to the priority scheme outlined in 11 U.S.C. § 507

## ARGUMENTS AND AUTHORITIES

### A. TQL is Entitled to Allowance of its Administrative Expense Claim

26. Under 11 U.S.C. § 503(b)(1)(A), after notice and a hearing, there shall be allowed administrative expenses including the actual, necessary costs and expenses of preserving the estate. 11 USCS § 503. The Fifth Circuit has established a three-part test to determine whether a claim qualifies as an administrative expense. A claimant must demonstrate that: (1) the claim arises post-petition; (2) the claim arises as a result of actions taken by the debtor-in-possession; and (3) the

claim benefits the estate. *Nabors Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.)*, 931 F.3d 432 (5th Cir. 2019).

27. TQL's services relating to the Outstanding Invoices were rendered between approximately October 14, 2025, through March 3, 2026 – clearly after the commencement of the bankruptcy cases (September 24-29, 2025). All 114 Outstanding Invoices are dated post-petition and are for shipments arranged for transportation by TQL after the Petition Date. This element is unambiguously satisfied.

28. The Debtors, acting through their debtor-in-possession management, specifically requested that TQL continue to provide logistics services post-petition. The Debtors' affirmative request for continuation of services constitutes a direct action by the debtor-in-possession to engage TQL's services. The Debtors accepted and used TQL's services throughout the service period. This element is clearly satisfied.

29. The benefit here is not speculative or indirect. The services allowed the Debtors to continue conducting business as usual – a paradigmatic example of the less readily calculable benefits recognized by Fifth Circuit precedent. *In re Transamerican Natural Gas Corp.*, 978 F.2d 1409, 1420 (1992). The ability to fulfill customer orders and maintain business operations during the reorganization process is precisely the type of benefit that section 503(b)(1)(A) is designed to encourage and protect.

30. TQL's logistics services directly benefited the Debtors' estates by enabling continued business operations. The services facilitated the transportation of supplies and materials to various locations for the Debtors necessary for the Debtors to fulfill customer orders, maintain customer relationships, and preserve going-concern value. Under Fifth Circuit precedent, this operational benefit satisfies the benefit requirement even though it is less readily calculable than a direct monetary gain. *Nabors Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy*

*II, L.L.C.)*, 931 F.3d 432 (5th Cir. 2019). The Debtors' own request for continuation of services, and their counsel's willingness to stipulate to an administrative expense claim, demonstrates their recognition that these services were necessary and beneficial to the Estate.

31. Under Fifth Circuit precedent, actual and necessary costs include costs ordinarily incident to operation of a business. *Nabors Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.*), 931 F.3d 432 (5th Cir. 2019). The 114 Outstanding Invoices totaling $268,499.20 document specific, concrete services rendered at agreed rates. The amounts are not speculative or estimated; they are documented in invoices reflecting actual services rendered. This satisfies the "actual" requirement. The services are "necessary" because logistics services are fundamental to the operation of the Debtors' business operations. Logistics services are quintessential operational costs ordinarily incident to the Debtors' business operations. Accordingly, TQL is entitled to its administrative expense claim.

**RESERVATION OF RIGHTS**

TQL does not intend to waive and hereby does not waive any rights it may otherwise assert against Debtors. TQL reserves all of its respective rights including (i) to amend and/or supplement this Application as the circumstances may require, (ii) any and all rights afforded to TQL under the terms of the DIP Order, and (iii) any and all right to payment from the Administrative Expense Claims Basket.

/ / /

## CONCLUSION

WHEREFORE, TQL respectfully requests that the Court enter the Proposed Order or grant such other or further relief as the Court deems just and proper.

Dated: October 22, 2026

By: /s/*Yosina M. Lissebeck*

Yosina M. Lissebeck
yosina.lissebeck@dinsmore.com
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Tel: (619) 400-0500
Attorney for Total Quality Logistics, LLC