**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| FIRST BRANDS GROUP, LLC *et al.*, | : | Case No. 25-90399 (CML) |
| Debtors.[1] | : | (Jointly Administered) |

**SUMMARY COVERSHEET TO FIRST AND FINAL FEE APPLICATION OF GUIDEPOST SOLUTIONS, LLC, AS FORENSIC ACCOUNTANT TO THE EXAMINER, MARTIN DE LUCA, FOR THE PERIOD FROM JANUARY 5, 2025 THROUGH AND INCLUDING MAY 31, 2026**

| | | |
|---|---|---|
| **Name of Applicant:** | Guidepost Solutions, LLC ("**Guidepost**") | |
| **Applicant's Role in Case:** | Forensic Accountant to the Examiner | |
| **Docket No. of Employment Order(s):** | Docket Nos. 2077 and 1910 | |
| **Interim Application ( )**<br>**Final Application (x)** | | |
| | **Beginning Date** | **End of Period** |
| **Time period covered by this Application for which interim compensation has not previously been awarded:** | January 5, 2026 | May 31, 2026 |
| Were the services provided necessary to the administration of or beneficial at the time rendered toward the completion of the case? (Y) | | |
| Were the services performed in a reasonable amount of time commensurate with the complexity, importance and nature of the issues addressed? (Y) | | |
| Is the requested compensation reasonable based on the customary compensation charged by comparably skilled practitioners in other non-bankruptcy cases? (Y) | | |
| Do expense reimbursements represent actual and necessary expenses incurred? (Y) | | |
| **Compensation Breakdown for Time Period Covered by this Application** | | |

[1] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.

| | |
|---|---|
| **Total professional fees covered in this Application:** | $1,276,730.00 |
| **Total professional hours covered by this Application:** | 2,259.00 |
| **Average hourly rate for professionals:** | $565.18 |
| **Total expense reimbursements requested in this Application:** | $55,217.14 |
| **Total fees and expenses requested in this Application:** | $1,331,947.14 |
| **Total fees and expenses awarded in all prior Applications:** | $0.00 |
| **Plan Status:** On September 1, 2026, the Court entered its order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code (Docket No. 3748. This Application is filed pursuant to paragraph 2 of said order. | |
| **Primary Benefits:** As discussed below, during the Application Period, Guidepost Solutions assisted the Examiner with conducting a complex and intensive international investigation and evidence-preservation exercise, resulting in the Examiner's Report filed on April 27, 2026 (Docket No. 2538) and the creation of an extensive database comprising documents, communications, and other information related to the Examiner's investigation. Guidepost's professionals assisted the Examiner by conducting forensic accounting analyses, investigative asset tracing, financial and communications analysis, third party meetings and data analysis, and witness interviews. | |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| FIRST BRANDS GROUP, LLC *et al.*, | : | Case No. 25-90399 (CML) |
| Debtors. | : | (Jointly Administered) |

# FIRST AND FINAL FEE APPLICATION OF GUIDEPOST SOLUTIONS, LLC, AS FORENSIC ACCOUNTANT TO THE EXAMINER, MARTIN DE LUCA, FOR THE PERIOD FROM JANUARY 5, 2025 THROUGH AND INCLUDING MAY 31, 2026

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS APPLICATION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS APPLICATION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Guidepost Solutions, LLC, forensic accountant to Martin De Luca (the "**Examiner**"), the Examiner in the above-captioned jointly administered chapter 11 cases (the "**Chapter 11 Cases**") of First Brands Group, LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**" or "**FBG**"), hereby file their first and final application (this "**Application**") for allowance of compensation for services performed during the

[2] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.

period commencing January 5, 2026 through and including May 31, 2026 (the "**Compensation Period**") in the amount of $1,276,730.00, and for reimbursement of actual and necessary expenses in the amount of $55,217.14 incurred during the Compensation Period, and respectfully represent as follows:

## JURISDICTION, VENUE, AND STANDING

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases and other authority for the relief requested herein include sections 330(a) and 503(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Court's Local Rule 2016-1, the Court's *Order Directing Appointment of an Examiner* entered on November 19, 2025 (Docket No. 726) (the "**Examiner Order**"), the Court's *Order Authorizing the Employment and Retention of Guidepost Solutions, LLC as Forensic Accountant to the Examiner* entered on March 9, 2026 and effective as of January 5, 2026 (Docket 2077) and the Court's *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* entered on November 17, 2025 (Docket No. 699) (the "**Interim Compensation Order**").

