**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 7** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**OMNIBUS REPLY TO OBJECTIONS**
**TO STIPULATION AND AGREED ORDER**
**(I) MODIFYING THE AUTOMATIC STAY TO PERMIT**
**THE DIP AGENT TO SWEEP AND APPLY CASH COLLATERAL OF**
**THE FBG CONVERTING DEBTORS AND (II) GRANTING RELATED RELIEF**
**(Relates to Docket Nos. 608, 3506, 3748, 3952, 3953, 3988, 3989, & 4006)**

The Ad Hoc Group,[2] on behalf of itself, and jointly with the DIP Agent (the Ad Hoc Group and the DIP Agent, collectively, the "**Parties**"), submits this joint reply (the "**Reply**") in support of entry of the *Stipulation and Agreed Order (I) Modifying the Automatic Stay to Permit the DIP Agent to Sweep and Apply Cash Collateral of the FBG Converting Debtors and (II) Granting Related Relief* [Docket No. 3952-1] (the "**Proposed Stipulation**"), and in response to (a) the objection filed by Evolution and Ronald J. Sommers, as chapter 7 trustee for the Evolution SPV Debtors (the "**Evolution Trustee**") [Docket No. 3988] (the "**Evolution Objection**"), (b) the objection filed by Onset Financial, Inc. [Docket No. 3989] (the "**Onset Objection**"), and (c) the objection filed by the chapter 7 trustee for the Carnaby Debtors [Docket No. 4006] (the "**Carnaby**

[1] A complete list of the "**Debtors**" in these chapter 7 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 7 cases is Eva Engelhart, Chapter 7 Trustee c/o Porter Hedges LLP, Joshua W. Wolfshohl, 1000 Main St., 36th Floor, Houston, Texas 77002.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Proposed Stipulation or the Pre-Conversion DIP Order, as applicable. Solely for ease of reference, the terms "Onset," "Onset Accounts," "Section 341 Meeting," "SPV-ABL Wind Down Accounts," "SPV-DIP Wind Down Accounts," and "Wind Down Order" have the meanings ascribed to them in the Onset Objection; the terms "Evolution" and "Evolution SPV Debtors" have the meaning ascribed to them in the Evolution Objection; the term "Carnaby Debtors" has the meaning ascribed to it in the Carnaby Objection.

**Objection**," and together with the Evolution Objection and the Onset Objection, the "**Objections**"). In support of the Reply, the Parties respectfully state as follows:

## PRELIMINARY STATEMENT

1. Cause exists to lift the automatic stay. The Objections do not seriously dispute that.

2. Following the DIP maturity date, on July 29, 2026, the Court found that a payment default under the DIP Credit Agreement had occurred and was continuing and that the Remedies Notice Period had lapsed. *See* Forbearance Stipulation ¶ 3(a)–(c). Thus, as of that date, the FBG Debtors' estates were obligated to repay the amounts owed under the DIP Credit Agreement in full in cash. *See id.* ¶ 3(d)–(e). Further, the Court found that the DIP Agent "satisfies the statutory predicates for relief from the stay under sections 362(d)(1) and (d)(2)," and that "cause exists to modify or lift the stay . . . because the DIP Secured Parties are not adequately protected." *Id.* ¶ 7. No one objected to these findings, and no one objected to the Forbearance Stipulation. As such, the Proposed Stipulation should be so ordered.

3. The Objections do not (because they cannot) contest this relief. Instead, the Objections offer red herrings that are unrelated to the relief requested in the Proposed Stipulation or are entirely self-defeating.

4. For example, Evolution argues that the sweep could reach the $21.2 million at issue in Evolution's infirm *Emergency Motion to Compel Segregation and Turnover of Post-Petition Accounts Receivable* [Docket No. 3144]. But at the same time, Evolution acknowledges that counsel to the FBG Trustee and the Ad Hoc Group confirmed that the DIP Agent would not sweep those funds until the Court addresses that motion. *See* Evolution Objection ¶ 5. The Proposed Stipulation confirms that too. *See* Proposed Stipulation ¶ 8. Similarly, Onset argues the DIP Agent is attempting to sweep cash located in segregated accounts created to hold disputed property. *See*

Onset Objection ¶ 11. But that is not true. As the Proposed Stipulation states, the DIP Agent will not sweep "Excluded Property," which explicitly includes "funds held in a segregated account that may not be disbursed absent a further order of the Bankruptcy Court or consensual agreement of the parties." Proposed Stipulation ¶ 8.

