**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| FIRST BRANDS GROUP, LLC, *et al.*, | Case No. 25-90399 (CML) |
| Debtors.[1] | (Jointly Administered) |

**CHAPTER 7 TRUSTEES RONALD J. SOMMERS'S AND CATHERINE S. CURTIS'S EMERGENCY MOTION TO EXTEND DEADLINE TO OBJECT TO THE FOURTH INTERIM AND FINAL FEE APPLICATION OF ALVAREZ AND MARSAL NORTH AMERICA, LLC, AS FINANCIAL ADVISOR TO THE CHAPTER 11 DEBTORS**

**[Relates to Docket No. 3860]**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

[1] A complete list of the Debtors in these chapter 7 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 7 cases is 127 Public Square, Suite 5300, Cleveland, Ohio 44114.

Ronald J. Sommers, the Chapter 7 Trustee for the bankruptcy estates of Debtors Patterson Inventory, LLC, Patterson Inventory Holdings, LLC, Starlight Inventory I, LLC, Starlight Inventory Holdings I, LLC, Global Assets LLC, Global Lease Assets Holdings, LLC, Global Assets GmbH, Carnaby Capital Holdings, LLC, Broad Street Financial Holdings, LLC, Broad Street Financial, LLC, Carnaby Inventory II, LLC, Carnaby Inventory Holdings II, LLC, Carnaby Inventory III, LLC, and Carnaby Inventory Holdings III, LLC (collectively, the "Sommers Debtors"), and Catherine S. Curtis, the Chapter 7 Trustee (together with Ronald J. Sommers, the "Trustees") for the bankruptcy estates of Debtors Carnaby Capital, LLC, Carnaby Inventory Holdings IV, LLC, Carnaby Inventory IV, LLC, Carnaby FA Holdings, LLC, Carnaby FA, LLC, and Eagle Casting Holdings, LLC (the "Curtis Debtors," and together with the Sommers Debtors, the "Chapter 7 SPV Debtors"), hereby submit this emergency motion (the "Motion") **seeking entry of an order on or before November 16, 2026**, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), **extending the deadline to object** to the *Fourth Interim and Final Fee Application of Alvarez and Marsal North America, LLC, as Financial Advisor to the Chapter 11 Debtors* [ECF No. 3860] (the "Application") **from the previously agreed-upon deadline of November 16, 2026, to and including December 4, 2026**, without prejudice to further extension for cause shown. Emergency consideration is necessary because **the current deadline to object to the Application expires at 5:00 p.m. (Central Time) on November 16, 2026**. Absent an extension, the Chapter 7 SPV Debtors' estates may lose the opportunity to object to the Application and to protect their claims against A&M from any preclusive effect of its approval. In the alternative, the Trustees request a short-term extension of the objection deadline until the parties can be heard on this Motion. In support of this Motion, the Trustees respectfully state as follows:

## PRELIMINARY STATEMENT

1. Continuing its pattern of thumbing its nose at this Court's orders, Alvarez and Marsal North America, LLC ("A&M") has now forced the Trustees to file this Motion seeking an emergency extension of time due to A&M's refusal to comply with the explicit directive in the September 1, 2026 *Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* [ECF No. 3729] (the "Conversion Order") that professionals submitting final fee applications must "identify fees and expenses between and among the specific Debtor entities," and A&M's refusal to otherwise engage with the Trustees to negotiate a stipulation to preserve the claims of the Chapter 7 SPV Debtors against A&M notwithstanding approval of any final fee application.

2. A&M initially indicated that it would be willing to work with the Trustees towards a negotiated resolution of those issues. But now, despite ***repeated*** requests from the Trustees asking A&M to confirm what amount of its claimed fees and expenses, if any, are being allocated to the Chapter 7 SPV Debtors, the Trustees still have no understanding of whether the Chapter 7 SPV Debtors will ultimately be asked to foot any of the bill for A&M's services, let alone whether such services were "reasonable" or "necessary." *See* 11 U.S.C. § 330(a)(1).

