# EXHIBIT 4

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
September 01, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**ORDER (I) CONVERTING CHAPTER 11 CASES TO CASES UNDER CHAPTER 7, (II) ESTABLISHING DEADLINE FOR FILING FINAL CHAPTER 11 FEE APPLICATIONS AND SETTING A HEARING THEREON, AND (III) GRANTING RELATED RELIEF**

For the reasons set forth by the Court on the record of the hearing held on August 24, 2026 at which the Court denied confirmation of the FBG Debtors'[2] proposed plan and ordered that each of the Debtors'[3] chapter 11 cases (the "**Chapter 11 Cases**") be converted to cases under chapter 7 of the Bankruptcy Code (the "**Ruling**"); and this Court having jurisdiction to enter this order pursuant to 28 U.S.C. § 1334; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of these Chapter 11 Cases before this Court being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the legal and factual bases set forth in the Ruling establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

---

1 A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

2 "**FBG Debtors**" means, collectively, First Brands Group Holdings, LLC, First Brands Group Holdings, LLC's direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC.

Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* (Docket No. 608) (the "**Final DIP Order**").

3 Attached hereto as **Exhibit A** is a schedule listing the Converting Debtors and the corresponding case numbers.

**IT IS HEREBY ORDERED**:

1. Effective upon entry of this Order (the "**Conversion Date**"), the Chapter 11 Cases of each of the Debtors (excluding the Previously Converted Debtors,[4] collectively, the "**Converting Debtors**")[5] shall be converted to cases under chapter 7 of the Bankruptcy Code.

2. The following procedures are hereby approved:

(a) ***Professional Fees***.

(i) Subject to the terms of this Order, each applicable professional shall submit an application for allowance of compensation for services rendered and reimbursement of expenses (the "**Final Fee Application**") against the Debtors, as applicable, incurred (x) on a final basis through the Conversion Date, (y) on an interim basis, subject to paragraph 2(a)(v) below, after the Conversion Date in connection with the preparation and prosecution of each such Final Fee Application, and (z) on an interim basis, subject to paragraph 2(a)(v) below, after the Conversion Date in connection with the conversion of the Converting Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, including transition of the administration of the Converting Debtors' estates and cases to chapter 7, by not later than forty-five (45) days after the Conversion Date (the "**Final Fee Application Deadline**"). For the avoidance of doubt, the amount of fees for services rendered and/or expenses incurred in connection with the foregoing clauses (y) and (z) may be, but is not required to be, included in the applicable professional's respective Final Fee Application as an estimate and for interim approval purposes only; *provided* that the Debtors' chapter 7 estates shall only be responsible for payment of the actual amount of fees for services rendered and/or expenses incurred in connection with the foregoing clauses (y) and (z); and *provided further* that documentation of the reconciliation of estimates against actual amounts shall be provided to the Advisors to the Ad Hoc Group SteerCo[6] and the ABL Agent at least three (3) business days prior to payment.

(ii) Objections, if any, to a Final Fee Application shall be filed and served by no later than twenty-one (21) days after the date of filing such Final Fee Application, which may be extended by the applicable Professional Person or by further order of the Court. To the extent no objections are filed or informal objections

---

[4] The "**Previously Converted Debtors**" are (i) Patterson Inventory, LLC, (ii) Patterson Inventory Holdings, LLC, (iii) Starlight Inventory I, LLC, and (iv) Starlight Inventory Holdings I, LLC. The Previously Converted Debtors' Chapter 11 Cases were previously converted to cases under chapter 7 of the Bankruptcy Code on April 9, 2026. *See* Docket No. 2396.

[5] As used herein, FBG Converting Debtors shall refer to the chapter 7 cases of the FBG Debtors only.

[6] "**Ad Hoc Group SteerCo**" means the holders of claims under the Final DIP Order that are on account of the New Money DIP Loans (as defined in the Final DIP Order) that comprise the members of the steering committee of the Ad Hoc Group.

are received to a professional's Final Fee Application, such professional may file a Certificate of No Objection (a "**CNO**"), and the Court may, in its sole discretion, enter an order approving such fees and reimbursements without a hearing.

