# EXHIBIT 2

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
November 19, 2025
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**STIPULATION AND AGREED ORDER REGARDING ADEQUATE PROTECTION AMONG DEBTORS AND ONSET FINANCIAL, INC.**

This Stipulation and Order (this "**Stipulation**") is entered into by and among (i) the above-captioned debtors (collectively, the "**Debtors**") and (ii) Onset Financial, Inc., together with its successors, assigns, participants, or transferees (collectively, "**Onset**," and together with the Debtors, the "**Parties**").[2] Effective as of entry of the Final DIP Order, the Parties hereby stipulate and agree as follows:

WHEREAS, on September 24, 2025 and September 28, 2025 (as applicable, the "**Petition Date**"), the Debtors commenced chapter 11 cases in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").

WHEREAS, on September 30, 2025, the Debtors filed an emergency motion seeking entry of an interim order and a final order (the "**Final DIP Order**") authorizing the Debtors to, among

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms not defined herein have the meaning ascribed to such terms in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**") (Docket No. 22) or the final order approving the DIP Motion (as defined below) entered on November 9, 2025 (Docket No. 608).

Case 25-90399 Document 4733 Filed in TXSB on 11/13/25 Page 2 of 17

other things, obtain postpetition financing and use cash collateral (Docket No 49) (the "**DIP Motion**").

WHEREAS, on October 1, 2025, the Bankruptcy Court (a) entered that certain *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (Docket No. 217) (the "**Interim DIP Order**," and together with the Final DIP Order, the "**DIP Orders**"), and (b) approved that certain *Stipulation and Agreed Interim Order Regarding Adequate Protection Among Debtors and Onset Financial, Inc.* (Docket No. 212) (the "**Interim Stipulation**").

WHEREAS, on May 9, 2018, Trico Products Corporation ("**Trico Products**") entered into that certain *Master Lease Agreement No. OFI1045321* (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Onset Trico Master Lease**") with Onset.

WHEREAS, on June 28, 2022, Carnaby Inventory IV, LLC ("**Carnaby IV**") entered into that certain *Master Lease Agreement No. OFI1445416* (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Onset Master Lease IV**") with Onset.

WHEREAS, on October 24, 2023, Carnaby FA, LLC ("**Carnaby FA**" and, together with Carnaby IV, the "**Carnaby Debtors**") entered into that certain *Master Lease Agreement No. OFI1545465* (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Onset Master Lease FA**" and, together with the Onset Trico

Master Lease and Onset Master Lease IV and related transaction documents the "**Onset Master Lease Documents**") with Onset.

WHEREAS, the obligations under the Onset Master Lease Documents are guaranteed by certain of the Debtors, including, Viceroy Private Capital, LLC ("**Viceroy**"); Carnaby Capital Holdings, LLC ("**Carnaby Capital Holdings**"); Carnaby Capital, LLC; Carnaby Inventory Holdings IV, LLC; Carnaby FA Holdings, LLC; First Brands Group Holdings, LLC; First Brands Group Intermediate, LLC; First Brands Group, LLC; and Eagle Casting Holdings, LLC (collectively, the "**Onset Guarantor Debtors**", and such guarantee, the "**Onset Guarantee**").

WHEREAS, Onset asserts that it owns or has valid security interests in inventory, furniture, fixtures, equipment, and other assets that is used by the Debtors (such inventory and related proceeds, the "**Onset Inventory Assets**," such furniture, fixtures, equipment and other assets, and related proceeds, the "**Onset Equipment Assets**," and, collectively, the "**Onset Assets**").

WHEREAS, as of the Petition Date, including all outstanding and accrued interest, fees, and forbearance fees, Onset asserts that in excess of $2.2 billion of obligations under the Onset Master Lease Documents and related forbearances were outstanding (the "**Onset Claims**").

WHEREAS, the Interim Stipulation terminated effective upon entry of the Final DIP Order.

WHEREAS, Onset has demanded, and is entitled to, adequate protection from and after the Petition Date.

