# EXHIBIT 10

Case 25-90399 Document 3981 Filed in TXSB on 01/15/26 Page 1 of 13

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>FIRST BRANDS GROUP, LLC *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 25-90399 (CML)<br><br>(Jointly Administered) |

**ONSET FINANCIAL, INC.'S OBJECTION TO PROPOSED STIPULATION AND AGREED ORDER (I) MODIFYING THE AUTOMATIC STAY TO PERMIT THE DIP AGENT TO SWEEP AND APPLY CASH COLLATERAL OF THE FBG CONVERTING DEBTORS AND (II) GRANTING RELATED RELIEF**

**[Related Docket No. 3952]**

[1] A complete list of the Debtors in these chapter 7 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 7 cases is Eva Engelhart, Chapter 7 Trustee c/o Porter Hedges LLP, Joshua W. Wolfshohl, 1000 Main St., 36th Floor, Houston, Texas 77002.

Onset Financial, Inc. ("Onset"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the proposed *Stipulation and Agreed Order (I) Modifying the Automatic Stay to Permit the DIP Agent to Sweep and Apply Cash Collateral of the FBG Converting Debtors and (II) Granting Related Relief* [Docket No. 3952] (the "Proposed Stipulation") between the Ad Hoc Group[2], Eva S. Engelhart, as chapter 7 trustee of the FBG Debtors (the "FBG Trustee"), and the DIP Agent (collectively, the "Stipulating Parties"). In support of this Objection, Onset respectfully states as follows:

## PRELIMINARY STATEMENT[3]

1. The Proposed Stipulation asks the Court to lift the automatic stay to permit the DIP Agent to sweep remaining cash held by the FBG Estates. The Stipulating Parties seek this relief on an emergency basis without identifying which funds in which accounts will be swept, preventing parties in interest to evaluate whether they include non-FBG Estate assets. And they ask the Court to enter the Proposed Stipulation on shortened notice, just one day before an election may be held with respect to the interim FBG Trustee. *Notice of Reset of Meeting of Creditors* (Sept. 29, 2026).

2. Neither the FBG Trustee nor the Ad Hoc Group have provided any evidence supporting the FBG Trustee's business judgment to enter into the Proposed Stipulation. A primary reason offered by the interim FBG Trustee is a recital that she signed "in light of" a broader, not-yet-finalized but apparently forthcoming settlement and financing arrangement with the Ad Hoc Group that is not before the Court. Nothing of this settlement has been disclosed, and the Court

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Proposed Stipulation or the Final DIP Order, as applicable.

[3] Capitalized terms used but not otherwise defined in this Preliminary Statement have the meanings ascribed to such terms below.

Case 25-90399 Document 3891 Filed in TXSB on 03/13/26 Page 3 of 13

has approved no such financing arrangement—and, in fact, already disapproved of another proposed financing. In essence, the interim FBG Trustee proposes to turn over nearly all of the FBG Estates' cash to the DIP Agent, rendering her (or her successor permanent trustee) entirely reliant on the Ad Hoc Group's possible re-lending of these proceeds back to the estates.

3. Moreover, the interim FBG Trustee has not disclosed what investigation, if any, she has conducted in the seven weeks since her appointment in these highly complex cases. She has said nothing of the apparently forthcoming settlement or financing terms that she apparently considered in agreeing to this relief. She has not said whether she has considered any alternatives or the impact that giving up this cash would have on her future negotiations with the Ad Hoc Group. And she has not indicated why this Proposed Stipulation must be agreed on the eve of the election of a permanent trustee.

4. Accordingly, the Court decline to approve the Proposed Stipulation, or at least defer ruling on it until (1) it is clarified which accounts are being swept and which are not, (2) the broader settlement with the Ad Hoc Group and proposed financing terms are disclosed, so the Court can judge the interim FBG Trustee's business judgment as a whole, and (3) a permanent trustee is appointed.

**<u>RELEVANT BACKGROUND</u>**

5. Onset is a creditor of the FBG Debtors and certain SPV Debtors on account of pre- and post-petition transactions and orders of this Court. *See Onset Financial, Inc.'s Answer and Counterclaim, Cross-Claim, and Third-Party Complaint, First Brands Group, LLC, et al. v. Onset Financial, Inc., et al.*, No. 4:26-ap-03005 (CML) (Bankr. S.D. Tex. Feb. 19, 2026) [Adv. Pro. Docket No. 16].

