**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 7** |
| | § | **(Previously Chapter 11)** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**ALVAREZ & MARSAL NORTH AMERICA, LLC'S OBJECTION TO CHAPTER 7 TRUSTEES RONALD J. SOMMERS'S AND CATHERINE S. CURTIS'S EMERGENCY MOTION TO EXTEND DEADLINE TO OBJECT TO THE FOURTH INTERIM AND FINAL FEE APPLICATION OF ALVAREZ AND MARSAL NORTH AMERICA, LLC, AS FINANCIAL ADVISOR TO THE CHAPTER 11 DEBTORS**
**[Relates to Docket No. 4080]**

Alvarez & Marsal North America, LLC ("**A&M**"), by and through its undersigned counsel, hereby files this objection (this "**Objection**") to the *Chapter 7 Trustees Ronald J. Sommers's and Catherine S. Curtis's Emergency Motion to Extend Deadline to Object to the Fourth Interim and Final Fee Application of Alvarez and Marsal North America, LLC, as Financial Advisor to the Chapter 11 Debtors* [Docket No. 4080] (the "**Motion**"),[2] and requests entry of an order,

---

[1] A complete list of the Debtors in these chapter 7 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for the chapter 7 estates of Viceroy Private Capital, LLC, First Brands Group Holdings, LLC ("**FBGH**"), and FBGH's Debtor subsidiaries is Eva Engelhart, Chapter 7 Trustee c/o Porter Hedges LLP, Joshua W. Wolfshohl, 1000 Main St., 36th Floor, Houston, Texas 77002. The service address for the chapter 7 estates of Global Assets LLC, Global Lease Assets Holdings, LLC, Carnaby Capital Holdings, LLC, Broad Street Financial Holdings, LLC, Broad Street Financial, LLC, Carnaby Inventory II, LLC, Carnaby Inventory Holdings II, LLC, Carnaby Inventory III, LLC, Carnaby Inventory Holdings III, LLC, Carnaby Capital, LLC, Global Assets GmbH, and Eagle Casting Holdings, LLC is Ronald J. Sommers, Chapter 7 Trustee c/o Jones Murray LLP, Erin E. Jones, 602 Sawyer, Suite 400 Houston, Texas 77007. The service address for the chapter 7 estates of Carnaby IV, LLC, Carnaby IV Holdings, LLC, Carnaby FA, LLC, and Carnaby FA Holdings LLC is Catherine Stone Curtis, McGinnis Lochridge P.O. BOX 720788, McAllen, Texas 78504.

[2] Capitalized terms used, but not defined herein, have the meaning assigned in the Application, the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 608] (the "**Final DIP Order**"), the *Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* [Docket No. 3748] (the "**Conversion Order**"), the *Fourth Interim and Final Fee Application of Alvarez & Marsal North America, LLC, as Financial Advisor to the Chapter 11 Debtors* (the "**Final Fee Application**"), or the Motion, as applicable.

substantially in the form attached hereto (the "**Proposed Order**"), denying the Motion. In support of this Objection, A&M respectfully states as follows:

## PRELIMINARY STATEMENT AND CORRECTION OF THE RECORD

1. As the Motion itself acknowledges, A&M informed the Trustees that A&M: (i) had, in accordance with the Final DIP Order and the Interim Compensation Procedures Order, previously allocated, through its monthly fee statements, approximately $2 million of A&M's fees and expenses to the non-DIP Loan Parties; and (ii) seeks payment of its allowed fees and expenses solely from the Professional Fees Escrow Account—not from any of the Converting Debtors' chapter 7 bankruptcy estates—which is an escrow account comprised of funds that are "held in trust for and ***exclusively available for the payment of fees and expenses of Professional Persons*** …." Final DIP Order, ¶ 7(c) (emphasis added).

2. The Motion is replete with rhetoric that attempts to create a false narrative that A&M is, somehow, "thumbing its nose at this Court's orders …." The Trustees' assertions are absurd and devoid of merit. A&M has fully complied with all applicable orders of the Court in allocating its fees, including, but not limited to, the Final DIP Order, the Interim Compensation Procedures Order,[3] the A&M Retention Order,[4] and the Conversion Order. This is not about failing to comply with any orders, it is a disagreement over what the orders say. The Trustees simply disagree that A&M allocated its fees appropriately based on the Trustees' incorrect interpretation of the Conversion Order, an interpretation that would render qualifying language in the Conversion Order superfluous.

