**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 7** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| | § | |
| **Debtors.**[1] | § | |

**CARNABY SECURED LENDERS' OBJECTION TO FINAL FEE APPLICATIONS OF WEIL, GOTSHAL & MANGES LLP AND ALVAREZ & MARSAL NORTH AMERICA, LLC**

**[Relates to ECF Nos. 3860 and 3926]**

The Carnaby Secured Lenders,[2] by and through their undersigned counsel, hereby respectfully submit this objection (the "Objection") to the *Fourth Interim and Final Fee Application of Weil, Gotshal & Manges LLP, Attorneys for the Debtors, for (I) Interim*

---

[1] A complete list of the Debtors in these chapter 7 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The service address for the chapter 7 estates of Viceroy Private Capital, LLC, First Brands Group Holdings, LLC ("FBGH"), and FBGH's Debtor subsidiaries (together with FBGH, the "FBG Debtors") is Eva Engelhart, Chapter 7 Trustee c/o Porter Hedges LLP, Joshua W. Wolfshohl, 1000 Main St., 36th Floor, Houston, Texas 77002. The service address for the chapter 7 estates of Global Assets LLC, Global Lease Assets Holdings, LLC, Carnaby Capital Holdings, LLC, Broad Street Financial Holdings, LLC, Broad Street Financial, LLC, Carnaby Inventory II, LLC, Carnaby Inventory Holdings II, LLC, Carnaby Inventory III, LLC, Carnaby Inventory Holdings III, LLC, and Global Assets GmbH is Ronald J. Sommers, Chapter 7 Trustee c/o Jones Murray LLP, Erin E. Jones, 602 Sawyer, Suite 400 Houston, Texas 77007. The service address for the chapter 7 estates of Carnaby Capital, LLC, Eagle Casting Holdings, LLC, Carnaby IV, LLC, Carnaby IV Holdings, LLC, Carnaby FA, LLC, and Carnaby FA Holdings LLC is Catherine Stone Curtis, P.O. BOX 720788, McAllen, Texas 78504.

[2] The "Carnaby Secured Lenders" are the Lenders under that certain credit agreement entered into by Carnaby Inventory II, LLC as Borrower First Brands Group, LLC ("FBG"), as the Servicer, First Brands Group Holdings, LLC ("FB Holdings") and Carnaby Inventory Holdings II, LLC, as Guarantors, the Carnaby Secured Lenders party thereto from time to time, and GLAS Trust Company LLC, as Administrative Agent. dated as of May 31, 2022 (the "Carnaby II Credit Agreement") and that certain credit agreement entered into by Carnaby Inventory III, LLC as Borrower FBG, as the Servicer, FB Holdings and Carnaby Inventory Holdings III, LLC, as Guarantors, the Carnaby Secured Lenders party thereto from time to time, and GLAS Trust Company LLC, as Administrative Agent dated as of July 6, 2022 (the "Carnaby III Credit Agreement").

*Compensation Period From July 1, 2026 Through and Including August 31, 2026 and (II) Final Compensation Period From September 29, 2025 Through and Including August 31, 2026* [ECF No. 3926] (the "Weil Application") and the *Fourth Interim and Final Fee Application of Alvarez & Marsal North America, LLC, as Financial Advisor to Chapter 11 Debtors* [ECF No. 3860] (the "A&M Application" and, together with the Weil Application, the "Final Fee Applications").

**OBJECTION**

1. The Court's *Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* [ECF No. 3748] (the "Conversion Order") requires that final fee applications "identify fees and expenses between and among the specific Debtor entities." Conversion Order ¶ 2(a)(v). The *Order Establishing Procedures for Interim Compensation* and *Reimbursement of Expenses for Professionals* [ECF No. 699] (the "Interim Compensation Order") likewise requires professionals to track time so that fees incurred by or on behalf of DIP Loan Parties and non-DIP Loan Parties (as each are defined in the Interim Compensation Order) may be determined. Interim Compensation Order ¶ 6. Compliance with the Conversion Order's allocation requirement is a necessary condition to approval of the Final Fee Applications. Absent an estate-specific allocation and supporting information, the Carnaby Secured Lenders and other parties in interest cannot assess whether charges proposed against a particular estate represent actual, necessary, and reasonable services and expenses for that estate. *See* Fed. R. Bankr. P. 2016(a)(1)(C) (requiring final fee application to show "the source of the paid or promised compensation"); *In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 698 (Bankr. S.D. Tex. 2009) (attorneys' fees of jointly administered, but not substantively consolidated, debtors must allocated to reflect services rendered to each debtor).