## BACKGROUND

4. On October 8, 2025, Raistone Capital LLC and Raistone Purchasing LLC – Series XXXII filed an *Emergency Motion for the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* (Docket No. 307). Subsequently, on October 15, 2025, the United States Trustee (the "**U.S. Trustee**") filed an *Expedited Motion for Entry of an Order Directing the Appointment of an Examiner* (Docket No. 340).

5. On November 19, 2025, the Court entered the Examiner Order, finding, among other things, that there was sufficient cause for the appointment of an examiner pursuant to section 1104(c) of the Bankruptcy Code for the purposes set forth in section 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code and specifically to:

a. Investigate the facts and circumstances, including general corporate practices, concerning the Debtors' prepetition factoring processes and factoring transactions related to:

a. Allegations that the Debtors' prepetition third-party factoring transactions ("**Factoring Transactions**") included (A) fraudulent or inaccurate invoices and the related accounts receivable in the Debtors' books and records and audit reports; and (B) accounts receivable factored more than once and, in each case of (A) and (B), the persons or entities responsible for any of the Factoring Transactions;

b. Transactions and/or transfers between any of (A) the Debtors, (B) any insiders or affiliates of the Debtors, and (C) entities owned or controlled by an insider or affiliates, and (D) the unaffiliated third party factors (the "**Third-Party Factors**") concerning (X) the Factoring Transactions and the transfers and use of the proceeds of such Factoring Transactions; and,

c. Any accounting with respect to the proceeds of the Factoring Transactions and any property of third parties received by the Debtors that the Examiner deems appropriate.

b. Investigate the facts and circumstances, including general corporate practices, concerning the Debtors' Off-Balance Sheet Financing Transactions, as defined in the Examiner Order, related to any transactions and/or transfers in connection therewith. Examiner Order ¶ 3.

6. The Examiner Order also directs the Examiner to "perform the duties set forth in section 1106(a)(3) and 1106(a)(4), subject to the terms of this Order." Examiner Order ¶ 2.

7. Paragraph 5 of the Examiner Order authorizes the Examiner to retain professionals pursuant to the standards under section 327 of the Bankruptcy Code and for the Examiner and his

retained professionals to seek payment of compensation and expense reimbursement pursuant to the Interim Compensation Order and section 330 of the Bankruptcy Code. Paragraph 4 of the Examiner Order provides a $7 million budget for the aggregate fees and expenses of the Examiner and his professionals (the "**Examination Budget**"), without prejudice to the Examiner's right to seek an increase in the Examination Budget.

8. On January 21, 2026, as required under the Examiner Order, the Examiner filed his proposed Work Plan (the "**Work Plan**") (Docket No. 1650), outlining the topics, details, and timeline for an investigation in accordance with the Examiner Order.

9. On January 29, 2026, the Court entered an order approving the Work Plan (Docket No. 1819).

10. Pursuant to the Work Plan, the intensive transnational investigation by the Examiner and his professionals built significant momentum in developing a detailed factual record that bears on the overriding concerns of the Chapter 11 Cases, namely to determine how the Debtors' "corporate practices" enabled the apparent financial frauds to occur prepetition and who was responsible.

11. However, in late February, the Examiner substantially scaled down his investigation due to: (i) the imminent exhaustion of the Court-approved $7 million Examination Budget; (ii) the announced lack of additional debtor-in-possession funding by the Ad Hoc Lenders or any other source; (iii) the refusal of the Ad Hoc Lenders to include the Examiner and his professionals in the collateral carve-out—that now covers the other major professionals in the Chapter 11 Cases under the DIP financing order—or to fund an increase in the Examination Budget; and (iv) the apparent likelihood of an administrative insolvency in the Chapter 11 Cases.

12. The Examiner therefore prioritized the collection and preservation of documents, data, and other evidence critical to the investigation, evaluation, and later prosecution of claims

against non-Debtor third parties or assets on behalf of the Debtors by estate representatives. The volume and complexity of the information gathered to date and the discovery of additional areas of inquiry that were not fully anticipated at the outset of the examination led the Examiner to conclude that a comprehensive investigation would require substantially more time and resources than allocated under the Examination Budget.