5. At bottom, the Objections are plainly designed to impose costs on the FBG Estates and the DIP Secured Parties, who will undoubtedly be litigating estate claims identified in the Kirschner Declaration,[3] including against Onset and Evolution. The pattern is unmistakable. Each new meritless objection, emergency motion, and request for deferral raises the cost of administering these estates and delays justice for those defrauded by First Brands' prepetition management and their enablers. The Court should not reward this strategy and should enter the Proposed Stipulation.

## ARGUMENT

### I. Cause Exists to Lift the Automatic Stay

6. Section 362(d) of the Bankruptcy Code entitles a secured creditor to relief from the automatic stay for cause, including the lack of adequate protection of an interest in property of such party in interest. 11 U.S.C. § 362(d)(1). This Court ***has already found*** that cause exists to lift the automatic stay "because the DIP Secured Parties are not adequately protected." Forbearance Stipulation ¶ 7. Those findings are binding. *See id.* ¶ 10. Nor do the Objections dispute this. Because the DIP Secured Parties are not adequately protected, cause exists to lift the automatic stay and the Court should enter the Proposed Stipulation.

7. The Objections' remaining arguments are of no import to the legal relief sought.

---

[3] *Declaration of Marc S. Kirschner* [Docket No. 3190] (the "**Kirschner Declaration**") ¶ 30.

## II. Evolution's Objections Are Frivolous

8. Evolution objects to the Proposed Stipulation because, somehow, the Proposed Stipulation runs afoul of *Purdue*. Evolution argues that paragraphs 2(b) and 2(d) amount to a nonconsensual third-party release. That is wrong. There is no nonconsensual third-party release in the Proposed Stipulation. Paragraph 2(b) of the Proposed Stipulation is identical to paragraph 2(b) from the Forbearance Stipulation, which was already entered by the Court. *Compare* Proposed Stipulation ¶ 2(b), *with* Forbearance Stipulation ¶ 2(b). That previous finding reaffirmed the same finding the Court entered when approving the Pre-Conversion DIP Order. *See* Pre-Conversion DIP Order ¶ 11 (granting, "effective and automatically and properly perfected . . . without any further action," the "valid, binding, continuing, enforceable and non-avoidable security interests and liens" that constitute the DIP Liens). The same is true regarding paragraph 2(d) of the Proposed Stipulation, which reaffirms the Forbearance Stipulation's findings and paragraph 5 of the Pre-Conversion DIP Order, which states:

> Except as permitted by the Orders, ***no obligation, payment, transfer, or grant of security hereunder*** or under the DIP Documents to the DIP Agent and/or the DIP Secured Parties (including their Representatives) ***is or shall be*** stayed, restrained, ***voidable, avoidable***, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), ***or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization***, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, ***or any other challenge under the Bankruptcy Code or any applicable law*** or regulation ***by any person or entity***.

Pre-Conversion DIP Order ¶ 5 (emphasis added); *compare* Forbearance Stipulation ¶ 2(c), *with* Proposed Stipulation ¶ 2(d). Any dispute regarding paragraph 2(d) of the Proposed Stipulation is an improper collateral attack on the Pre-Conversion DIP Order (and the Forbearance Stipulation)

to which Evolution already consented.[4] *See*, *e.g.*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (holding that once orders "became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became res judicata to the parties and those in privity with them," such that a party given a fair chance to object "cannot challenge [them] now by resisting enforcement").[5]