3. Rather than work with the Trustees to avoid unnecessary court filings, A&M has reversed course and dug in its heels while simultaneously stonewalling the Trustees. Having been unable to obtain answers from A&M on its fee allocation or its cooperation on a claims preservation stipulation, the Trustees are left with no alternative but to file an objection to A&M's final fee application and to commence an adversary proceeding asserting the Chapter 7 SPV Debtors' claims against A&M, even though the full extent of A&M's misconduct and the resulting damages to the Chapter 7 SPV Debtors remain to be determined. Due to A&M's last-minute change of heart that

caused it to revert to its practice of refusing to cooperate with the Trustees and provide basic documents and information, the Trustees now seek additional time to file their objections to A&M's Application to avoid prejudicing the Chapter 7 SPV Debtors' causes of action against A&M.

## FACTUAL BACKGROUND

4. On October 4, 2026, A&M, as financial advisor to the Chapter 11 Debtors, filed the Application, seeking (i) interim allowance of $6,194,070.68 in fees and expenses for the period from July 1, 2026, through August 31, 2026 (the "Fourth Interim Period"), and (ii) final allowance of $89,113,603.54, consisting of $87,478,274.50 in fees and $1,635,329.04 in expenses, for the period from September 29, 2025, through August 31, 2026 (the "Final Fee Period"). Application ¶ 3.

5. The Application's notice legend required any objection to be filed within twenty-one days from the date the Application was filed (the "Objection Deadline"). Because the twenty-first day fell on Sunday, October 25, 2026, the Objection Deadline originally ran through Monday, October 26, 2026. *See* Fed. R. Bankr. P. 9006(a)(1)(C).

6. On October 13, 2026, counsel for the Trustees contacted counsel for A&M to request an extension of the Objection Deadline while the Trustees considered "whether any objection is or is not required," and indicated that the Trustees had "questions regarding the implications of A&M's fee application on the Chapter 7 SPV Debtors' estates." **Exhibit B**, Email from John Hammel Strauss to Tad Davidson (Oct. 13, 2026, 15:03 CDT).

7. When A&M's counsel followed up that day for more information on the Trustees' specific issues, counsel for the Trustees explained that "we need to understand to what extent any fees or expenses sought in A&M's final fee application are chargeable to the Chapter 7 SPV estates," citing the language in the Conversion Order. **Exhibit B**, Email from Barbara Balliette to Tad Davidson (Oct. 13, 2026, 15:53 CDT).

8. The Trustees' counsel followed up with A&M on October 15 regarding their extension request, and then again on Friday, October 16. **Exhibit B**, Email from Barbara Balliette to Tad Davidson (Oct. 15, 2026, 10:42 CDT); Email from Barbara Balliette (Oct. 16, 2026, 12:14 CDT). A&M's counsel indicated in response to the Friday email that he did not yet have authority from his client to grant the extension request from the Trustees' counsel. A&M's counsel further explained in an email later that day:

> We continue to discuss your request and **<u>will get back to you prior to the objection deadline with an answer to your question whether any fees are allocated to your debtors</u>**. Are you not objecting to A&M final fee application if the answer is A&M is not allocating any fees to your debtors?

**Exhibit B**, Email from Tad Davidson to Barbara Balliette (Oct. 16, 2026, 12:24 CDT) (emphasis added). **Despite counsel's October 16 representation, nearly a month later the Trustees *<u>still</u>* have not received an answer to the allocation question**.

9. The Trustees' counsel responded that the Trustees would "need an answer by close of business on Monday on the extension request so that we can either seek relief from the court or prepare a response," and explained that "if there is no allocation to any of the Trustee's debtors, then **<u>we are open to discussing a resolution that will allow A&M to collect its fees while preserving post-petition claims of the Trustee's debtors that we believe may exist</u>**." **Exhibit B**, Email from Barbara Balliette to Tad Davidson (Oct. 16, 2026, 12:30 CDT) (emphasis added).

10. On October 19, 2026, A&M agreed to extend the Objection Deadline for an additional twenty-one days to 5:00 p.m. Central Time on November 16, 2026. *See Notice Regarding the Fourth Interim and Final Fee Application of Alvarez & Marsal North America, LLC, as Financial Advisor to the Chapter 11 Debtors* [ECF No. 3998].

11. The Trustees' counsel again followed up on the allocation question during an October 30, 2026 call with A&M's counsel. During that Friday call, A&M's counsel explained

that A&M did not plan to allocate any of its claimed fees and expenses to any of the Chapter 7 SPV Debtors, but said that the DIP lenders wanted to reserve their right to seek contribution from the Chapter 7 SPV Debtors. Decl. of John Hammel Strauss ¶¶ 3–6.