(iii) To the extent the Court approves a Final Fee Application, all approved amounts (the "**Allowed Professional Fees**") shall be paid (x) first, from each professional's retainer to the extent such retainers exist; (y) second, if and to the extent applicable pursuant to the terms of this Order, from the Professional Fees Escrow Account maintained in accordance with the terms of this Order and the Final DIP Order; and (z) third, if and to the extent applicable, from the Converting Debtors' chapter 7 bankruptcy estates in accordance with this Order, the priorities set forth in the Bankruptcy Code and the Final DIP Order. Following the Conversion Date, Kroll Restructuring Administration LLC ("**Kroll**") shall continue to (a) maintain and hold the Professional Fees Escrow Account in trust for the applicable Professional Persons, in accordance with this Order and the terms and conditions of the Final DIP Order and the Account Agent Agreement with the Debtors, dated September 24, 2025, and (b) be authorized to remit such funds to the applicable professionals following approval of their respective Monthly Statements, Interim Fee Applications (each, as defined in the Interim Compensation Procedures Order), and Final Fee Applications upon direction from Charles Moore of Alvarez & Marsal ("**A&M**").

(iv) Notwithstanding anything herein or the Final DIP Order to the contrary, all Allowed Professional Fees payable under paragraph 2(a)(i)(y) and (z) above (collectively, the "**Post-Conversion Fees**"): (a) shall not exceed $15 million in the aggregate against the Converting Debtors to the extent payable from the Professional Fees Escrow Account, DIP Collateral, or ABL Collateral absent the prior written consent of the Ad Hoc Group SteerCo and the ABL Agent (the "**Post-Conversion Maximum Fees Amount**"), and (b) if incurred by a Professional Person rendering services at the request of, or on behalf of, or in service to, a Converting Debtor, shall only be (y) paid from the Professional Fees Escrow Account up to the Post-Conversion Maximum Fees Amount, or (z) to the extent the Post-Conversion Maximum Fees Amount threshold has been reached, any remaining amounts shall be chargeable against the chapter 7 estate of the applicable Converting Debtor. On the Conversion Date, the Professional Fees Escrow Account shall be funded with (i) $5 million from cash collateral of the DIP Secured Parties and the proceeds of any ABL Collateral on a ratable basis as between the DIP Agent and the ABL Agent pursuant to the terms of the Final DIP Order and (ii) any excess amounts in the Professional Fee Escrow Account as of the Conversion Date (which excess may be retained and utilized for payment of any allowed Post-Conversion Fees up to the Post-Conversion Maximum Fees Amount pursuant to the terms of this Order). If, after the payment of all allowed fees of each retained professional on a final basis through the Conversion Date, the amount in the Professional Fees Escrow Account (calculated as of the Conversion Date) exceeds the Post-Conversion Maximum Fees Amount, such excess shall be repaid to the DIP Agent for the benefit of the DIP Secured Parties. Following the Conversion Date, the DIP

Secured Parties and the ABL Secured Parties shall not be required to pay any amounts from their respective collateral on account of Post-Conversion Fees incurred in excess of the Post-Conversion Maximum Fees Amount without their consent. Upon entry of this Order, there shall no longer be any authorization, permission, or requirement, notwithstanding anything in the Final DIP Order to the contrary, to fund the Carve-Out or amounts into the Professional Fees Escrow Account on account of or in relation to the Carve-Out for the professionals that are deemed to resign or withdraw pursuant to paragraph 8 of this Order or that represent statutory committees that are dissolved pursuant to the terms of this Order and this Order shall serve as an agreement that settles all Carve-Out obligations of the FBG Debtors.