WHEREAS, the Debtors and other stakeholders, including the DIP Secured Parties and the Prepetition Secured Parties, are reviewing the transactions involving the Onset Assets, and the DIP Secured Parties and the Prepetition Secured Parties may assert, among other things, claims related

to the validity or priority of Onset's ownership or security interests in the Onset Assets (the "**Onset Collateral Dispute**").

**NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, AND ORDERED THAT:**

1. ***Debtors' Continued Use***. The Debtors are authorized and permitted to sell, transfer, or use, as applicable, the Onset Assets (including, without limitation, cash collateral) in the ordinary course of business, subject in all respects to the Bankruptcy Code, the Bankruptcy Rules, and the terms of this Stipulation for the period from entry of this Stipulation until its termination (the "**Interim Period**").

2. ***No Other Indebtedness or Liens***. Subject to paragraphs 3 and 7, (a) no direct or indirect subsidiary of Viceroy (including the Carnaby Debtors and any Onset Guarantor Debtors, but excluding the other SPV Borrowers (as defined below) (collectively, such other SPV Borrowers, the "**Non-Carnaby SPV Debtors**"))[3] shall incur, without Onset's prior written consent (email being sufficient) (i) any indebtedness or claims on account of any financing (including any indebtedness under the DIP Orders, the DIP Credit Agreement and related documents (including, for the avoidance of doubt, the Carve-Out provided thereunder), any other order authorizing the Debtors to use cash collateral and/or obtain DIP financing or grant any party (other than Onset) adequate protection, or otherwise) (the "**Prohibited Indebtedness**"), and (ii) any liens (whether senior, pari passu, or junior) on any of their assets to secure any Prohibited Indebtedness, (b) none of Trico Products (other than Carnaby Capital Holdings and its subsidiaries (including the Carnaby

[3] The Non-Carnaby SPV Debtors shall consist of Carnaby Inventory Holdings II, LLC, Carnaby Inventory II, LLC, Carnaby Inventory Holdings III, LLC, Carnaby Inventory III, LLC, Starlight Inventory Holdings I, LLC, Starlight Inventory I, LLC, Patterson Inventory Holdings, LLC, Patterson Inventory, LLC, Broad Street Financial Holdings I, LLC, Broad Street Financial, LLC, Global Assets GmbH, and Global Assets LLC.

Debtors)), shall incur any liens (whether senior, pari passu, or junior) on any of the Onset Assets to secure any Prohibited Indebtedness, and (c) to the extent the Onset Assets are property of Onset or subject to a lien in favor of the Carnaby Debtors or Onset that, as of the Petition Date, was properly perfected, valid, and not subject to avoidance under bankruptcy or applicable non-bankruptcy law and senior to the Prepetition Secured Indebtedness as of the Petition Date, as determined by a court of competent jurisdiction in a final non-appealable order, no liens to secure any Prohibited Indebtedness will cover those assets or prime Onset's senior liens; *provided* that nothing in this paragraph 2 shall prevent the SPV Borrowers[4] from granting adequate protection liens on their respective assets or claims against their respective estates to the lenders under their respective credit facilities against the SPV Borrowers; *provided* further that if the Onset Collateral Dispute is resolved with respect to any particular Onset Assets such that Onset does not have a senior secured or ownership interest therein, the restrictions set forth in this paragraph shall no longer apply to those particular Onset Assets. For the avoidance of doubt, to the extent the liens and ownership interests asserted by Onset in the Onset Assets are invalidated following a successful challenge as finally judicially determined by a court of competent jurisdiction, such Onset Assets shall be Collateral pursuant to the DIP Orders to the same extent. Notwithstanding the foregoing, in the event that any one or more of the Non-Carnaby SPV Debtors seeks or receives a proposal for debtor in possession financing that it intends to pursue, Onset will be provided with a reasonable opportunity (but in any event not less than ten (10) business days) to review the final terms of such financing and propose alternative financing.