6. In November 2025, the Court entered the Onset AP Order[4], directing the Debtors to establish several segregated accounts to hold cash subject to Onset's asserted interests. *See* Onset AP Order ¶¶ 4(A), 4(C), 5(B). The Wind Down Order[5] directed the creation of the SPV-DIP Wind Down Accounts and the SPV-ABL Wind Down Accounts (each as defined in the Wind Down Order), two additional segregated accounts (together with the accounts established under the Onset AP Order, the "Onset Accounts") to hold sale proceeds subject to competing interests, including Onset's. Wind Down Order ¶¶ 37–38. The proceeds in the Onset Accounts may not be distributed absent agreement among the parties or further order of the Court. *Id.*; *see also* Onset AP Order ¶¶ 4(A), 4(C), 5(B).

7. Following the entry of the Wind Down Order, the FBG Debtors pursued confirmation of a chapter 11 plan (the "FBG Plan"). The FBG Plan purported to, among other things, transfer avoidance actions and other property (including property of the SPV Debtors) to a litigation trust for the benefit of the FBG Debtors' creditors—primarily, the DIP Secured Parties, who do not have a lien on such property. *See* Final DIP Order ¶ 8(a). On August 24, 2026, the Court denied confirmation of the FBG Plan. *See* Aug. 24, 2026 Hr'g Tr. [Docket No. 3727] (the "Oral Ruling"). The Oral Ruling identified the SPV Debtors as "separate Debtors in these jointly administered cases" and emphasized that "[t]he FBG and SPV distinction is an important one." *Id.* at 9:16–24. The Court found that the FBG Plan would have "affect[ed] SPV related assets without an express agreement with the SPV Debtors," (*id.* at 27:23–28:1) and rejected this result, finding

---

[4] "Onset AP Order" means the *Stipulation and Agreed Order Regarding Adequate Protection Among Debtors and Onset Financial, Inc.* [Docket No. 732].

[5] "Wind Down Order" means the *Order Pursuant to Section 363 of the Bankruptcy Code (I) Approving and Authorizing the Debtors to Enter Into and Perform Under the Consulting Agreement; (II) Authorizing the Sale of Wind Down Assets Free and Clear of All Liens, Claims, and Encumbrances; and (III) Granting Related Relief* [Docket No. 2454].

that "the FBG Debtors can't sell what they don't own, and what is the SPV Debtors' property of the estate." *Id.* at 32:23–24. The Court entered the Conversion Order[6] on September 1, 2026.

8. Also on September 1, 2026, the U.S. Trustee appointed Eva Engelhart as interim FBG Trustee and Ronald J. Sommers as interim chapter 7 trustee for the SPV Debtors. *See, e.g., Notice of Chapter 7 Bankruptcy Case* [Docket No. 3753]; *Notice of Chapter 7 Bankruptcy Case*, No. 25-90385 (CML) (Bankr. S.D. Tex. Sept. 2, 2026) [Docket No. 5]. Catherine Curtis (the "Carnaby Trustee") was subsequently appointed as interim chapter 7 trustee for Eagle Casting Holdings, LLC, Carnaby Inventory Holdings IV, LLC, Carnaby Inventory IV, LLC, Carnaby FA Holdings, LLC, Carnaby FA, LLC, and Carnaby Capital, LLC. *See, e.g., Notice of Chapter 7 Bankruptcy Case*, No. 25-90464 (CML) (Bankr. S.D. Tex. Sept. 17, 2026) [Docket No. 22]. The Section 341 meeting of creditors for the FBG Debtors (the "Section 341 Meeting") is scheduled for October 27, 2026. *Notice of Reset of Meeting of Creditors* (Sept. 29, 2026).

9. On October 19, 2026, counsel to the Ad Hoc Group filed the Proposed Stipulation with a request that the Court enter it five business days later, on October 26, 2026—one day before the Section 341 Meeting. No motion, declaration, or other evidence was filed with the Proposed Stipulation and no justification for exigent circumstances warranting emergency consideration have been identified.

## OBJECTION

### I. The Proposed Cash Sweep Risks Affecting Property That Is Not Cash Collateral

10. The DIP Secured Parties bear the burden of establishing that the cash they seek to sweep is DIP Collateral, but the property has not been identified with requisite specificity to meet

---

6 "Conversion Order" means the *Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* [Docket No. 3748].

that burden. *See In re Box*, 324 B.R. 290, 292–96 (Bankr. S.D. Tex. 2005) (denying stay relief requested for lack of adequate protection where creditor failed to establish valid security interest in specific property at issue); *In re Playa Dev. Corp.*, 68 B.R. 549, 553 (Bankr. W.D. Tex. 1986) (movant seeking relief from the automatic stay bears the burden of establishing the validity of its security interest in the collateral at issue).