3. The Trustees' resort to mud-slinging tactics is unsurprising because the Trustees, presumably, realize that it is hard to fathom that cause exists, much less any purported

---

[3] "**Interim Compensation Procedures Order**" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 669].

[4] "**A&M Retention Order**" means the *Order (I) Authorizing the Debtors to (A) Retain and Employ Alvarez & Marsal North America, LLC, (B) Designate Certain Executive Officers, and (C) Engage Additional Personnel, and (II) Granting Related Relief* [Docket No. 896].

"emergency", that warrants the Court granting the Trustees a further eighteen (18) day extension of their deadline to object to A&M's Final Fee Application in light of the fact that by November 16, 2026, at 5:00 p.m. (prevailing Central Time) (the "**Current Objection Deadline**") the Trustees will have had over ***forty-three (43) days*** to object to A&M's Final Fee Application (inclusive of the ***twenty-two (22) day*** extension A&M previously gave the Trustees). The Trustees suggest that they have been unable to make use of the forty-three day objection period because they have not received an answer from A&M regarding whether A&M was allocating any of its fees and expenses to the Chapter 7 SPV Debtors' estates. Not so.

4. As set forth above, A&M unequivocally informed the Trustees that approximately $2 million of its fees had previously been allocated, through A&M's monthly fee statements, to the non-DIP Loan Parties. The Trustees simply dislike the direct answer they were given because A&M and the Trustees disagree over what the Conversion Order requires. The Trustees cannot manufacture cause to further extend the Current Objection Deadline simply because they received what they believe to be unsatisfactory answers and then chose to sit on their hands until the eleventh-hour. The Motion is just the latest in a long-line of so-called "emergencies" attributable to the Trustees' own inaction.

5. A&M submits that: (i) the Court should deny emergency consideration of the Motion because the Motion is procedurally deficient, and, in any event, the Trustees cannot rely on their own inaction to manufacture an emergency; and (ii) irrespective of whether the Court grants emergency consideration, the Motion should be denied on the merits.

## OBJECTION

### I. Emergency Consideration Should Be Denied

6. The Court should deny emergency consideration because: (i) the Motion is procedurally deficient by virtue of its failure to comply with the Bankruptcy Local Rules; and (ii) the Trustees cannot manufacture an emergency based on their own inaction.

**A. The Motion Does Not Comply with the Bankruptcy Local Rules**

7. Bankruptcy Local Rule 9013-1(i) expressly requires three things for an emergency motion: (i) the motion must contain the word "Emergency" in its title; (ii) the motion must include "a detailed statement why an emergency exists, and the date relief is needed to avoid the consequences of the emergency", and (iii) in addition to the language required by Bankruptcy Local Rule 9013-1(b), the movant must include the following language in the notice block:

> Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.

BLR 9013-1(i). The notice block contained in the Motion does not include any of this language, instead it reads as follows:

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST <u>FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU</u>. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A <u>TIMELY</u> RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Motion, p. 1 (underlined emphases added).

8. The language reproduced above is the language required by the Bankruptcy Local Rules for a regular, non-emergency motion. As reflected above, this language expressly states that a response is not due for twenty-one (21) days, and makes clear the relief sought in the Motion

may be granted without further notice to you if you fail to file a ***timely*** response ("timely" being the twenty-one day period expressly stated in the notice block). Thus, ironically, the Trustees themselves are content to thumb their noses at the requirements of the Bankruptcy Local Rules, while simultaneously leveling meritless assertions that A&M has failed to comply with the Court's orders.

9. The Bankruptcy Local Rules provide parties the ability to seek relief on an emergency basis, but parties must, at a minimum, comply with the procedures set forth in the Bankruptcy Local Rules to avail themselves of this privilege. The Court, for this reason alone, should deny emergency consideration.

**B. The Only "Emergency" Is One of the Trustees Own Making**

10. Emergency consideration should also be denied because if any "emergency" exists, then it is one of the Trustees own making. The Conversion Order, in keeping with the Bankruptcy Local Rules, afforded parties in interest twenty-one (21) days to file and serve objections to the Final Fee Application. *See* Conversion Order, ¶ 2(a)(ii) ("Objections, if any, to a Final Fee Application shall be filed and served by no later than twenty-one (21) days after the date of filing of such Final Fee Application, which may be extended by the applicable Professional Person or by further order of the Court."). The Final Fee Application was filed and served on October 4, 2026, thus the objection deadline, absent an extension, was originally set to run on October 26, 2026. A&M voluntarily granted the Trustees an extension of that deadline for an additional twenty-two (22) days, thus the Trustees will, by the time of the Current Objection Deadline, have had over ***forty-three (43) days*** to file and serve an objection to the Final Fee Application.