2. Although the Weil Application attempts some allocation by estimating that $149,449,345.75 in fees relate to services rendered to or for the benefit of DIP Loan Parties and $13,837,310.50 relate to services rendered to non-DIP Loan Parties, Weil Application ¶ 37, this aggregate estimated split provides no information regarding which specific SPV Debtors Weil asserts are liable for its fees, what specific amounts Weil asserts are chargeable to such SPV Debtors, or the basis for any such estate-specific allocation. Nor does it allocate Weil's requested $1,618,428.39 in final-period expenses among the specific Debtor entities. The expense summary instead groups disbursements by expense category, not by the estate for whose benefit they were incurred. *See id.* ¶ 39 & Ex. E (Final Compensation Period Expense Summary). An aggregate estimate of fees for non-DIP Loan Parties is not a substitute for the required allocation of both fees and expenses among the individual estates.

3. Weil's task-code methodology also includes work Weil performed for FBG against the interests asserted by the SPV Debtors and their creditors. Weil identifies task codes 004, 009, 017, 028, and 042 as containing the fees attributed to non-DIP Loan Parties. Weil Application ¶ 37 n.12. Yet under "CarVal Matters" (Task Code 009), Weil includes work opposing the Carnaby Secured Lenders' stay-relief motion, supporting the Debtors' request to use alleged cash collateral of the Carnaby Secured Lenders, and opposing the motion to dismiss the Carnaby II and III Debtors' (as defined below) cases, appoint a trustee, or grant adequate protection. *Id.* at 46. Such oppositions—which included allegations that the SPV Debtors might not own the Carnaby Secured Lenders' collateral—were done to benefit the FBG Debtors and not the SPV Debtors. Merely labeling these services as relating to a particular SPV or its lenders does nothing to establish that they were rendered on behalf of, or were actual and necessary services for, the SPV estate to which they might later be charged.

4. The same problem is apparent in "Evolution Matters" (Task Code 017). Weil includes work opposing Evolution's motion to compel segregation and turnover of postpetition accounts receivable, which the chapter 7 trustee for Evolution's SPV borrowers supported, and preparing FBG's and A&M's objection to the chapter 7 trustee's motion to compel turnover of estate property, books, and records and their cross-motion to quash Rule 2004 subpoenas. Weil App. at 26–27; *see also Joinder of SPV Debtors' Trustee Ronald Sommers in Evolution's Emergency Motion to Compel Segregation and Turnover of Post-Petition Accounts Receivable Collected* [ECF No. 3151] ¶¶ 1–5; *Joinder of Chapter 7 SPV Debtors' Trustee Ronald Sommers in Evolution Credit Partners's Emergency Motion to Compel Turnover and Deposit of Disputed Post-Petition Accounts Receivable Proceeds into the Court Registry* [ECF No. 3799] ¶¶ 1–6. These examples underscore why work *concerning* an SPV is not necessarily work *for* that SPV.

5. The Carnaby Secured Lenders object to any allocation to the estates of Carnaby Inventory II, LLC, Carnaby Inventory Holdings II, LLC, Carnaby Inventory III, LLC, and Carnaby Inventory Holdings III, LLC (collectively, the "Carnaby II and III Debtors") of fees or expenses incurred to advance FBG's interests against those estates. At a minimum, Weil must distinguish such adverse work from services it purports to have actually rendered *for* each estate and substantiate the basis for charging that estate; its task-code labels do not make that showing.

6. Weil's proposed order also purports to preserve claims by the FBG Debtors' estates and the DIP Secured Parties against other parties for reimbursement of amounts incurred by non-DIP Loan Parties and paid to Weil, as well as surcharge or other rights against non-DIP estates and their lenders. Weil Application, proposed order ¶ 4. The applicants and proposed reimbursement claimants should not, however, obtain a final fee award now while postponing the required estate-specific showing and shifting the burden to the SPV estates and their creditors in

later reimbursement litigation. By failing to identify which SPV Debtors, if any, they seek compensation from, and by failing to specify the amount allocable to each SPV Debtor, the above-listed applicants have failed to carry their burden of showing that any fees allocable to the SPV Debtors' estates are for services actually performed, are reasonable, or are necessary. 11 U.S.C. § 330(a)(1); *see also Matter of U.S. Golf Corp.*, 639 F.2d 1197, 1207 (5th Cir. 1981) (burden on the fee claimant). Weil has therefore waived its right to seek compensation from the Carnaby II and III Debtors' estates. *See Matter of Evangeline Ref. Co.*, 890 F.2d 1312, 1327 n.19 (5th Cir. 1989) (where application provides enough information to "establish that some fees and expenses are actual, necessary and reasonable but" not others, "the court should only award compensation to the extent that it is proven to be actual, necessary and reasonable").