13. The precipitous events of the Chapter 11 Cases created a difficult choice for the Examiner: either stop work and not complete the report contemplated by the Court-approved Work Plan, or continue his investigation on a highly tailored, limited basis and complete an initial report knowing that the Examiner's and his professionals' fees and expenses would likely exceed the Examination Budget before there was any assurance that fees and expenses exceeding the Examination Budget would have a source of funding. Indeed, the Examiner raised concerns about the adequacy of the Examination Budget in pleadings on at least two occasions. ECF No. 1354 ¶ 15; ECF No. 1724 at 12–13. The Examiner's counsel also reported those concerns to the Court at a hearing on January 22, 2026.

14. Notwithstanding the lack of DIP funding or the protection of a collateral carve-out, and the resulting financial risks, the Examiner and his professionals determined that, in order for the Court, the Debtors' estates, and parties in interest to have the benefit of the Examiner's investigative efforts and initial findings and impressions, they would complete and file the Examiner Report. The alternative would have been resources expended on an investigation that physically spanned the globe, with valuable evidence collected, maintained and organized with an e-discovery vendor, and no report for the benefit of the estate and financial fraud victims to guide them through the evidence amassed. Completing the Examiner Report was the only appropriate choice for the benefit of the Debtors' estates.

15. On April 17, 2026, the Examiner filed his Examiner Report under seal.

16. Following the filing of the Report, the Examiner conferred with the Debtors and other information-producing parties regarding the treatment of information designated as Highly Confidential and Confidential Material contained in the Report. Following those consultations, the Examiner reached agreement with producing parties that certain confidential information should remain sealed and finalized the Report.

17. Accordingly, the Examiner filed a revised Examiner Report on April 27, 2026, which remains under seal.

18. Also on April 27, 2026, a redacted version of the revised Report was filed on the public docket (Docket No. 2538).

19. The Examiner Report describes the work performed, the Examiner's initial impressions, open questions that warrant further investigation, and the high-value work streams that have not yet been completed.

20. Due to the exigencies of the Investigation, in order to fulfill the Examiner's mandate notwithstanding the constraints of the Examination Budget, the Examiner's professionals rendered services and incurred fees and expenses that, in the aggregate, exceeded the Examination Budget.

21. To date, the Debtors have disbursed the entire $7 million Examination Budget to the Examiner and his professionals, including local co-counsel, the forensic investigations firm and the e-discovery vendor, on a *pro rata* basis.

22. Through May 31, 2026 (i.e., the Compensation Period), Guidepost incurred a total of $1,276,730.00 in fees and has received a total of $1,001,724 in compensation and has received 100% reimbursement of its expenses in the total amount of $55,217.14. The payments made to Guidepost cover only time and expense charges billed through March 2026 pursuant to the Interim Compensation Order.

23. On July 27, 2026, the Debtors filed the last iteration of their *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3448) (the "**Plan**").

24. On August 24, the Court entered its *Order Denying Plan Confirmation* (Docket No. 3710). On September 1, 2026, the Court entered an order converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (Docket No. 3748) (the "**Conversion Order**").

**RELIEF REQUESTED**

25. This Application has been prepared in accordance with section 330(a) of the Bankruptcy Code, Bankruptcy Rule 2016, Bankruptcy Local Rule 2016-1, the Court Procedures for Judge Christopher M. Lopez, the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, and the Interim Compensation Order.

26. By this Application, Guidepost seeks entry of an order substantially in the form submitted concurrently herewith, pursuant to section 330(a) of the Bankruptcy Code, the Interim Compensation Order, and the Conversion Order, approving fees and expenses incurred throughout the Compensation Period but approving compensation and expense reimbursement limited to the amounts previously paid to Guidepost for time and expense charges pursuant to the Interim Compensation Order.

27. There is no agreement or understanding between the Guidepost and any other person for the sharing of compensation to be received for services rendered in the Chapter 11 Cases. During the Compensation Period, other than payment received by Guidepost on account of monthly fee statements in accordance with the Interim Compensation Procedures Order, Guidepost received no payment or promises of payment from any source for services rendered, or to be rendered, in any capacity whatsoever in connection with the matters covered by this Application.