9. Further, these findings and legal protections are routinely ordered in this District in connection with postpetition financing arrangements under section 364 of the Bankruptcy Code. *See, e.g.*, *In re U.S. TelePacific Corp.*, No. 26-90625 (ARP) (Bankr. S.D. Tex. Aug. 3, 2026) [Docket No. 246] (protecting DIP obligations, payments, transfers, and grants of security from avoidance and other challenges); *In re Braskem Idesa, S.A.P.I.*, No. 26-90762 (CML) (Bankr. S.D. Tex. Sept. 21, 2026) [Docket No. 146] (same); *In re Inotiv, Inc.*, No. 26-90601 (CML) (Bankr. S.D. Tex. July 14, 2026) [Docket No. 190] (same).[6] So, not only are Evolution's arguments untimely and improper collateral attacks, which have been waived, but they are also entirely meritless.

10. Additionally, Mr. Sommers, the chapter 7 Trustee for the Evolution Debtors, and Catherine Curtis Stone for the Onset Debtors are both similarly bound by these provisions and the explicit releases granted by the estates they represent. *See* Pre-Conversion DIP Order ¶ G(xxi) & n.10. There are no exceptions in the Debtors' Stipulations or the debtor releases under the Pre-

---

[4] Evolution affirmatively withdrew its objection to the Pre-Conversion DIP Order and consented to entry of the Pre-Conversion DIP Order as drafted. *See* Evolution AP Stipulation ¶ 12.

[5] *See also In re Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 438 n.15 (5th Cir. 2022) (applying *Travelers* to unappealed orders entered during chapter 11 case and holding that "such a collateral attack is precluded"); *In re Linn Energy, L.L.C.*, 927 F.3d 862, 866–67 (5th Cir. 2019) (final bankruptcy orders, including those "not appealed or contested," are res judicata and may not be collaterally attacked).

[6] While already subject to final orders in this case, postpetition financing orders are inherently different than plans of reorganization. Section 364 of the Bankruptcy Code provides explicit authority for approving new financings and the terms that govern those agreements.

Conversion DIP Order for the Evolution Trustee, the Onset Trustee, or any SPV Debtor. *See id.* ¶ G.[7]

11. Evolution's other qualms center around ensuring that the Proposed Stipulation does not allow the DIP Agent to sweep cash until the Evolution Motion is resolved. Paragraph 8 of the Proposed Stipulation states that "should the Bankruptcy Court deny the relief requested by the Evolution Motion, only the funds in the Segregated Accounts . . . shall remain segregated pending further order of the Bankruptcy Court in the Inventory Adversary." Proposed Stipulation ¶ 8. That sentence carries one meaning—until the Court rules on the Evolution Motion, the funds the Evolution Motion places in dispute stay where they are. As Evolution asserts in its objection, counsel for the FBG Trustee and counsel to the Ad Hoc Group confirmed as much directly to Evolution's counsel in the Court's courtroom in Houston. *See* Evolution Objection ¶ 5. Yet, "[d]espite these representations," Evolution Objection ¶ 6, Evolution still needed to find a basis to object.[8] The Evolution Objection should be denied.

## III. Onset's Objection Lacks Merit

12. The Onset Objection is similarly infirm and should be denied. First, Onset argues that the DIP Secured Parties fail to identify their collateral. Not so. The Proposed Stipulation reaches only the Remaining DIP Cash Collateral, which is approximately $23.93 million of cash held in "the FBG Debtors' deposit and concentration accounts." Proposed Stipulation at 3 & n.16.

---

[7] Parties, including the Onset Trustee, Evolution, and the Evolution Trustee, may wish to assert claims against the Prepetition Secured Parties, but those rights were either already exercised as Challenges or were lost. Under paragraph 27 of the Pre-Conversion DIP Order, the "Evolution/Onset/Aequum/CarVal Creditors" expressly negotiated for an extended Challenge deadline and were required to either file a Challenge or lose any attendant challenge rights. *See* Pre-Conversion DIP Order ¶ 27. Absent a Challenge, parties are bound by the Debtors' Stipulations (again, made by all Debtors, not just the FBG Debtors) with respect to the Prepetition Secured Parties. *See id.*

[8] For the avoidance of doubt, the Ad Hoc Group maintains, consistent with its arguments in *The Ad Hoc Group's Objection to Evolution's Emergency Motion to Compel Turnover and Deposit of Disputed Post-Petition Accounts Receivable Proceeds into the Court Registry* [Docket No. 3880] (the "**AHG Objection**"), that Evolution holds no interest in those funds. *See* AHG Objection ¶¶ 5–7, 18–20.