12. The Trustees' counsel followed up on the Friday, October 30 call with a Monday, November 2 email requesting that A&M confirm that it "is not allocating any fees" to the Chapter 7 SPV Debtors, and reiterated that A&M's Application had failed to comply with the Conversion Order. **Exhibit C**, Email from John Hammel Strauss to Tad Davidson (Nov. 2, 2026, 15:24 CST).

13. On November 4, 2026, A&M's counsel responded to the November 2 email but ignored the question from the Trustees' counsel about A&M's allocation of fees and expenses. **Exhibit C**, Email from Tad Davidson to John Hammel Strauss (Nov. 4, 2026, 15:45 CST). That afternoon, the Trustees' counsel again followed up on the unanswered allocation question.

14. On Friday, November 6, 2026, A&M's counsel finally replied:

> A&M in its fee statements has already allocated its fees between DIP Loan Parties and Non-DIP Loan Parties pursuant to the DIP order (Para 7(e)) and interim fee procedures order (para 6). For A&M, the amount allocated to the Non-DIP Loan Parties is approximately $2 million. As you know, the Non-DIP Loan Parties are the SPV debtors. We believe that this is what Judge Lopez envisioned professional [*sic*] having to do when he restated the allocation process "in accordance with the Interim Compensation Procedures" in the conversion order (para 2((v)). This isn't something new. With that said, A&M's allowed fees will be paid from the Professional Fee Escrow which was funded by the DIP lenders. These funds are set aside for payment of professionals and none of the debtors or the DIP lender have an interest in the reserve.

**Exhibit C**, Email from Tad Davidson to John Hammel Strauss (Nov. 6, 2026, 12:08 CST).

15. On November 10, 2026, the Trustees' counsel again followed up on the allocation question, pointing out that the November 6 email from A&M had been non-responsive. **Exhibit C**, Email from Scott Saldaña to Tad Davidson (Nov. 10, 2026, 13:18 CST). The Trustees' counsel also requested LEDES format versions of A&M's invoices so the time entries could be scrutinized to the extent that fees and expenses were being allocated to the Chapter 7 SPV Debtors, and asked

for an additional extension of the Objection Deadline to accommodate that review. *Id.* The Trustees' counsel reiterated that the Trustees still wished to resolve their issues with A&M on the Application through a stipulation, and offered to provide the first draft if A&M remained interested in that path. *Id.*

16. On November 11, 2026, the Trustees' counsel followed up with A&M on the prior day's email, explaining that the Trustees would need to move for an extension of the Objection Deadline if they did not hear back from A&M by the following day. **Exhibit C**, Email from Scott Saldaña to Tad Davidson (Nov. 11, 2026, 19:12 CST). On November 12, 2026, A&M's counsel replied: "Noted. You had 45 days to review the fee application and we will contest any request to extend the already extended deadline." **Exhibit C**, Email from Tad Davidson to Scott Saldaña (Nov. 12, 2026, 10:04 CST).

17. In response, the Trustees' counsel recounted the details of the parties' October 30 call and explained that A&M's backtracking on a negotiated resolution had put the Trustees in a difficult position with regard to the Objection Deadline. **Exhibit C**, Email from John Hammel Strauss to Tad Davidson (Nov. 12, 2026, 10:53 CST). The Trustees' counsel repeated his request for LEDES format versions of A&M's invoices and an update on when those would be provided to the Trustees. *Id.*

18. A&M's counsel replied that he "respectfully disagree[d] with your statements," but that he would "reach out to you if we have anything further to discuss." **Exhibit C**, Email from Tad Davidson to John Hammel Strauss (Nov. 12, 2026, 11:36 CST). The Trustees' counsel responded again to request an update on when A&M would provide the Trustees with LEDES format versions of its invoices. **Exhibit C**, Email from John Hammel Strauss to Tad Davidson (Nov. 12, 2026, 11:42 CST). A&M has not responded.

## JURISDICTION AND VENUE

19. The Court has jurisdiction and authority to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The legal bases for the relief requested herein are 11 U.S.C. § 105(a) and Rule 9006(b) of the Federal Rules of Bankruptcy Procedure.