For the avoidance of doubt, following the Conversion Date, (i) for any Post-Conversion Fees, Professional Persons may submit Monthly Statements and Interim Fee Applications pursuant to the Interim Compensation Procedures Order[7] and Kroll and A&M are authorized to remit funds to such Professional Person(s) from the Professional Fees Escrow Account on account of such Monthly Statements and Interim Fee Applications on an interim basis and in accordance with the Interim Compensation Procedures Order, provided that any services provided following the Conversion Date shall be subject to any applicable order(s) of this Court, subject in each case to the submission of a final fee application that fully and finally reconciles estimated amounts and actual amounts incurred for Post-Conversion Fees on a final basis, and (ii) DIP Fees and Expenses (including the Adequate Protection Fees and Expenses) pursuant to paragraph 26 of the Final DIP Order shall continue to be payable pursuant to the terms of the Final DIP Order from the proceeds of any DIP Loans (for the benefit of the DIP Secured Parties, the Ad Hoc Group, the Prepetition Secured Parties (including the Sidecar Term Loan Secured Parties), and their advisors) and proceeds of ABL Collateral (for the benefit of the ABL Secured Parties and their advisors) and any Trustee is authorized and directed to remit funds to such professionals in accordance with the terms of the Final DIP Order.

(v) All rights as between any Trustee, the Debtors, the Converting Debtors, and each of their estates are expressly reserved with respect to allocation or reimbursement of Allowed Professional Fees. In accordance with the Interim Compensation Procedures Order and retention agreements approved by this Court, Final Fee Applications, Monthly Statements, and Interim Fee Applications shall identify fees and expenses between and among the specific Debtor entities.

(b) ***Data, Documents, Books and Records***.

(i) As soon as reasonably practicable, but in no event more than thirty (30) days after the appointment of any interim chapter 7 trustee(s) (each, an "**Interim Trustee**"), the Converting Debtors shall turn over or provide to the chapter 7 estate

7 "Interim Compensation Procedures Order" means Docket No. 699.

of the applicable Converting Debtors, through each applicable Interim Trustee, as the successors to the chapter 11 Debtors, the original documents and access, as the case may be, to any and all remaining data, data files, documents, books and records (including financial and operation records, emails, and other documents relating to the Debtors' business and estate litigation claims) of the Converting Debtors (collectively, the "**Books and Records**") in the Converting Debtors' possession or control, as required by Bankruptcy Rule 1019(d); *provided* that such deadline is without prejudice to the Converting Debtors' ability to request an extension of such deadline from such Interim Trustee, or, as may change in accordance with the Bankruptcy Code, a permanent chapter 7 trustee, once appointed (each thereafter, a "**Permanent Trustee**," and each applicable Interim Trustee or Permanent Trustee at the relevant time serving as chapter 7 trustee for a Converting Debtor, a "**Trustee**") for the applicable Converting Debtors or the Court, including in the event of a dispute; *provided further* that all rights and defenses of each of the Converting Debtors to such Books and Records, including as to the ownership of any remaining Books and Records, shall be fully preserved and nothing in this Order shall be construed as a substantive determination as to proper ownership. For purposes hereof, the Converting Debtors may provide copies (including electronic copies) of such Books and Records to the applicable Trustee, or instructions for locating and accessing such Books and Records, and may retain copies of such Books and Records to the extent necessary to complete the reports required herein. For the avoidance of doubt, the intention of this provision is to preserve for the benefit of the chapter 7 estate of each Converting Debtor all records, emails, communications, electronically stored information, and other information of every kind of such Converting Debtor. All disputes concerning the Books and Records of the Converting Debtors shall be determined by this Court.

(ii) During the transition of the Books and Records and until a Permanent Trustee is appointed for each Converting Debtor, each Converting Debtor shall continue to maintain their Books and Records for the benefit of such Converting Debtor. Upon the Converting Debtors' turnover of all Books and Records of the estates under their custody and control to each Trustee for the Converting Debtors as required herein, the Trustee shall continue to preserve all Books and Records that were in the Debtors' possession prior to such turnover. Each Trustee and any vendor in possession of the Converting Debtors' Books and Records shall not destroy, delete, extinguish, or otherwise abandon any such Books and Records without seeking authorization from this Court.

(iii) In the event that the Debtor Professionals, the Trustee for the applicable FBG Converting Debtors, and the Ad Hoc Group SteerCo determine that making a payment to a third-party vendor is critical and essential to the continued preservation of the Books and Records, the Trustee(s) of the applicable FBG Converting Debtors is authorized to use any cash on hand that constitutes cash collateral of the DIP Secured Parties to make such payment upon notice and a stipulation filed on the docket on two (2) business days' notice without further approval or order of the Court; *provided* that such total payments shall not exceed $2 million in the aggregate.