---

[4] "**SPV Borrowers**" means Carnaby Inventory Holdings II, LLC; Carnaby Inventory II, LLC; Carnaby Inventory Holdings III, LLC; Carnaby Inventory III, LLC; Carnaby Inventory Holdings IV, LLC; Carnaby Inventory IV, LLC; Carnaby FA Holdings, LLC; Carnaby FA, LLC; Patterson Inventory Holdings, LLC; Patterson Inventory, LLC; Starlight Inventory Holdings I, LLC; Starlight Inventory I, LLC; Broad Street Financial Holdings, LLC; Broad Street Financial, LLC; Global Assets LLC; and Global Assets GmbH.

3. ***Viceroy***. Viceroy shall fully guarantee the DIP Loans and Viceroy's assets shall constitute DIP Collateral (as defined in the DIP Orders) on the terms set forth in the DIP Orders; *provided* that:

A. With respect to such assets, except the Specified Viceroy Interests[5] and the Recovery Action Proceeds that are not encumbered by first priority Prepetition Liens as of the Petition Date (the "**Unencumbered Recovery Action Proceeds**"), such assets and the proceeds thereof will be applied (a) first, to the New Money DIP Loans (including all DIP Fees and Expenses related thereto), (b) second, to all Roll-up Obligations; (c) third, to the Onset Guarantee and (d) fourth, in accordance with applicable law; and

B. Solely with respect to the Specified Viceroy Interests and the Unencumbered Recovery Action Proceeds, such assets and the proceeds thereof will be applied (a) first, to the New Money DIP Loans (including all DIP Fees and Expenses related thereto), (b) second, to Roll-Up Obligations in an amount equal to the principal amount of New Money DIP Loans; (c) third, to the Onset Guarantee; (d) fourth, to any additional DIP Obligations; and (e) fifth, in accordance with applicable law; *provided* that the DIP Secured Parties will use commercially reasonable efforts to first seek recovery from DIP Collateral other than the Specified Viceroy Interests and Unencumbered Recovery Action Proceeds.

4. ***Sale and Replenishment of Inventory***.

A. From the entry by the Bankruptcy Court of this Stipulation until termination by its terms, none of the Debtors shall sell or transfer any inventory, or otherwise use any other assets (including, without limitation, cash collateral) that are Onset Inventory Assets, except as provided

---

[5] "**Specified Viceroy Interests**" means the equity interests of Viceroy in (i) Securus Insurance, LLC (ii) VCAA Holdings LLC or its subsidiaries, or (iii) any other direct subsidiary of Viceroy that is not a Debtor as of the date of this Stipulation (and each of their respective subsidiaries).

in this Stipulation. The Carnaby Debtors may sell Onset Inventory Assets in the ordinary course of business, subject in all respects to the Bankruptcy Code, the Bankruptcy Rules, and the terms of this Stipulation, to any FBG Debtor for 102% of the cost value of the Onset Inventory Assets. Such inventory shall be purchased through the transfer by the FBG Debtors to the Carnaby Debtor of (i) cash in immediately available funds deposited into the Carnaby Segregated Account (as defined below) to be held as cash collateral subject to the liens of Onset, and/or (ii) inventory acquired from and after the Petition Date of similar type that would be governed by the Onset Master Lease Documents.

B. The Carnaby Debtors shall maintain the Onset Inventory Assets such that, on any True-Up Date (as defined below), (x) the sum of (A) the gross value at cost of the Onset Inventory Assets, *plus* (B) all cash deposited in the Carnaby Segregated Account (as defined below) (collectively, the "**Carnaby Collateral Value**") equals or exceeds $651,651,000 (the "**Carnaby Collateral Maintenance Threshold**"). To the extent it is agreed by the Parties or determined by a court of competent jurisdiction in a final non-appealable order that Onset does not have an ownership or senior secured interest in certain of the Onset Inventory Assets, the Carnaby Collateral Maintenance Threshold is subject to change.