11. The Proposed Stipulation fails to identify the accounts to be swept, state their balances or their source of funding, or identify which Debtor owns each account. Instead, the DIP Agent will sweep "what remains of that cash"—which previously counted towards the Debtors' minimum liquidity covenant under the Pre-Conversion DIP Credit Agreement—and which "is held in certain of the FBG Debtors' deposit and concentration accounts." Proposed Stipulation Recitals (definition of "Remaining DIP Collateral"). Cash that may not be swept is called "Excluded Property." But that definition is vague, and Onset cannot determine whether any of the Onset Accounts are treated as "Excluded Property." Proposed Stipulation ¶ 8. Any stakeholder with an unresolved dispute over assets of the FBG Estates will face the same issue.[7]

12. The Proposed Stipulation also does not adequately address future litigation proceeds. At plan confirmation, the Court rejected the FBG Plan transaction that sought to allocate all estates' future litigation proceeds (including the SPV Debtors') to the DIP Secured Parties and the Court should do so once more as such proceeds may very well include those belonging to other Debtors' estates. *See* Oral Ruling at 27:23—28:1, 32:23—24. Similarly here, the automatic stay should remain in place with respect to future litigation proceeds until the allocation thereof has been resolved by a final, non-appealable order of the Court.

[7] *See, e.g.*, *Evolution and Ronald J. Sommers' (I) Objection to the Proposed Stipulation and Order to Permit the DIP Agent to Sweep and Apply Cash Collateral of the FBG Converting Debtors; and (II) Reservation of Rights* ¶¶ 3–6 [Docket No. 3988] (the "Evolution Objection").

## II. The Record Does Not Demonstrate that the FBG Trustee Has Properly Exercised Her Business Judgment

13. The Proposed Stipulation characterizes the cash sweep as just one component of a larger settlement representing an exercise of the FBG Trustee's business judgment. Proposed Stipulation, Recitals (providing that the FBG Trustee consents to the cash sweep "in light of," among other things, "the Parties' broader forthcoming settlement, including chapter 7 financing to be provided by certain members of the Ad Hoc Group").

14. When the FBG Debtors last presented a settlement with the DIP Secured Parties, the Court evaluated it as a whole and rejected it on the basis that it would have impermissibly transferred SPV Debtors' estate property to a litigation trust for the benefit of the DIP Secured Parties, to the detriment of other stakeholders, including the SPV Debtors and their creditors. *See* Oral Ruling at 8:21–25, 29:19–30:12.

15. Onset is concerned that the forthcoming proposed settlement will contain the same (or new) infirmities that could be weaponized against the SPV Debtors. While next to nothing is currently known, what is before the Court is not comforting: the FBG Estates will be stripped of cash, and therefore leverage, in financing negotiations with the Ad Hoc Group or any other party. The FBG Estates and parties in interest will be bound by stipulations validating the DIP Obligations, including $3.3 billion of Roll-Up Obligations based on prepetition transactions that the chapter 7 trustees have had less than two months to investigate. Proposed Stipulation ¶ 2. Other parties in interest that would also be bound by these unnecessary stipulations have raised similar concerns. *See, e.g.*, Evolution Objection ¶¶ 7–8 (arguing that paragraph 2 of the Proposed Stipulation would operate as an impermissible non-consensual third-party release of the DIP Agent, the Ad Hoc Group, and the DIP Secured Parties). Onset questions exactly what benefits the interim FBG Trustee sees in this arrangement.

16. A chapter 7 trustee owes fiduciary duties to a debtor's estate and all of its creditors, not to any single creditor group. *See In re Troy Dodson Constr. Co.*, 993 F.2d 1211, 1216 (5th Cir. 1993). If the interim FBG Trustee believes that this relief is in the best interests of all creditors, then she should explain the basis for her business judgment, including what the FBG Estates are receiving in return, her consideration of any alternatives, and the impact that the Proposed Stipulation would have on her (or her successor's) leverage in future negotiations with the Ad Hoc Group. She has not done so.

## III. The Proposed Stipulation is Procedurally Infirm

### A. The Final DIP Order Requires a Motion and Hearing to Authorize a Cash Sweep

17. The Proposed Stipulation invokes paragraph 12(f) of the Final DIP Order to justify emergency relief, but the Proposed Stipulation does not comply with it. That provision requires that "the DIP Secured Parties shall . . . file a motion with the Court seeking emergency relief" for "a further order of the Court modifying the automatic stay" to take certain actions, including foreclosing on the DIP Collateral. Final DIP Order ¶ 12(f).