11. The Trustees, nonetheless, waited over thirty-nine (39) days—eighteen (18) days longer than the standard objection period—to file the Motion through which they claim an "emergency" exists that necessitates a further eighteen (18) day extension of the Current Objection Deadline. There is no emergency. Instead, the Trustees improperly attempt to manufacture an

emergency out of their own ***choice*** to sit on their hands for thirty-nine (39) days. The Trustees attempt to deflect the blame from themselves by making noise about A&M's purported failure to provide them an answer about whether A&M was allocating any of its fees to the Chapter 7 SPV Debtors' estates. The Motion itself makes clear that is false.

12. The Motion correctly acknowledges that A&M, through its counsel, informed the Trustees on November 6, 2026, that "the amount allocated to the Non-DIP Loan Parties is approximately $2 million. As you know, the Non-DIP Loan Parties are the SPV debtors." Motion, ¶ 14. As part of that same response A&M, through its counsel, also unequivocally informed the Trustees that "A&M's allowed fees will be paid from the Professional Fee Escrow which was funded by the DIP Lenders." *Id.* The Trustees ignore that fact by contending that A&M's answer was somehow "non-responsive," based on the Trustees' own erroneous interpretation of the Conversion Order. The Trustees cannot justify a decision to sit on their hands and do nothing based on their own self-serving characterization of A&M's answer based on the Trustees' interpretation of the Conversion Order—an interpretation that A&M informed the Trustees that it disagrees with.

13. In sum, the Trustees would have the Court find an emergency exists that warrants taking up the Motion—filed late in the evening on November 12, 2026, just ***four*** (4) days before the Current Objection Deadline—because the Trustees:

(i) are unsatisfied with A&M's express statement that through its prior fee statements it had allocated approximately $2 million of its fees to the Chapter 7 SPV Debtors;

(ii) chose to sit on their hands as they purportedly continued to receive non-responsive answers for weeks instead of, in accordance with their fiduciary duties, taking action to ensure that they either (a) obtained clarity from the Court on what the Conversion Order required the Final Fee Application to include or (b) asserted a timely objection (an objection that could simply have objected to the Final Fee Application based on the Trustees' own erroneous interpretation of the Conversion Order); and

(iii) evidently have failed to prepare an objection (or are unable to complete one by the Current Objection Deadline) to the Final Fee Application and now beseech the Court to rescue them from the consequences of their short-sighed decisions and

> failure to take prudent action to purportedly "avoid prejudicing the Chapter 7 SPV Debtors' causes of action against A&M."

14. The Trustees poor planning and failure to take prudent action does not constitute an emergency. The Court should deny emergency consideration.

## II. The Final Fee Application Complies With the Conversion Order and the Trustees' Interpretation of the Conversion Order Is Erroneous

15. The Trustees contend that the Conversion Order requires A&M to specifically allocate its fees to each individual Debtor, including each of the Chapter 7 SPV Debtors. The Trustees support that contention by claiming "[t]he conversion Order expressly required A&M and the other estate professionals to 'identify fees and expenses between and among the specific Debtor entities.'" Motion, ¶ 26 (quoting Conversion Order, ¶ 2(a)(v)). The Trustees conveniently omit the qualifying language that precedes the language quoted in the Conversion Order. A complete reading of the plain language of the Conversion Order dooms the Trustees' interpretation.

16. Paragraph 2(a)(v) of the Conversion Order provides that:

> All rights as between any Trustee, the Debtors, the Converting Debtors, and each of their estates are expressly reserved with respect to allocation or reimbursement of Allowed Professional Fees. ***In accordance with the Interim Compensation Procedures Order and retention agreements approved by this Court***, Final Fee Applications, Monthly Statements, and Interim Fee Applications shall identify fees and expenses amongst the specific Debtor entities.

Conversion Order, ¶ 2(a)(v) (emphasis added). Thus, the language the Trustees make much ado about is ***expressly*** qualified by the terms of the Interim Compensation Procedures Order and the A&M Retention Order.