7. The same arguments apply to A&M's fees and expenses against the Carnaby II and III Debtors' estates. A&M seeks final allowance of $87,478,274.50 in compensation and $1,635,329.04 in expenses. A&M Application ¶¶ 3, 17. Its final-period fee summary distinguishes certain "DIP Debtor," "Non DIP Debtor," and non-Debtor work, but those broad classifications do not identify the amount chargeable to each individual SPV estate, including each of the Carnaby II and III Debtors' estates.

8. For example, the summary includes $185,342.50 for "Litigation - Non DIP Debtor," $507,691.50 for "DIP Financing & Cash Flow - Non DIP Debtor," and $646,635.00 for "Tax - Non DIP Debtor," without allocating those amounts among the particular SPV Debtors. *Id.* ¶ 18 (task-category summary). A&M is subject to the requirements of the Conversion Order and Interim Compensation Order and cannot charge those estates, directly or indirectly, without identifying and substantiating the services and expenses attributable to each estate. The need for that showing is particularly acute because the chapter 7 trustee has disputed positions advanced by

FBG and A&M concerning ownership of SPV inventory and associated receivables, and Weil's own application describes litigation undertaken for FBG and A&M in opposition to the chapter 7 trustee's turnover requests. *See* ECF No. 3151 ¶¶ 3–9; Weil App. at 27. Any distinction that A&M makes between DIP Debtor and Non-DIP Debtor work does not satisfy the Conversion Order's separate requirement to identify fees and expenses between and among the specific Debtor entities, or establish that the services were actual, necessary, and reasonable for the particular estate to be charged.

9. A&M's expense presentation likewise does not provide the required estate-specific allocation. A&M describes $1,540,828.17 in financial-advisory expenses and an additional $94,500.87 for legal services provided to A&M by Hunton Andrews Kurth LLP, while Exhibit G summarizes expenses by categories such as airfare, lodging, investigation data gathering, and legal fees, rather than by the estate to be charged. A&M App. ¶ 33 & Ex. G. These disclosures do not establish what amount, if any, is asserted to be chargeable to each of the Carnaby II and III Debtors. A&M's proposed order would nevertheless allow the requested compensation and expenses on a final basis and authorize payment by the "Debtors" without specifying the liable estates. *Id.* Ex. A ¶¶ 1–3.

10. Accordingly, none of A&M's requested fees and expenses should be allowed against the Carnaby II and III Debtors' estates.

## RESERVATION OF RIGHTS

11. This Objection is submitted without prejudice to, and with a full reservation of, the Carnaby Secured Lenders' rights, including to supplement, amend, or otherwise modify this Joinder; to assert additional objections to the Final Fee Applications, any supplements thereto, or any other professional's fee application; and to challenge any proposed allocation, estate-specific

allowance, reimbursement, surcharge, or payment of fees or expenses, including the necessity, reasonableness, and benefit to the estate of the underlying services and expenses. Nothing herein constitutes an admission that any fees or expenses are chargeable to the Carnaby II and III Debtors or their estates, or a waiver of any rights, remedies, claims, defenses, or objections, all of which are expressly reserved.

## CONCLUSION

12. For the foregoing reasons, the Carnaby Secured Lenders respectfully request that the Court (i) deny the Final Fee Applications to the extent they would permit a party to seek reimbursement of fees and/or expenses from the Carnaby II and III Debtors' estates in the future; (ii) omit any reservation of rights language from any order entered pursuant to the Final Fee Applications;[3] and (iii) enter an order finding that the applicants who submitted the Final Fee Applications have waived their right to seek compensation from the Carnaby II and III Debtors' estates.

[*Remainder of Page Left Intentionally Blank*]

[3] The proposed order granting the A&M Application does not contain an express reservation of reimbursement or surcharge claims.

Dated: November 16, 2026

Respectfully submitted,

*/s/ Allan S. Brilliant*

Allan S. Brilliant (admitted *pro hac vice*)
Gary J. Mennitt (admitted *pro hac vice*)
Stephen M. Wolpert (admitted *pro hac vice*)
Eric O. Hilmo (admitted *pro hac vice*)
**DECHERT LLP**
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Email: allan.brilliant@dechert.com
gary.mennitt@dechert.com
stephen.wolpert@dechert.com
eric.hilmo@dechert.com

***Counsel to the Carnaby Secured Lenders***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was duly served by electronic transmission to all registered ECF users appearing in the case on November 16, 2026.

*/s/ Allan S. Brilliant*
Allan S. Brilliant