28. The fees charged by the Guidepost in the Chapter 11 Cases are billed in accordance with its existing billing rates and procedures in effect during the Compensation Period. The rates charged for the services rendered by their professionals and paraprofessionals in these chapter 11 cases are no greater than the rates they charge for professional forensic accounting services rendered in comparable bankruptcy and non-bankruptcy related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy matters in a competitive national consulting market.

**SUPPORTING DOCUMENTS**

29. Attached hereto as **Exhibit A** is the Certification of Santiago Batista, Senior Managing Director of Guidepost (the "**Batista Certification**"), regarding compliance with the Fee Guidelines and the Court's General Order 2018-5 for Complex Chapter 11 Cases.

30. Attached hereto as **Exhibit B** is a schedule of all Guidepost professionals who performed services during the Compensation Period, together with summary information regarding hours, rates, and fees.

31. Guidepost has not attached detailed time entries or detailed expense backup to this Application. Such detail was provided to all parties required to receive monthly submissions under the Interim Compensation Order for each month through March 2026 (the "**Monthly Submissions**"). The payments already made to Guidepost were made on the basis of those Monthly Submissions and cover only time and expense charges through March 2026. None of the parties upon whom the Monthly Submissions were served, including the United States Trustee, objected to any of the Monthly Submissions. If the Court wishes to review detailed time records and expense details through May 2026, Guidepost can provide that information to the Court under seal or in such other manner as the Court orders.

32. Maintaining the confidentiality of the detailed time records and expense information

is in the interests of the Debtors' chapter 7 estates because the descriptions may reveal investigative priorities, witness-related information, discussions with BSF regarding litigation strategy, work-product, or other information relevant to claims and causes of action that may be pursued by or for the benefit of creditors.

33. Attached hereto as **Exhibit C** is a summary and comparison of the aggregate blended hourly rates billed by BSF timekeepers in BSF's U.S. offices to non-bankruptcy matters during the prior twelve-month period ending April 30, 2026, and the blended hourly rates billed to the Debtors' estates during the Compensation Period (the "Blended Rate Comparison Chart").

**SUMMARY OF PROFESSIONAL SERVICES RENDERED DURING THE COMPENSATION PERIOD**

34. During the Compensation Period, Guidepost spent significant time and effort in rendering forensic accounting services to the Examiner. The below summary of services rendered and reflected in the Time Records is organized by project or task category; certain services performed may overlap between, or may appropriately be allocated to, more than one category, but a good-faith effort was made by all timekeepers to categorize work performed in a consistent manner across all timekeepers.

| Task Description | Hours | Fees |
|---|---|---|
| Case administration | 91.20 | $ 56,102.50 |
| Document analysis | 198.00 | $ 123,525.00 |
| Internal meetings, correspondence, and data requests | 200.10 | $ 110,450.00 |
| Interviews | 383.75 | $ 233,200.00 |
| Investigation - Cash flow | 313.85 | $ 187,742.50 |
| Investigation - Factoring | 173.90 | $ 87,702.50 |
| Investigation - Related Parties | 57.75 | $ 23,537.50 |
| Investigation - SPV | 135.65 | $ 78,037.50 |
| Investigation - Acquisitions | 124.35 | $ 74,022.50 |
| Meetings and Correspondence with BSF | 150.10 | $ 95,300.00 |
| Meetings with Third Parties and BSF | 183.95 | $ 123,060.00 |
| Non-working travel | 230.30 | $ 73,585.00 |
| Drafting observations and assisting BSF with draft report | 16.10 | $ 10,465.00 |
| **TOTAL** | **2,259.00** | **$ 1,276,730.00** |

a. **<u>Case Administration</u>**: General administrative and organizational work necessary to support the Examiner's engagement and to ensure the orderly conduct of the examination. This work included maintaining internal case files and investigative materials, scheduling meetings and interviews, coordinating travel and logistics, monitoring deadlines, organizing work streams among team members, and addressing routine but necessary operational matters related to the administration of the engagement. Time in this category also included coordinating and accomplishing the transfer of and access to data, including access to financial systems for further analysis.

b. **<u>Document Analysis:</u>** Identifying, accessing, and analyzing relevant accounting records, financial systems, and document repositories. Reviewed financial information maintained in the Debtors' consolidation and reporting systems together with treasury records, bank statements, general ledger information, and supporting transaction documentation, to understand the Debtors' financial activities and identify matters requiring further investigation. Reviewing accounting practices encountered during the investigation, including consolidation adjustments, manual journal entries, bridge spreadsheets, and differences between underlying accounting records and reported financial results.