That is the same cash identified in the Ad Hoc Group's and the FBG Trustee's objections to the Evolution Motion—the cash in the concentration account held by First Brands Group LLC at Bank of America, N.A. (account ending in 6975). *See* AHG Objection ¶¶ 5–6, 19; *Declaration of Daniel Jerneycic in Connection with Trustee's Objection to the Emergency Motion of Evolution Credit Partners to Compel Turnover and Deposit of Disputed Post-Petition Accounts Receivable Proceeds into the Court Registry* [Docket No. 3879-1] (the "**Jerneycic Declaration**").[9] For absolute clarity, the proposed sweep (i) reaches only the Remaining DIP Cash Collateral held in the FBG Estate Accounts, which totaled approximately $23.93 million as of October 15, 2026, (ii) is subject to paragraph 8 of the Proposed Stipulation, and (iii) does not reach the cash of any other Debtor. *See* Proposed Stipulation at 3 n.16.[10]

13. Next, Onset "is concerned" that the FBG Trustee has not "properly exercised her business judgment," without offering any explanation of what the FBG Trustee could do instead. *See* Onset Objection ¶¶ 13–16. But "concern" is not a valid legal argument that prevents entry of the Proposed Stipulation. The FBG Trustee, like the Evolution Trustee and Onset Trustee, is bound by the Forbearance Stipulation previously entered by the Court, and the FBG Trustee understands her obligation to follow this Court's prior orders. If Onset truly "questions" these prior orders, its opportunity to object passed long ago. Onset instead demands that the FBG Trustee litigate every

---

[9] *See* Jerneycic Declaration ¶ 7.

[10] Onset's confusion about the implication of the cash sweep on the Onset Accounts is entirely performative. The Proposed Stipulation defines Excluded Property as "funds held in a segregated account that may not be disbursed absent a further order of the Bankruptcy Court or consensual agreement of the parties." Proposed Stipulation ¶ 8. The Wind Down Order provides that funds in the SPV-ABL Wind Down Account and the SPV-DIP Wind Down Account "may not be distributed without further Court order." Wind Down Order ¶¶ 37–38. Onset itself tells the Court that the proceeds in the Onset Accounts "may not be distributed absent agreement among the parties or further order of the Court." Onset Objection ¶ 6. Having described its own accounts in the precise terms of the definition, Onset then claims it "cannot determine" whether those accounts constitute Excluded Property. *Id.* ¶ 11. A single call from Onset's counsel to the Ad Hoc Group's advisors would have resolved the question.

issue no matter how frivolous in the name of "leverage." *See* Onset Objection ¶ 15. While that might be Onset's litigation tactic, it has no basis in law or fact that is relevant here.

14. Indeed, the Proposed Stipulation sets out the FBG Trustee's reasons on its face: the DIP Secured Parties have senior, perfected liens on the Remaining DIP Cash Collateral; this Court's findings in the Forbearance Stipulation and the Conversion Order are binding; and the unnecessary litigation costs given the near certainty of the outcome in favor of the DIP Secured Parties in contested stay relief litigation. *See* Proposed Stipulation ¶¶ 3–4.[11] All are sound reasons to avoid a costly dispute.