## RELIEF REQUESTED

20. By this Motion, the Trustees request entry of the Proposed Order, pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9006(b)(1), extending the Objection Deadline for the Trustees through and including Friday, December 4, 2026, without prejudice to the Trustees seeking additional extensions for cause shown. In the alternative, the Trustees request a short-term extension of the objection deadline until the parties can be heard on this Motion.

## ARGUMENT

21. Bankruptcy Rule 9006(b) provides that the Court may extend time periods "at any time and for cause" and "with or without a motion or notice" if "a request to extend is made before the period (or a previously extended period) expires." Fed. R. Bankr. P. 9006(b)(1); *In re Ward*, 978 F.3d 298, 302 (5th Cir. 2020) ("Generally, bankruptcy courts may extend upcoming deadlines 'for cause shown' . . . .").

22. Moreover, Bankruptcy Code section 105(a) provides the Court with broad equitable powers to fashion appropriate relief, including to extend deadlines. 11 U.S.C. § 105(a); *Ward*, 978 F.3d at 302–03; *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 373–76 (2007); *see also In re Cano*, 410 B.R. 506, 539 (S.D. Tex. 2009) ("Section 105(a) provides that the court may issue *any* 'judgment' necessary or appropriate to carry out requirements of the Bankruptcy Code.").

23. In addition, the Court has an independent duty to review fee applications under 11 U.S.C. § 330, and may award only "reasonable compensation for actual, necessary services."

11 U.S.C. § 330(a)(1)(A). Allowing parties in interest a meaningful opportunity to review the Application assists the Court in discharging that duty.

24. Here, ample cause exists to extend the Objection Deadline, which has not yet expired.

25. ***First***, although A&M has confirmed that any of its allowed fees will be paid from the Professional Fee Escrow account, that confirmation does not answer whether A&M intends to allocate any of its claimed fees and expenses between and among the specific Chapter 7 SPV Debtor estates, a question the Trustee repeatedly put to A&M on October 13, November 2, November 4, November 10, and again on November 11, 2026, and which today remains unanswered. If approximately $2 million of A&M's requested compensation is to be allocated to the estates of the Chapter 7 SPV Debtors, the trustees of those estates must be able to determine whether each proposed allocation is proportionate to the services actually provided to that estate, and whether the amounts sought represent "reasonable compensation for actual, necessary services" and reimbursement for "actual, necessary expenses" within the meaning of 11 U.S.C. § 330(a)(1). That analysis will in turn require production of A&M's invoices in LEDES format so that the Trustees can scrutinize the underlying time entries. Thus far, A&M has refused or ignored the Trustees' requests for supporting documentation to conduct such an analysis. **Exhibit C**, Email from Tad Davidson to John Hammel Strauss (Nov. 12, 2026, 12:36 CST).

26. The Conversion Order expressly required A&M and the other estate professionals to "identify fees and expenses between and among the specific Debtor entities." Conversion Order ¶ 2(a)(v). As set forth in the objection filed by Trustee Sommers to other professionals' final fee applications [ECF No. 4047], the Conversion Order's reference to the Interim Compensation Procedures Order does not relieve A&M or any other professional of that explicit obligation. Nor

do A&M's earlier allocations between the DIP Loan Parties and the Non-DIP Loan Parties satisfy it; the Conversion Order's allocation requirement reflects the new reality of these cases, in which three separate chapter 7 trustees now preside over dozens of estates. That requirement is also consistent with settled bankruptcy law, which requires professional fee applicants to specify to whom their requested fees are being charged. *See* Fed. R. Bankr. P. 2016(a)(1)(C) (requiring a final fee application to show "the source of the paid or promised compensation"); *In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 698 (Bankr. S.D. Tex. 2009) ("Although the same attorneys represent both Debtors, the Court concludes that the attorneys' fees must be allocated to reflect the compensation requested for services rendered to each Debtor.").

27. Moreover, A&M's refusal to allocate its fees and expenses between and among the Debtors stands in stark contrast to other professionals who have complied with the Conversion Order. *See, e.g.*, *Fourth Interim and Final Fee Application of Simpson Thacher & Bartlett LLP for Allowance of Compensation and Reimbursement of Expenses as Counsel to the SPV Entities for the Fourth Interim Period of July 1, 2026, through September 1, 2026, and the Final Fee Period of December 7, 2025, through September 1, 2026*, Exhibit H [ECF No. 3925] (allocating fees and expenses among specific Debtors by entity name).