(iv) The payment of Post-Conversion Fees from the Professional Fees Escrow Account or any Collateral of the DIP Secured Parties or ABL Agent shall be subject to a weekly pre-approval budget process by the advisors to the Ad Hoc Group SteerCo and the ABL Agent approving the upcoming week's funding amount and proposed services to be provided by the Professional Persons.

(c) ***Supplemental Schedules***. Within twenty-one (21) days of the Conversion Date, the Converting Debtors shall file supplemental schedules itemizing changes from the original schedules in property of the estate and in creditor lists, or a statement that there are no changes, as permitted by court order under Bankruptcy Rule 1019(e)(1) and Bankruptcy Local Rule 1019-1; *provided* that such deadline is without prejudice to the Converting Debtors' ability to request an extension of such deadline from the applicable Trustee or the Court.

(d) ***Final Report***. Within thirty (30) days after the Conversion Date, the Converting Debtors shall file and transmit to the U.S. Trustee a final report and account in accordance with Bankruptcy Rule 1019(e)(1)(B); *provided* that such deadline is without prejudice to the Converting Debtors' ability to request an extension of such deadline from the U.S. Trustee or the Court.

(e) ***Official Committee of Unsecured Creditors***. The Creditors' Committee shall be automatically dissolved on the Conversion Date, and the Creditors' Committee members and the Creditors' Committee's professionals shall be released from all rights and duties from or related to the Chapter 11 Cases on such date; *provided, however*, that the Professional Persons retained by the Creditors' Committee shall have standing and a right to be heard after the Conversion Date for the limited purposes of filing and prosecuting Final Fee Applications.

(f) ***Non-Union Retiree Committee***. The Non-Union Retiree Committee (as defined in the Retiree Benefits Order) shall be automatically dissolved on the Conversion Date, and the members of and professionals retained by the Non-Union Retiree Committee shall be released from all rights and duties from or related to the Chapter 11 Cases on such date; *provided, however*, that any Professional Persons retained by the Non-Union Retiree Committee shall have standing and a right to be heard after the Conversion Date, for the limited purposes of filing and prosecuting Final Fee Applications.

(g) ***Claims Agent***.

(i) Kroll shall, within fourteen (14) days of the Conversion Date, (A) forward to the Clerk an electronic version of all proofs of claim, (B) upload the publicly available portions of the creditor matrix into CM/ECF, (C) forward to the Clerk the sealed portions of the creditor matrix in the format requested by the Clerk, and (D) since the Chapter 11 Cases are jointly administered, docket in the lead case a combined claims register containing claims from all cases, and also docket a case-specific final claims register and creditor mailing matrix in each respective jointly administered case in a format acceptable to the Clerk.

(ii) Subject to the foregoing paragraph 3(g)(i), upon the Conversion Date, Kroll shall be relieved of its responsibilities as the Debtors' claims and noticing agent and will have no further obligations to the Court, the Debtors, the Trustee, or any party in interest with respect to the Chapter 11 Cases; *provided* that Kroll will be compensated from the Professional Fees Escrow Account or from any advance it may hold for any services performed after the Conversion Date to satisfy the outstanding obligations set forth herein.

3. For the avoidance of doubt: (a) upon the Conversion Date, the Converting Debtors and any Trustee shall not be authorized or entitled to any continued use of any DIP Collateral, including any cash collateral of the DIP Secured Parties or any use of any proceeds of the DIP Loans or DIP Collateral, absent the express written consent of the DIP Agent; (b) the DIP Liens shall continue to attach to all such DIP Collateral, including all cash collateral and proceeds thereof; and (c) the DIP Agent, for itself and the benefit of the other DIP Lenders, shall continue to benefit from the DIP Liens, Adequate Protection Liens, Adequate Protection Claims (including claims arising under section 507(b) of the Bankruptcy Code), the DIP Fees and Expenses, and all other rights and terms as set forth in the Final DIP Order and the DIP Forbearance Stipulation (Docket No. 3506). Notwithstanding the foregoing, nothing in this Order is intended to conclude or hold that that any of the cash within the Factored Receivables Account (as defined in the Cash Management Order[8]) established under prior orders of this Court, constitutes property of the Debtor, "cash collateral" of the DIP Secured Parties or the ABL Secured Parties, as the rights of the factoring parties who purchased receivables prepetition in such case remain unadjudicated, and all claims as against such cash in that account, including adequate protection rights (if any), are unaffected by this Order.