C. At the end of each calendar week prior to the termination of this Stipulation (each, a "**True-Up Date**"), the Carnaby Debtors shall test the Carnaby Collateral Value against the Carnaby Collateral Maintenance Threshold. If on any True-Up Date the Carnaby Collateral Value is less than the Carnaby Collateral Maintenance Threshold (a "**Carnaby Deficiency**"), the FBG Debtors shall be permitted to cure within two business days by any combination of (i) transferring cash in immediately available funds in the amount of any such Carnaby Deficiency into an unencumbered segregated account of Carnaby IV (the "**Carnaby IV Segregated Account**") or,

Case 25-90399 Document 4083 Filed in TXSB on 11/13/25 Page 8 of 17

as applicable, to be held as cash collateral subject to the asserted liens of Onset (the cash in the Segregated Accounts, the "**Segregated Cash**"), or (ii) transferring to Carnaby IV inventory acquired from and after the Petition Date (the "**Curative Inventory**") with a gross inventory valuation at cost equal to or exceeding such Carnaby Deficiency (the actions described in clauses (i) and/or (ii), the "**Curative Actions**"). If the FBG Debtors exercise Curative Actions within the two-business day cure period, the FBG Debtors shall be permitted to continue purchasing Onset Inventory Assets from Carnaby IV without disruption. In the event the FBG Debtors fail to exercise Curative Actions prior to expiration of the two-business day cure period, the FBG Debtors shall not be permitted to continue purchasing Onset Inventory Assets. For the avoidance of doubt, subject to the Onset Collateral Dispute, any Curative Inventory or Segregated Cash that is subject to a valid lien in favor of Onset shall be free and clear of, and not subject to, any other liens (including any liens securing any indebtedness under the DIP Orders, the DIP Credit Agreement and related documents, any other order authorizing the Debtors to use cash collateral and/or obtain DIP financing or granting any party adequate protection).

D. On any True-Up Date, so long as no Carnaby Deficiency exists, as applicable, the FBG Debtors may sweep (a) Segregated Cash from the Carnaby Segregated Account to the extent that it does not result in a Carnaby Deficiency ("**Excess Cash**"). Any sweep of Excess Cash shall require (a) that such sweep will not result in a Carnaby Deficiency and (b) three (3) business days prior notice (email being sufficient) to Morrison & Foerster LLP ("**Morrison**") and Perella Weinberg Partners LP ("**PWP**") regarding the effect of such sweep on the Collateral Value.

E. To the extent Onset Inventory Assets are purchased and transferred to a FBG Debtor pursuant to the procedures set forth herein, all of the applicable Carnaby Debtor's and Onset's right, title, and interest in, to, and under such Onset Inventory Assets shall be transferred

to the applicable FBG Debtor free and clear of any and all liens, claims, or encumbrances. Transfers of Onset Inventory Assets pursuant to this Stipulation to a FBG Debtor shall constitute a legal, valid, binding, and effective transfer of such Onset Inventory Assets, and no such transfer shall be subject to reversal or avoidance under any provision of the Bankruptcy Code or otherwise. Excess Cash received by the FBG Debtors shall be deemed to be DIP Collateral for all purposes of the DIP Orders when received by the FBG Debtors.

F. To the extent Curative Inventory is transferred to a Carnaby Debtor pursuant to the procedures set forth herein, all of the applicable Debtors' right, title, and interest in, to, and under such Curative Inventory shall be transferred to the applicable Carnaby Debtor free and clear of any and all liens, claims, or encumbrances, subject in all respects to the reservations of rights set forth herein. Transfers of Curative Inventory pursuant to the Curative Actions shall constitute a legal, valid, binding, and effective transfer of such Curative Inventory, and no such transfer shall be subject to reversal or avoidance under any provision of the Bankruptcy Code or otherwise.