18. The Proposed Stipulation is no substitute for a motion, adequate notice, and the evidentiary showing of cause required to lift the automatic stay. A trustee's agreement does not relieve the movant of its burden as to parties who have not agreed, and the interim FBG Trustee should be required to demonstrate her business judgment in agreeing to the Proposed Stipulation. *See In re Roqumore*, 393 B.R. 474, 479–80, 484 (Bankr. S.D. Tex. 2008) (denying approval of the trustee's unopposed settlement for inadequate evidentiary support; the court may not "simply accept the trustee's word that the settlement is reasonable, nor may he merely 'rubber-stamp' the trustee's proposal").

### B. The Court Should Not Approve the Proposed Stipulation on an Emergency Basis

19. The urgency with which this relief is sought is particularly concerning given the FBG Trustee's interim status and that it appears to be part of a broader undisclosed settlement.

20. Under section 702 of the Bankruptcy Code, creditors may elect to replace the interim FBG Trustee at the Section 341 Meeting. Thus, the interim FBG Trustee could potentially be replaced one day after the Proposed Stipulation is entered. If this occurs, any permanent chapter 7 trustee will be deprived of a say in relief that may critically shape the future of these cases. Accordingly, the Court should defer any ruling until a permanent trustee is selected, and that individual has a chance to weigh in on the Proposed Stipulation.

21. Further, as noted above, this rushed Proposed Stipulation is presented as one piece of a larger settlement and financing proposal with the Ad Hoc Group. The Court should consider it alongside the larger settlement and should not strip the FBG Estates of their cash before evaluating the larger settlement, including the Ad Hoc Group's financing proposal.

## RESERVATION OF RIGHTS

22. This Objection is submitted without prejudice to, and with a full reservation of, Onset's rights, claims, defenses, and remedies, including its rights to supplement or amend this Objection, to seek discovery, to present evidence and examine witnesses at any hearing on the Proposed Stipulation, and to object to any revised stipulation, motion, or proposed order. Nothing herein constitutes a consent to the use, sweep, or application of any cash or property in which Onset asserts an interest, or a waiver of any right, all of which are expressly reserved.

## CONCLUSION

23. Onset respectfully requests that the Court decline to enter the Proposed Stipulation or at least defer ruling on it until (1) it is clarified which accounts and the amounts from such

accounts that are being swept and which are not, (2) the broader settlement with the Ad Hoc Group and proposed financing terms are disclosed, and (3) a permanent trustee is appointed.

[*Remainder of page intentionally left blank*]

Dated: October 25, 2026
Houston, Texas

**MUNSCH HARDT KOPF & HARR, PC**

*<u>/s/ Deborah M. Perry</u>*
Deborah M. Perry
Texas Bar No. 24002755
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com

-and-

**MORRISON & FOERSTER LLP**
James Newton (admitted *pro hac vice*)
Ben Butterfield (admitted *pro hac vice*)
Bryan Kotliar (admitted *pro hac vice*)
250 West 55th Street
New York, NY 10019
Email: ccohen@mofo.com
Email: jnewton@mofo.com
Email: bbutterfield@mofo.com
Email: bkotliar@mofo.com

-and-

**MORRISON & FOERSTER LLP**
Anthony S. Fiotto (admitted *pro hac vice*)
Julia C. Koch (admitted *pro hac vice*)
200 Clarendon Street
Boston, MA 02116
Email: afiotto@mofo.com
Email: jkoch@mofo.com

-and-

**MORRISON & FOERSTER LLP**
Brian R. Michael (admitted *pro hac vice*)
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Email: bmichael@mofo.com

-and-

**MILBANK LLP**
Dennis F. Dunne (admitted *pro hac vice*)

Case 25-90399 Document 398 Filed in TXSB on 11/25/25 Page 12 of 13

Lisa Laukitis (admitted *pro hac vice*)
Jason Kestecher (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5858
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
Email: llaukitis@milbank.com
Email: jkestecher@milbank.com

-and-

**MILBANK LLP**
Andrew M. Leblanc (admitted *pro hac vice*)
Erin E. Dexter (admitted *pro hac vice*)
1101 New York Avenue NW,
Washington, DC 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586
Email: aleblanc@milbank.com
Email: edexter@milbank.com

*Attorneys for Onset Financial, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy of the foregoing was filed on this 25th day of October 2026, with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

/s/ *Deborah M. Perry*
Deborah M. Perry