17. The Interim Compensation Procedures Order, in turn, provides that:

> Each Retained Professional ***shall record/track its time such that an allocation of fees incurred by or on behalf of the DIP Loan Parties (as defined in the DIP Orders) and fees incurred by or on behalf of the non-DIP Loan Parties <u>may be determined</u>***. The DIP Secured Parties, the Prepetition Secured Parties (each as defined in the DIP Orders), the Creditors' Committee, and the Debtors each reserve all

> rights with respect to any allocations of fees and expenses of Retained Professionals until final allowance by this Court.

Interim Compensation Procedures Order, ¶ 6 (emphases added). Identical language appears in the A&M Retention Order. *See* A&M Retention Order, ¶ 17. Moreover, the A&M Retention Order expressly provides that "[t]he relief granted herein ***shall be binding*** … ***upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases***." *Id.* at ¶ 9 (emphases added).

18. Against that backdrop, it is clear that the Trustee's interpretation of the Conversion Order must be rejected. The requirement that the Final Fee Application "identify fees and expenses amongst the specific Debtor entities" is qualified by the phrase "[i]n accordance with the Interim Compensation Procedures Order and retention agreements approved by this Court". The phrase "in accordance with" means "in a way that agrees with or follows (something, such as a rule or request)".[5] Thus, the language the Trustees rely on must be interpreted in a way that agrees with the Interim Compensation Procedures Order and the A&M Retention Order. As set forth above, both the Interim Compensation Procedures Order and the A&M Retention Order make clear that the allocation required of A&M was between the DIP Loan Parties and the non-DIP Loan Parties. That is precisely what A&M did and what A&M told the Trustees.

19. A&M's interpretation of the relevant language in the Conversion Order is also bolstered by the Final DIP Order (pursuant to which the Professional Fees Escrow Account, which A&M seeks payments of its allowed fees and expenses from, was established). The Final DIP Order provided for the Professional Fees Escrow Account[6] to be funded in accordance with the procedure set forth in paragraph 7(d) of the Final DIP Order pursuant to which professionals

---

[5] *See* Merriam-Webster Online Dictionary (https://www.meriam-webster.com/dictionary/in%20accordance%20with) (last visited November 13, 2026).

[6] The Final DIP Order also provides, as noted above, that the Professional Fees Escrow Account would "function as a segregated account held in trust for an exclusively available for the payment of fees and expenses of Professional Persons." Final DIP Order, ¶ 7(c).

provided the DIP Agent "Weekly Statements" (containing good-faith estimates of accrued but unpaid fees for the applicable professional). Paragraph 7(e) of the Final DIP Order mandated—consistent with the Interim Compensation Procedures Order and the A&M Retention Order—that such Weekly Statements "include an allocation for all Professional Persons ***segregating fees and expenses incurred by or on behalf of the DIP Loan Parties and fees and expenses incurred by or on behalf of the non-DIP Loan Parties***." *Id.* at ¶ 7(e) (emphases added).

20. The Trustees' erroneous interpretation of that language in the Conversion Order would render the qualifying language "[i]n accordance with the Interim Compensation Procedures Order and retention agreements approved by this Court" superfluous. Such an interpretation flies in the face of the surplusage canon routinely applied by courts and, accordingly, should be rejected. *See Williams v. Taylor*, 529 U.S. 363, 404 (2000) (stating that it is "a cardinal principle of statutory construction that we must give effect, if possible, to every word clause and word of a statute.") (internal citation and quotation marks omitted); *The New Nat'l Gypsum Co. v. The Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 219 F.3d 478, 489 (5th Cir. 2000) (concluding in connection with appeal regarding proper interpretation of a confirmation order that, "[p]roper textual interpretation does not allow us to ignore those statements or to adopt an 'implicit' meaning that would render all these provisions meaningless ….").

21. Accordingly, the Court should enter the Proposed Order sustaining this Objection and denying the Motion because the substantive basis for the requested extension in the Motion is premised on an erroneous interpretation of the Conversion Order.

[*Remainder of page intentionally left blank.*]

**WHEREFORE**, A&M respectfully requests that the Court enter the Proposed Order sustaining the Objection and denying the Motion and granting such other and further relief as may be just and proper.

Dated: November 13, 2026

Respectfully submitted,

*/s/ Timothy A. ("Tad") Davidson II*

**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Brandon Bell (Texas Bar No. 24127019)
Timothy R. Powell (Texas Bar No. 24119198)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone: (713) 220-4200
Email: taddavidson@hunton.com
bbell@hunton.com
tpowell@hunton.com

*Counsel to Alvarez and Marsal North America, LLC*

**CERTIFICATE OF SERVICE**

I certify that on November 13, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

*/s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II