c. **<u>Internal Meetings, Correspondence, and Data Requests</u>**: Coordinated among multiple workstreams, including meetings with third parties and witness interviews. Prepared data requests and coordinated electronic data requests and access to accounting systems and financial systems and databases.

d. **<u>Interviews and Investigative Coordination</u>**: Supported the Examiner's interviews and consultations with current and former employees, finance and accounting personnel, information technology personnel, restructuring professionals, and third-party advisors and counterparties. Assisted with identifying relevant financial issues, reviewing supporting records, and evaluating witness information in conjunction with transaction data and other evidence. Participated in meetings concerning data access, financial systems, financing arrangements, and investigative findings.

e. **<u>Investigation – Cash Flow and Related-Party Transactions</u>**: Tracing proceeds from third-party factoring and off-balance sheet financing transactions and examining the subsequent movement and use of those funds. Analyzed transfers among the Debtors, special purpose vehicles, insiders, trusts, and affiliated entities to identify potentially improper transfers and develop the factual record concerning the disposition of value generated by the Debtors.

f. **<u>Investigation – Acquisitions:</u>** Reviewing acquisition-related transactions, including discrepancies between internally reported acquisition consideration and transaction payments, potential side payments, and the separation of assets from acquired operating businesses. Examined available records assets held by or transferred to affiliated non-Debtor entities, together with evidence of commingling and transfers of operating resources.

g. **<u>Investigation - Third-Party Factoring</u>:** Reviewing the Debtors' prepetition factoring processes, financing arrangements, and related payment flows.

Analyzed available receivables data, factoring schedules, supporting spreadsheets, and witness information concerning invoice origination, approval, submission, and verification. Examined evidence relating to allegedly inflated, fabricated, or repeatedly factored receivables and the processes and personnel involved in those transactions.

h. **Investigation – Special Purpose Vehicles and Off-Balance Sheet Financing**: Examining financing arrangements involving special purpose vehicles, inventory transactions, sale-leaseback structures, and related transfers. Reviewed financial records and transaction documentation concerning funding flows, asset ownership, collateral, and relationships among the Debtors, financing counterparties, and affiliated entities to assist the Examiner in evaluating how the arrangements operated in practice.

i. **Meetings and Correspondence with the Examiner and BSF**: Meet and discuss work plan, information requests, access to data and accounting systems, observations to date, and open items.

j. **Meetings with Third Parties and BSF**: Participate in meetings with Debtors' management, creditors, lenders, investors, and other third parties along with their respective advisors. Coordinated data collection and analysis of work performed by financial advisors for the various third parties.

k. **Non-Working Travel**: Services rendered under this task category consisted of non-working travel time incurred in connection with the Examiner's investigation, including travel to witness interviews, site visits, meetings with relevant parties, and other necessary in-person investigative activities in the United States and abroad. Given the international nature of the relevant

operations, records, and witnesses, certain travel was unavoidable to preserve evidence, assess business locations and recordkeeping environments, and advance the examination efficiently. The travel reflected in this category was reasonable and necessary under the circumstances and was closely tied to substantive investigative work.

l. **Drafting Observations and Support of Examiner's Report**: Analyzing and evaluating financial documentary evidence and developing the preliminary financial findings reflected in the Examiner's report. Analyzed available documents and witness accounts concerning financial reporting to lenders and auditors, the treatment of affiliated special purpose vehicles, and potential accounting irregularities. Provided summary analysis concerning funds flows, related-party transfers, financing structures, and accounting practices, and assisted with identifying unresolved financial questions and targeted investigative steps requiring additional records or analysis. This category also included editing and source citation checking for accuracy, consistency, and clarity.

35. The foregoing professional services were necessary and appropriate to the Examiner's investigation pursuant to the Work Plan. The professional services performed by Guidepost were in the best interests of the Debtors' estates. Compensation for such services is commensurate with the complexity, importance, and nature of the issues and tasks involved. All of Guidepost's professional services were performed skillfully and efficiently.

36. The professional services performed by Guidepost during the Compensation Period required an aggregate expenditure of approximately 2,259 hours.