15. Onset also argues that the stipulation is procedurally infirm because "the Proposed Stipulation does not comply with" paragraph 12(f) of the Pre-Conversion DIP Order. Onset Objection ¶ 17. That is wrong, too. Paragraph 12(f) of the Pre-Conversion DIP Order authorizes the DIP Secured Parties, following an Event of Default and delivery of a Termination Notice, to seek stay relief ***on an emergency basis*** on not less than five business days' notice to the Remedies Notice Parties. *See* Pre-Conversion DIP Order ¶ 12(f) (emphasis added). This Court already found that both conditions are satisfied. *See* Forbearance Stipulation ¶ 3(a)–(c). The DIP Secured Parties bargained for a pre-agreement on emergency consideration as a condition to extending $1.1 billion in new-money financing. *See* Pre-Conversion DIP Order at 2. And the Court approved it.[12]

16. Onset's distinction between a "motion" and the Proposed Stipulation is baseless. If the FBG Trustee had contested the stay relief, the DIP Secured Parties would have proceeded by contested motion. The Ad Hoc Group filed the Proposed Stipulation with a notice, served every

---

[11] The irony of Onset's objection should not be lost—the DIP Secured Parties have funded these cases with over a billion dollars in postpetition capital—they are keenly aware of the costs. *See* Pre-Conversion DIP Order at 2 (New Money DIP Loans of $1.1 billion).

[12] Provisions like paragraph 12(f) appear in DIP financing orders as a matter of course. Onset's demand that the DIP Secured Parties separately justify "exigent circumstances" would read paragraph 12(f) out of the Pre-Conversion DIP Order and strip the DIP Secured Parties of the very protection they negotiated. *See* Onset Objection ¶ 9.

registered party via ECF, and requested entry no earlier than five business days later, which is what the Court required in paragraph 12(f) of the Pre-Conversion DIP Order. Onset identifies no substantive or procedural right that a filing captioned "motion" would have afforded it that it has not already received.[13]

17. Finally, Onset identifies no pecuniary interest in the Remaining DIP Cash Collateral. It objects not to protect any right it may have, but simply to obstruct the FBG Estates' prosecution of claims against it. It feigns an interest in "future litigation proceeds" until the Court resolves their allocation. Onset Objection ¶ 12. But the Proposed Stipulation plainly does not lift the stay on "future litigation proceeds" and instead focuses on existing cash held in the FBG Debtors' own accounts. *See* Proposed Stipulation at 3. It transfers no cause of action and allocates no recovery.

18. Evolution and Onset advance no legitimate interest in their Objections. It is high time for their meritless obstruction to stop. The Court should overrule the Objections and permit the orderly administration of these chapter 7 cases to proceed.

## **CONCLUSION**

19. For the reasons set forth above, the Parties respectfully request that the Court overrule the Objections, enter the Proposed Stipulation at the Court's earliest convenience, and grant such other and further relief as the Court deems just and proper.

---

[13] Onset also asks the Court to defer ruling until creditors elect a permanent trustee at the Section 341 Meeting. *See* Onset Objection ¶ 20. This condition has been satisfied – the 341 meetings for the FBG Debtors concluded and no creditor called for an election, making Ms. Engelhart the permanent FBG Trustee.

Dated: November 2, 2026

*/s/ Matthew R. Bentley*

Matthew R. Bentley (admitted *pro hac vice*)
ARENTFOX SCHIFF LLP
233 South Wacker Drive, Suite 7300
Chicago, IL 60606
Telephone: 312-258-5500
Email: matthew.bentley@afslaw.com

*Counsel to the DIP Agent*

*/s/ Tom A. Howley*

Tom A. Howley (Texas Bar No. 24010115)
Eric Terry (Texas Bar No. 00794729)
HOWLEY LAW PLLC
700 Louisiana Street, Suite 4220
Houston, TX 77002
Telephone: 713-333-9125
Email: tom@howley-law.com
eric@howley-law.com

Scott J. Greenberg (admitted *pro hac vice*)
C. Lee Wilson (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: 212-351-4000
Email: sgreenberg@gibsondunn.com
clwilson@gibsondunn.com

-and-

AnnElyse Scarlett Gains (admitted *pro hac vice*)
S. Robert Marsters, Jr. (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street N.W.
Washington, D.C. 20036-3504
Telephone: 202-955-8500
Email: agains@gibsondunn.com
rmarsters@gibsondunn.com

*Counsel to the Ad Hoc Group*

**CERTIFICATE OF SERVICE**

I certify that on November 2, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Tom A. Howley*___________
Tom A. Howley