28. ***<u>Second</u>***, the Trustees have attempted to negotiate a stipulation with A&M that would permit approval of the Application while preserving the Trustees' claims against A&M, but the feasibility of any such stipulation depends on first obtaining clarity on the allocation issue. Until A&M provides that allocation and the supporting LEDES format data, neither the Trustee nor the Court can meaningfully assess the Application, and an extension of the Objection Deadline is warranted.

29. The Fifth Circuit has made clear that "[a]ward of the professionals' fees and enforcement of the appropriate standards of conduct are inseparably related functions of bankruptcy courts." *In re Southmark Corp.*, 163 F.3d 925, 931 (5th Cir. 1999). Accordingly, in deciding a fee application, the Court must "consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

11 U.S.C. § 330(a)(3). By granting a fee application, a "bankruptcy court implie[s] a finding of quality and value" in the professional's services. *In re Intelogic Trace, Inc.*, 200 F.3d 382, 387 (5th Cir. 2000) (finding that Chapter 7 trustee's malpractice claims against Chapter 11 professionals were barred by *res judicata* effect of final fee application approval).

30. Here, the Trustees believe that the Chapter 7 SPV Debtors hold potentially valuable claims against A&M for its conduct in representing both the FBG Debtors and the SPV Debtors during the pendency of the Chapter 11 proceedings, including, for example, claims based on A&M's violation of the Court's *Stipulation and Agreed Order Regarding Adequate Protection Among Debtors and Evolution Credit Partners* [ECF No. 609] (the "Evolution Adequate

Protection Stipulation") and the Court's ruling on the record at a January 20, 2026 hearing finding that the A&M-run FBG Debtors had breached the Evolution Adequate Protection Stipulation.

31. Absent an agreement with A&M that approval of its Application will not have *res judicata* effect on the Chapter 7 SPV Debtors' claims, the Trustees will have no alternative but to commence an adversary proceeding against A&M to preserve and prosecute those claims ahead of Application approval, even though the full extent of A&M's misconduct and the resulting damages suffered by the Chapter 7 SPV Debtors remain unclear. If that is the route A&M prefers to go, the Trustees need more time to initiate those proceedings and lodge their objections to the Application.

32. A&M will not be prejudiced by an extension. A&M has already been paid $87,786,631.87 on account of its fee statements for the Final Fee Period. Application ¶ 17. An extension will simply preserve the Trustees' right to scrutinize the Application and to be heard on whether the requested compensation is reasonable and necessary.

33. Finally, declining to extend the Objection Deadline would produce an inequitable result, as it would permit final allowance of all compensation in these cases before parties in interest have had a fair opportunity to evaluate it.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Trustees respectfully request that the Court (i) grant the relief requested in the Motion, and (ii) grant to the Trustees such other or further relief as deemed appropriate.

*[Remainder of page intentionally left blank.]*

Dated: November 12, 2026

Respectfully submitted,

**REID COLLINS & TSAI LLP**

*/s/ Scott D. Saldaña*
William T. Reid, IV (00788817)
Lisa S. Tsai (24046999)
Scott D. Saldaña (24083780)
Julia D. Byrne (*pro hac vice*)
Samuel W. Hilliard (24145178)
1301 S. Capital of Texas Hwy, Suite C-300 Austin, Texas 78746
Telephone: (512) 647-6100
Facsimile: (512) 647-6129
Email: wreid@reidcollins.com
ltsai@reidcollins.com
ssaldana@reidcollins.com
jbyrne@reidcollins.com
shilliard@reidcollins.com

-and-

John Hammel Strauss (*pro hac vice*)
420 Lexington Avenue, Suite 2731
New York, New York 10170
Telephone: (212) 344-5200
Email: jhstrauss@reidcollins.com

-and-

Brian J. Bah (24087130)
1601 Elm Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 420-8900
Facsimile: (214) 420-8909
Email: bbah@reidcollins.com

*Proposed Special Litigation Counsel for the Chapter 7 Trustees Ronald J. Sommers and Catherine S. Curtis*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of November, 2026, the undersigned caused a true and correct copy of the foregoing document to be served upon all parties via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Scott D. Saldaña*
Scott D. Saldaña