4. For the avoidance of doubt: (a) upon the Conversion Date, the Converting Debtors and any Trustee shall not be authorized to any continued use of any ABL Collateral (as defined in

[8] "Cash Management Order" means Docket No. 604.

the Final DIP Order) or any cash collateral of the ABL Secured Parties absent the express written consent of the ABL Agent; (b) the ABL Liens (as defined in the Final DIP Order) shall continue to attach to all ABL Priority Collateral (as defined in the Final DIP Order), including all such cash collateral and proceeds thereof; (c) the ABL Agent, for itself and the benefit of the other ABL Secured Parties, shall continue to benefit from the ABL Liens, Adequate Protection Liens, Adequate Protection Claims (including claims arising under section 507(b) of the Bankruptcy Code), the ABL Adequate Protection Fees and Expenses, and all other rights and terms set forth in the Final DIP Order, the ABL Credit Documents, and the ABL Intercreditor Agreement; and (d) the relative priorities, rights, and remedies of the DIP Secured Parties and the Prepetition Secured Parties, as applicable, as set forth in the Intercreditor Agreements and the Final DIP Order, including as to the DIP Collateral and Prepetition Collateral, shall remain in full force and effect in the Converting Debtors' chapter 7 cases and any successor cases, without modification, until all DIP Obligations and Prepetition Secured Debt are indefeasibly paid in full in cash or as otherwise agreed in writing by the DIP Agent or the Prepetition Agents, as applicable.

5. Nothing in this Order shall be construed to permit, without consent or further order of the Court, any use of assets, cash, or collateral held by a party other than the DIP Secured Parties or ABL Secured Parties that is subject to an asserted and not withdrawn claim or objection by any party in interest that has not been resolved, overruled, or determined by a final, non-appealable order.

6. For the avoidance of doubt and to the extent set forth in this Order and the Final DIP Order, (i) the Professional Fees Escrow Account and all amounts therein shall not (A) be property of the estate of any of the Debtors under section 541 of the Bankruptcy Code, (B) be subject to the DIP Liens or Adequate Protection Liens, or (C) constitute Collateral; and (ii) all Professional Persons shall continue to have a first-priority claim over the funds held in the Professional Fees Escrow Account, with priority over all DIP Liens, DIP Superpriority Claims,

Prepetition Liens, Adequate Protection Liens, and Adequate Protection Claims, and any other liens, claims, or interests that any creditor, the Prepetition Secured Parties, the DIP Secured Parties, or any of their respective affiliates hold, own or control in relation to the Debtors or their affiliates. Notwithstanding anything herein to the contrary, and consistent with this Order and paragraph 7(g) of the Final DIP Order, as applicable, if, after paying all Allowed Professional Fee claims against the Converting Debtors pursuant to the terms of this Order, the Professional Fees Escrow Account has not been reduced to zero, without any further order of this Court, all remaining funds in the Professional Fees Escrow Account shall be distributed to the DIP Agent for application to the DIP Obligations until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the New Money Loan Commitments have been terminated.

7. Any amounts remaining in the Employee Liability Account as defined in the OEM Order (Docket No. 1848) as of the Conversion Date shall be maintained in that account and used by the Converting Debtors solely for payment of liabilities and obligations that may be satisfied from the funds in the Employee Liability Account pursuant to the OEM Order and the Retiree Benefits Order (Docket No. 3472) and without any further order of this Court, any remaining funds after payment in full of all such liabilities and obligations shall be distributed to the DIP Agent for application to the DIP Obligations until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the New Money Loan Commitments have been terminated.