5. ***Onset Equipment Assets***. For the use of the Onset Equipment Assets:

A. Subject to paragraph 7, (i) Onset shall have an allowed administrative expense claim against the FBG Debtors in the amount of $7,255,264.43 for the month of October 2025 on account of Onset Equipment Assets subject to the Onset Trico Master Lease (the "**Onset Direct Equipment Assets**"), (ii) within two business days after entry of this Stipulation, the FBG Debtors shall pay to Onset an amount equal to $7,255,264.43, representing an adequate protection payment for the month of November 2025 on account of Onset Direct Equipment Assets, (iii) on December 1, 2025, the FBG Debtors shall pay to Onset the amount of $7,255,264.43, representing an adequate protection payment for the month of December 2025 on account of the Onset Direct

Equipment Assets, and (iv) thereafter, the FBG Debtors shall pay to Onset on the first day of each month an amount equal to $7,255,264.43 per month for use of the Onset Direct Equipment Assets.

B. The applicable Carnaby Debtor shall have allowed administrative expense claims against each FBG Debtor that benefits directly or indirectly from such use, in the amount of $4 million per month for the use of other Onset Equipment Assets (other than the Onset Direct Equipment Assets) (the "**Onset Other Equipment Assets**") (prorated on a daily basis for any period less than one month); *provided*, that the Debtors, Secured Parties, and Prepetition Secured Parties reserve all rights to diligence the asserted claim amounts and raise any disputes. Subject to paragraph 7, on December 1, 2025, the FBG Debtors will deposit an amount equal to $4 million, representing adequate protection payments on account of the Onset Other Equipment Assets for the month of December 2025 and, on the first day of each month thereafter, an amount equal to the $4 million, in each case into a segregated account (separate from the Segregated Account for proceeds related to Onset Inventory Assets) in the name of Carnaby FA (the "**Carnaby FA Segregated Account**") to be held, subject to the asserted liens or claims of Onset, until any portion of such escrowed funds become undisputed, in which case they will be distributed to Onset.

C. The FBG Debtors and Carnaby Debtors will not, and will cause their direct and indirect subsidiaries not to, (a) remove any markings, tags or other indications that any equipment in the FBG Debtors' possession constitutes Onset Equipment Assets or (b) move any Onset Equipment Assets to another physical location or sell any Onset Equipment Assets without the consent of Onset.

6. ***Adequate Protection Liens and Superpriority Claims***. Subject to the reservations set forth in paragraph 7 hereof, the Bankruptcy Court hereby grants Onset, as adequate protection of the interests of Onset in the Onset Assets against any diminution in value of such interests from

and after the Petition Date, pursuant to, without limitation, sections 361, 362, and 363(e) of the Bankruptcy Code (a "**Diminution in Value**"), (a) first priority, non-avoidable, automatically perfected postpetition security interests in and liens on all Onset Assets, Segregated Cash, and Curative Inventory and the proceeds of each of the foregoing (including, without limitation, cash collateral) (other than Excess Cash and Onset Assets transferred to the FBG Debtors pursuant to paragraph 4 and the proceeds thereof), (b) first priority, automatically perfected postpetition security interests in and liens on any all of the presently owned or hereafter acquired property and assets of the Carnaby Debtors, and (c) the other rights and protections afforded to Onset and the Carnaby Debtors pursuant to this Stipulation. To the extent of any Diminution in Value of the interests of Onset in the Onset Assets from and after the Petition Date, the Bankruptcy Court hereby grants an allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "**507(b) Claim**"), which 507(b) Claim shall be an allowed claim against the Carnaby Debtors with priority over any and all administrative expenses and all other claims against such Carnaby Debtors now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims against the Carnaby Debtors arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, subject to paragraph 8.

7. ***Reservation of Rights***. The validity, amount, perfection, and priority of Onset's asserted security, ownership, and/or any other interest in the Onset Assets (including amounts contained in the Segregated Accounts and the Curative Inventory), its secured and unsecured claims, and the outcome of the Onset Collateral Dispute, is not agreed by the Parties and will remain subject to review and challenge by the Debtors, the DIP Secured Parties, the Prepetition