37. During the Compensation Period, Guidepost billed for time expended by professionals based on hourly rates ranging from $325 to $700 per hour. Allowance of compensation in the amount requested results in a blended hourly billing rate of $565.17.

**ACTUAL AND NECESSARY EXPENSE DISBURSEMENTS**

38. As set forth in **Exhibit D** attached hereto, Guidepost has disbursed $55,217.14 as expenses incurred in providing professional services during the Compensation Period. These expenses are substantially related to necessary travel-related transportation, lodging and meal costs. The expenses were reasonable and essential to the Examiner's investigation pursuant to the Work Plan.

39. Guidepost's regular practice is not to include components of those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services. The reimbursement amounts do not exceed those set forth in the Fee Guidelines or the Bankruptcy Local Rules.

40. Guidepost complied with the Fee Guidelines and Bankruptcy Local Rule 2016-1.

41. The actual expenses incurred in providing professional services were those that were necessary, reasonable, and justified under the circumstances to facilitate the Examiner's investigation in accordance with the Work Plan.

**THE REQUESTED COMPENSATION AND EXPENSE REIMBURSEMENT SHOULD BE ALLOWED**

42. Section 330(a)(1) of the Bankruptcy Code provides that a Court may award a professional employed under (or, in this case, pursuant to the standards of) section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered…[and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A)–(B).

43. The Fifth Circuit Court of Appeals has held that lower courts should consider the six factors found in section 330(a)(3) of the Bankruptcy Code when awarding compensation to professionals. See In re Crager, 691 F.3d 671, 676 (5th Cir. 2012). Specifically, under section 330 of the Bankruptcy Code, courts "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors," including:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

44. In the instant case, Guidepost submits that the services for which they seek compensation and the expenditures for which they seek reimbursement in this Application were necessary for and beneficial to facilitating the important work of the Examiner and his professionals under the Work Plan, ultimately resulting in the Examiner Report. The compensation requested herein is reasonable considering the nature, extent, and value of such services to the Debtors' estates.

45. The requested compensation for the foregoing services is commensurate with the complexity, importance, and nature of the issues and tasks involved. Not only were the professional services performed skillfully and efficiently, but whenever possible, they sought to

minimize the cost of services by utilizing talented junior staff to handle various aspects of the work commensurate with their skill levels.

46. Accordingly, approval of the compensation for professional services and reimbursement of expenses already paid to Guidepost pursuant to the Interim Compensation Order is warranted. While Guidepost seeks allowance of all fees and expenses incurred during the Application Period, it does not seek, through this Application, compensation or expense reimbursement above amounts already paid to Guidepost.

**NOTICE**

47. Notice of this Application will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-l(d).

**CONCLUSION**

48. Guidepost respectfully requests that the Court enter an order pursuant to section 330(a) of the Bankruptcy Code and the Interim Compensation Order: (i) approving the fees and expenses incurred by Guidepost during the Compensation Period; (ii) approving the compensation and expense reimbursement already paid to Guidepost pursuant to the Interim Compensation Order; and (iii) granting such other and further relief as the Court may deem just and proper.

*[Signature block on next page]*

Dated: October 26, 2026

Respectfully submitted,

/s/ *Jesse Panuccio*

BOIES SCHILLER FLEXNER LLP
Jesse Panuccio (admitted *pro hac vice*)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
jpanuccio@bsfllp.com

BOIES SCHILLER FLEXNER LLP
Robert D. Gordon (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
(212) 446-2300
rgordon@bsfllp.com

BOIES SCHILLER FLEXNER LLP
Benjamin Waisbren (admitted *pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
bwaisbren@bsfllp.com

*-and-*

OKIN ADAMS BARTLETT CURRY LLP
Matthew S. Okin
Texas Bar No. 00784695
Email: mokin@okinadams.com
Ryan A. O'Connor
Texas Bar No. 24098190
Email: roconnor@okinadams.com
Madeline M. Schmidt
Texas Bar No. 24130309
Email: mschmidt@okinadams.com
1113 Vine Street, Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 346.247.7158

*Counsel to the Examiner*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2026, a true and correct copy of the foregoing Application was served via the Court's CM/ECF system to all parties consenting to service through the same.

By: /s/ *Matthew S. Okin*
Matthew S. Okin