8. All other accounts in the possession and control of the FBG Converting Debtors shall be transferred to the control of the applicable Trustee of the FBG Converting Debtor case, which shall be maintained subject to the terms and conditions of outstanding orders of this Court (or documents related thereto) or relevant agreements, including the Final DIP Order and the Final Cash Management Order, and the liens and claims granted thereunder. Without limiting

Case 25-90399 Document 484 Filed in TXSB on 01/27/26 Page 10 of 16

the generality of the foregoing, the possession of the Factored Receivables Account, including all funds on deposit therein, shall by modified solely to list the Permanent Trustee of such entity that is currently identified as the depositor on such account (without any changes) as the authorized signatory for the Factored Receivables Account, and it shall continue to be maintained as a segregated account. The applicable Trustee shall (i) continue to direct, to the extent received, all prepetition collections of Debtors' receivables into the Factored Receivables Account, (ii) continue to comply with all reporting obligations set forth in paragraph 7 of the Cash Management Order, and (iii) not disburse, use, transfer, or otherwise dispose of any funds from the Factored Receivables Account (including for payment of chapter 7 administrative expenses, trustee fees, or professional fees) without further order of this Court after notice to the ABL Agent, the counterparties to any Receivables Facility (as defined in the Cash Management Order), and all other affected parties, and an opportunity to be heard. Nothing in this Order shall alter, impair, or otherwise affect the property rights, ownership interests, security interests, liens, claims, defenses, or other rights of any counterparty to a Receivables Facility with respect to the funds in the Factored Receivables Account or the underlying receivables, all of which are expressly preserved in this Order.

9. Upon the Conversion Date (i) Neal Goldman, William Transier, and Benjamin Duster, as independent directors of the Debtors and (ii) Charles Moore, Daniel Jerneycic, Gaurav Malhotra, and Paul Kosturos, as officers of the Debtors shall be deemed to have resigned or otherwise have withdrawn from their respective roles with the Debtors, without the need to take any further action; *provided* that the Trustee may request that any previously retained professional continue to provide services to the chapter 7 estate (at which point a notice of such retention, including any economic terms and engagement letter shall be filed on the docket); *provided further* that nothing herein shall alter or extinguish any professional's obligations to the

Debtors as former clients pursuant to applicable laws and ethical rules; *provided further*, that the Debtors' professionals shall be authorized but not directed to assist the Debtors in effectuating a conversion of the Chapter 11 Cases to cases under chapter 7. For the avoidance of doubt, nothing in this Order shall be interpreted to impact the retention of professionals by the chapter 7 trustee of the Previously Converted Debtors.

10. This Order does not impact the rights granted to the chapter 7 trustee of the Previously Converted Debtors under the Order Extending Wind Down Order to Chapter 7 Trustee and Related Relief [Case No. 25-90392, Docket No. 61].

11. Effective upon entry of this Order, pending the qualification and appointment of a Permanent Trustee for the involved Converting Debtors under section 702 of the Bankruptcy Code, and a period thereafter of 45 days, all applications for allowance and payment of administrative expenses (other than fee applications filed by Professional Persons) in the Chapter 11 Cases are stayed unless otherwise ordered by this Court. Any applicable deadlines shall be tolled during the pendency of such stay.

12. Other than as expressly provided herein, nothing in this Order or the conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code shall affect or modify any order of this Court (or documents related thereto) entered during the Chapter 11 Cases, and all such orders entered by the Court in the Chapter 11 Cases shall remain in full force and effect in the Converting Debtors' chapter 7 cases unless and until expressly modified by further order of the Court.

13. Any stay of this Order, whether arising from Rules 6004 and/or 6006 of the Federal Rules of Bankruptcy Procedure or otherwise, is hereby expressly waived and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