Secured Parties, the official committee of unsecured creditors, and other parties in interest. The rights of the Parties and any other party in interest to challenge Onset's asserted liens, claims, interests, and priority are expressly preserved. The Debtors and other Parties expressly retain all rights arising under the Bankruptcy Code. Likewise, Onset expressly retains all rights. Nothing in this Stipulation shall prejudice or enhance the rights of any Party with respect to the Onset Collateral Dispute as they existed on the Petition Date, including with respect to any assets transferred to the Carnaby Debtors in accordance with paragraph 4. Except as otherwise expressly provided in this Stipulation or the Final DIP Order, all parties' rights are reserved with respect to (i) the encumbered or unencumbered status of Recovery Actions and Recovery Action Proceeds and (ii) the allocation and application of encumbered or unencumbered Collateral (including, without limitation, the Recovery Actions, Recovery Action Proceeds and the Specified Viceroy Interests). Notwithstanding the foregoing, nothing in this paragraph shall prejudice the rights of Onset to the adequate protection provided pursuant to this Stipulation to the extent that the Onset Collateral Dispute is resolved in Onset's favor.

8. ***Rights to Surcharge.*** The Debtors, DIP Secured Parties, Prepetition Secured Parties and other parties in interest reserve all rights to bring claims against Onset for necessary costs and expenses of preserving or disposing of property securing an allowed secured claim pursuant to section 506(c) of the Bankruptcy Code or the section 552 "equities of the case" exception, and Onset's rights in respect of the foregoing are likewise fully reserved.

9. ***Postpetition Interest; Fees and Expenses***. To the extent its claims are over-secured, Onset's right to receive postpetition interest on Onset's prepetition claims, together with reasonable fees, costs, and charges as provided for under section 506(b) of the Bankruptcy Code, are reserved.

10. ***Site Access; Books and Records***. The Debtors shall coordinate to provide reasonable access to Onset (and its representatives) to the warehouses or other facilities containing the Onset Assets, and books and records of the Carnaby Debtors (and their subsidiaries), and Trico Products, and any non-debtor affiliates of the FBG Debtors or Carnaby Debtors that Onset reasonably believes may hold Onset Assets, in each case, to conduct updated appraisals, field exams, and inventory taking of the Onset Assets and to identify and trace the creation, acquisition and transfer of, and any collections with respect to, the Onset Assets.

11. ***Reporting***. To the best of their ability, the Debtors shall provide weekly reporting of inventory balances by SKU for the relevant location(s) and the transfer of any Onset Assets. To the best of their abilities, the Debtors shall provide to Onset within seven (7) business days of each True-Up Date, a certification showing the FBG Debtors' calculation of the Carnaby Collateral Value, the Carnaby Collateral Maintenance Threshold, and any Carnaby Deficiency, together with the back-up underlying such calculations. Onset shall be provided all written reports set forth in the applicable DIP Order that are delivered to the ABL Lenders, First Lien Lenders, and/or DIP Lenders on a confidential basis (subject to the Debtors' rights to redact or not share sensitive business information).

12. ***Termination***. Onset may, at its option, by notice to counsel for the Debtors (email being sufficient) terminate this Stipulation if: (i) the Debtors have materially breached any provision under this Stipulation and such breach is not cured within five business days; or (ii) the Bankruptcy Court enters an order converting any of the chapter 11 cases of the Carnaby Debtors to cases under chapter 7 of the Bankruptcy Code or appointing a chapter 11 trustee or examiner, in each case with expanded powers to operate or manage the financial affairs, business, and reorganization of any of the Debtors. This Stipulation shall automatically terminate on the 45th

day after entry of this Stipulation (unless extended by each of the Parties). The Debtors may terminate this Stipulation on five days' notice if the Debtors determine in good faith that their continued performance under the Stipulation would be inconsistent with their fiduciary duties under applicable law. Upon termination of this Stipulation, (a) the Debtors' right to sell, transfer, or use the Onset Assets shall immediately cease, and the Debtors shall thereafter be prohibited from selling, transferring, or using the Onset Assets, (b) all amounts contained in the Segregated Accounts shall remain in such accounts pending a written stipulation of the parties or further order of the Bankruptcy Court, and (c) the prohibitions, guarantees, and stipulations set forth in Sections 2 and 3 of this Stipulation shall survive the termination of this Stipulation and shall remain in full force and effect in accordance with their terms. The Debtors shall notify Onset as soon as practicable after becoming aware of any breach of this Stipulation, and in any event no later than three business days thereafter.