14. This Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this Order.

Signed: September 01, 2026

Christopher Lopez
United States Bankruptcy Judge

# <u>**Exhibit A**</u>

Schedule of Converting Debtors

| No. | Debtor Name | Case Number |
|---|---|---|
| 1. | Global Assets LLC | 25-90383 (CML) |
| 2. | Global Lease Assets Holdings, LLC | 25-90384 (CML) |
| 3. | Carnaby Capital Holdings, LLC | 25-90385 (CML) |
| 4. | Broad Street Financial Holdings, LLC | 25-90386 (CML) |
| 5. | Broad Street Financial, LLC | 25-90387 (CML) |
| 6. | Carnaby Inventory II, LLC | 25-90388 (CML) |
| 7. | Carnaby Inventory Holdings II, LLC | 25-90389 (CML) |
| 8. | Carnaby Inventory III, LLC | 25-90390 (CML) |
| 9. | Carnaby Inventory Holdings III, LLC | 25-90391 (CML) |
| 10. | Trico Technologies Corporation | 25-90396 (CML) |
| 11. | First Brands Group Holdings, LLC | 25-90397 (CML) |
| 12. | First Brands Group Intermediate, LLC | 25-90398 (CML) |
| 13. | First Brands Group, LLC | 25-90399 (CML) |
| 14. | Viceroy Private Capital, LLC | 25-90400 (CML) |
| 15. | FRAMAuto Holdings, LLC | 25-90401 (CML) |
| 16. | Autolite Operations LLC | 25-90402 (CML) |
| 17. | FRAM Group Operations LLC | 25-90403 (CML) |
| 18. | FRAM Group IP LLC | 25-90404 (CML) |
| 19. | Jasper Acquisition Corp. | 25-90405 (CML) |
| 20. | Jasper Rubber Products, Inc. | 25-90406 (CML) |
| 21. | Specialty Pumps Group, Inc. | 25-90407 (CML) |
| 22. | ASC Industries, Inc. | 25-90408 (CML) |
| 23. | Heatherton Holdings, LLC | 25-90409 (CML) |
| 24. | PHNX Acquisition Corp. | 25-90410 (CML) |
| 25. | Hopkins Acquisition, Inc. | 25-90411 (CML) |
| 26. | Hopkins Manufacturing Corporation | 25-90412 (CML) |
| 27. | Carrand Companies, Inc. | 25-90413 (CML) |
| 28. | Horizon Global Corporation | 25-90414 (CML) |
| 29. | Horizon Global Company LLC | 25-90415 (CML) |
| 30. | Horizon Global Americas Inc. | 25-90416 (CML) |
| 31. | Horizon International Holdings LLC | 25-90417 (CML) |
| 32. | Horizon Euro Finance LLC | 25-90418 (CML) |
| 33. | Strongarm, LLC | 25-90419 (CML) |
| 34. | Premier Marketing Group, LLC | 25-90420 (CML) |
| 35. | AVM Export, Inc. | 25-90421 (CML) |
| 36. | Carter Fuel Systems, LLC | 25-90422 (CML) |
| 37. | Carter Fuel Export, Inc. | 25-90423 (CML) |
| 38. | Carter Carburetor Holdings, LLC | 25-90424 (CML) |
| 39. | Walbro Midco LLC | 25-90425 (CML) |
| 40. | UCI Acquisition Holdings (No. 4) LLC | 25-90426 (CML) |
| 41. | WEM US Co. | 25-90427 (CML) |
| 42. | Dalton Corporation, Stryker Machining Facility Co. | 25-90428 (CML) |
| 43. | Reman Management International LLC | 25-90429 (CML) |
| 44. | Walbro LLC | 25-90430 (CML) |
| 45. | UCI-Airtex Holdings, Inc. | 25-90431 (CML) |
| 46. | Carter Carburetor, LLC | 25-90432 (CML) |
| 47. | Dalton Corporation, Ashland Manufacturing Facility | 25-90433 (CML) |
| 48. | Airtex Industries, LLC | 25-90434 (CML) |
| 49. | Smart Choice, LLC | 25-90435 (CML) |
| 50. | KTRI Holdings, Inc. | 25-90436 (CML) |
| 51. | Viper Acquisition, Inc. | 25-90437 (CML) |
| 52. | Viper Acquisition I, Inc. | 25-90438 (CML) |