13. ***Reliance on Information Provided by Debtors***. The Debtors acknowledge and agree that, as a material inducement to entry into this Stipulation, Onset and the DIP Secured Parties have relied upon (i) the testimony of the Debtors' corporate representatives during their depositions on November 3, 2025, with respect to the assets directly owned by Viceroy (ii) the corporate organizational chart attached to the Debtors' chapter 11 petitions, as supplemented by an email from Debtors' counsel dated November 10, 2025 identifying certain other non-Debtor entities that may be owned by Viceroy that were not previously identified on the corporate organizational chart.

14. Promptly following entry of this Stipulation, Onset shall withdraw the *Preliminary Objection and Reservation of Rights* (Docket No. 135) and the *Supplemental Objection to Debtors' DIP Financing Motion* (Docket No. 471) (including the declaration of Mr. Mendelsohn referenced

Case 25-90399 Document 783 Filed in TXSB on 11/19/25 Page 15 of 17

therein) and discontinue any discovery related to the DIP Motion. Mr. Mendelsohn shall not be called as a witness in connection with the DIP Motion.

15. Onset hereby waives any and all alleged defaults of the Debtors arising from or in connection with the *Stipulation and Agreed Interim Order Regarding Adequate Protection Among Debtors and Onset Financial, Inc.* (Docket No. 214).

16. This Stipulation shall not be modified, altered, amended, or vacated without the written consent of each of the Parties or by further order of the Bankruptcy Court.

17. The Debtors are authorized to take all actions necessary to effectuate this Stipulation.

18. To the extent any provision of this Stipulation is inconsistent with the Interim DIP Order, the Final DIP Order, or any order authorizing any financing for the Debtors, or granting "first day" relief in these chapter 11 cases, this Stipulation shall govern and control.

19. Notwithstanding anything in the Final DIP Order, the term "**SPV Debtor**" shall include Eagle Casting Holdings, LLC for all purposes thereunder. For the avoidance of doubt, the DIP Orders and DIP Credit Agreement shall not create any DIP Superpriority Claims or DIP Liens with respect to Eagle Casting Holdings, LLC or its assets.

20. The Bankruptcy Court retains sole and exclusive jurisdiction over all matters related to this Stipulation.

Signed: November 19, 2025

Christopher Lopez
United States Bankruptcy Judge

**STIPULATED AND AGREED TO BY:**

Dated: November 14, 2025

*/s/ Clifford W. Carlson*

WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: gabriel.morgan@weil.com
clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: matt.barr@weil.com
sunny.singh@weil.com
andriana.georgallas@weil.com
kevin.bostel@weil.com
jason.george@weil.com

*Proposed Attorneys for Debtors and Debtors in Possession*

Dated: November 14, 2025

*/s/ Deborah M. Perry*

Deborah M. Perry (24002755)
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
E-mail: dperry@munsch.com

-and-

MORRISON & FOERSTER LLP
James Newton (admitted *pro hac vice*)
Ben Butterfield (admitted *pro hac vice*)
Bryan Kotliar (admitted *pro hac vice*)
250 West 55th Street
New York, NY 10019
Email: jnewton@mofo.com
Email: bbutterfield@mofo.com
Email: bkotliar@mofo.com

-and-

MORRISON & FOERSTER LLP
Anthony S. Fiotto (admitted *pro hac vice*)
Julia Koch (admitted *pro hac vice*)
John Hancock Tower
200 Clarendon Street, Floor 21
Boston, MA 02116
Email: afiotto@mofo.com
Email: jkoch@mofo.com

-and-

MORRISON & FOERSTER LLP
Brian R. Michael (admitted *pro hac vice*)
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Email: bmichael@mofo.com

*Attorneys for Onset Financial, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on November 14, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Clifford W. Carlson
Clifford W. Carlson