| No. | Debtor Name | Case Number |
|---|---|---|
| 53. | Tridonex USA LLC | 25-90439 (CML) |
| 54. | Airtex Products, LP | 25-90440 (CML) |
| 55. | Qualitor Acquisition Inc. | 25-90441 (CML) |
| 56. | UCI Pennsylvania, Inc. | 25-90442 (CML) |
| 57. | Qualitor, Inc. | 25-90443 (CML) |
| 58. | Global Reman Ventures, LLC | 25-90444 (CML) |
| 59. | Champion Laboratories, Inc. | 25-90445 (CML) |
| 60. | TAE Brakes, LLC | 25-90446 (CML) |
| 61. | Transportation Aftermarket Enterprise, LLC | 25-90447 (CML) |
| 62. | APC Parent, LLC | 25-90448 (CML) |
| 63. | Universal Auto Filter LLC | 25-90449 (CML) |
| 64. | TAE China Holdings, Inc. | 25-90450 (CML) |
| 65. | International Brake Industries, Inc. | 25-90451 (CML) |
| 66. | APC Intermediate Holdings, LLC | 25-90452 (CML) |
| 67. | Qualitor Subsidiary H, Inc. | 25-90453 (CML) |
| 68. | CWD Intermediate Holdings I, LLC | 25-90454 (CML) |
| 69. | Qualitor Subsidiary S, Inc. | 25-90455 (CML) |
| 70. | Fuel Filter Technologies, Inc. | 25-90456 (CML) |
| 71. | IBI International Holding Company, Inc. | 25-90457 (CML) |
| 72. | CWD Intermediate Holdings II, LLC | 25-90458 (CML) |
| 73. | Longman Enterprises, Inc. | 25-90459 (CML) |
| 74. | Carnaby Capital, LLC | 25-90460 (CML) |
| 75. | Pylon Manufacturing Corp. | 25-90461 (CML) |
| 76. | CWD Holding, LLC | 25-90462 (CML) |
| 77. | Qualitor Automotive, LLC | 25-90463 (CML) |
| 78. | Carnaby Inventory Holdings IV, LLC | 25-90464 (CML) |
| 79. | CWD, LLC | 25-90465 (CML) |
| 80. | Carnaby Inventory IV, LLC | 25-90466 (CML) |
| 81. | Pylon South Bend, Inc. | 25-90467 (CML) |
| 82. | Carnaby FA Holdings, LLC | 25-90468 (CML) |
| 83. | Qualis Enterprises, LLC | 25-90469 (CML) |
| 84. | KTRI Offshore Holdings, LLC | 25-90470 (CML) |
| 85. | BPI Acquisition Company, LLC | 25-90471 (CML) |
| 86. | Trico Products Corporation | 25-90472 (CML) |
| 87. | Carnaby FA, LLC | 25-90473 (CML) |
| 88. | Qualis Automotive, L.L.C. | 25-90474 (CML) |
| 89. | Global Assets GmbH | 25-90475 (CML) |
| 90. | Trico Holding Corporation | 25-90476 (CML) |
| 91. | Brake Parts Inc LLC | 25-90477 (CML) |
| 92. | Toledo Molding & Die, LLC | 25-90478 (CML) |
| 93. | UCI International Holdings Parent Inc. | 25-90479 (CML) |
| 94. | BPI EC, LLC | 25-90480 (CML) |
| 95. | Dalton Corporation, Kendallville Manufacturing Facility | 25-90481 (CML) |
| 96. | Dalton Corporation, Warsaw Manufacturing Facility | 25-90482 (CML) |
| 97. | UCI International Holdings, Inc. | 25-90483 (CML) |
| 98. | Brake Parts Inc India LLC | 25-90484 (CML) |
| 99. | UCI International, LLC | 25-90485 (CML) |
| 100. | BPI Holdings International, LLC | 25-90486 (CML) |
| 101. | United Components, LLC | 25-90487 (CML) |
| 102. | Brake Parts Inc China LLC | 25-90488 (CML) |
| 103. | Eagle Machining, LLC | 25-90489 (CML) |
| 104. | Eagle Casting Holdings, LLC | 25-90490 (CML) |
| 105. | Eagle Casting, LLC | 25-90491 (CML) |

Case 25-90399 Document 378-4 Filed in TXSB on 01/07/26 Page 16 of 16

| No. | Debtor Name | Case Number |
|---|---|---|
| 106. | Dalton Corporation | 25-90492 (CML) |
| 107. | Cardone Industries, Inc. | 25-90493 (CML) |
| 108. | SDC TX, LLC | 25-90494 (CML) |