**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Case No. 25-90399 (CML) |
| FIRST BRANDS GROUP, LLC, *et al.*[1] | Chapter 7 |
| Debtors. | Jointly Administered |

**ENGIE RESOURCES LLC'S MOTION FOR ALLOWANCE**
**OF ADMINISTRATIVE EXPENSE CLAIM UNDER 11 U.S.C. § 503(b)(1)(A)**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE CHRISTOPHER M. LOPEZ,**
**UNITED STATES BANKRUPTCY JUDGE:**

ENGIE Resources LLC ("***ENGIE***") moves for allowance of an administrative expense claim under 11 U.S.C. § 503(b)(1)(A) (the "***Motion***") and states:

## SUMMARY OF RELIEF REQUESTED

1. ENGIE asks the Court to allow it an administrative expense claim of $779,483.67 (the "***Administrative Claim***") against the estate of Eagle Casting, LLC ("***Eagle Casting***") under § 503(b)(1)(A) of title 11 of the United States Code (the "***Bankruptcy Code***"). The Administrative Claim consists of $718,049.05 in charges for electricity that ENGIE supplied to

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Eagle Casting from September 29, 2025, through April 17, 2026 (the "***Service Charges***"), and $61,434.62 in contractual interest on the unpaid Service Charges through September 1, 2026, the date Eagle Casting's case converted to chapter 7 (the "***Contractual Interest***"). The Administrative Claim includes no pre-petition amounts and no interest on pre-petition amounts.

## JURISDICTION AND VENUE

2. The Court has jurisdiction under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested are 11 U.S.C. §§ 503(a), 503(b)(1)(A), 507(a)(2), and 726(b) (the "***Bankruptcy Code***") and Rules 1019(f), 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

3. This Motion does not ask for relief premised on the adjudication of non-bankruptcy-related issues. As such, the Court is not divested of its ability to enter a final order, and the relief sought herein does not infringe on the U.S. Supreme Court precedent in *Stern v. Marshall*, 564 U.S. 462 (2011).

## BACKGROUND FACTS

4. First Brands Group, LLC filed under chapter 11 on September 28, 2025; Eagle Casting filed on September 29, 2025 (the "***Petition Date***"), in Case No. 25-90491, jointly administered under lead Case No. 25-90399.

5. From the Petition Date until conversion, Eagle Casting operated as a debtor in possession under §§ 1107(a) and 1108 of the Bankruptcy Code.

6. Eagle Casting's case converted to Chapter 7 effective September 1, 2026. *See* the "***Conversion Order***" at Dkt. No. 3748. That day, the United States Trustee appointed Eva S. Engelhart interim chapter 7 trustee. Dkt. No. 3753. No trustee was elected at the October 27,

2026, § 341 meetings, so Ms. Engelhart serves as the permanent trustee (the "***Trustee***"). Dkt. No. 4009; 11 U.S.C. § 702(d).

7. Paragraph 11 of the Conversion Order stayed non-professional chapter 11 administrative-expense applications and tolled applicable deadlines until 45 days after a permanent trustee's qualification and appointment.

8. ENGIE supplied electricity under a Sales Confirmation effective August 17, 2020, incorporating a Master Electric Energy Sales Agreement dated July 3, 2019 (together, the "***Agreement***"). **Exhibit A**. The original customer was Bendix Commercial Vehicle Systems LLC. Service covered Hanover, Pennsylvania locations, including 447 E Middle St, Middle St R, and E Middle St, at a fixed $0.0314 per kWh with monthly capacity settlement from December 1, 2020, through November 30, 2023.

9. ENGIE and Eagle Castings LLC executed an assignment dated June 22, 2023, transferring all assignor rights and liabilities under the Agreement to Eagle Castings LLC (the "***Assignment***"). **Exhibit B**. It lists the assignee's address as 447 East Middle Street, Hanover, Pennsylvania, a federal tax identification number ending in 8804, and First Brands Group email addresses for customer and billing contacts. Eagle Castings LLC signed on June 27, 2023; ENGIE signed on July 13, 2023.

10. ENGIE billed Middle St. R. through Bill Account No. 0000330299 ("***Account 0299***") and 447 E. Middle St. through Bill Account No. 0000330300 ("***Account 0300***"; together, the "***Accounts***"). These service points constitute the "Facility." Each post-petition statement's utility account number matches the last ten digits listed for that service point in the Agreement and Assignment.

11. The Agreement's fixed-price term ended November 30, 2023, but ENGIE continued to supply the Facility. The post-petition statements list a contract-expiration date of

November 30, 2025. Statements for periods ending through December 2025 state that the contract rate applied through the meter-read date on or after November 2025, followed by month-to-month service at a post-term rate. Later statements confirm expiration and continued month-to-month service at a post-term variable rate.

12. **Exhibit C** contains the fourteen ENGIE statements (the "***Statements***") for service from September 29, 2025, through April 17, 2026 (the "***Post-Petition Period***"), with a schedule of the Service Charges and Contractual Interest.

13. The Statements show Service Charges of $603,085.85 on Account 0299 and $114,963.20 on Account 0300, for a total of $718,049.05. Every Statement shows that no payment was received. The first post-petition Statement on each Account excludes the pre-petition balance from the amount due ($365,456.29 on Account 0299 and $48,047.33 on Account 0300). ENGIE does not seek those amounts, or any interest on them, in this Motion.

14. Each Statement states a due date and provides that an overdue balance accrues simple interest at 1.5% per month if payment is not received by that date. The Agreement requires payment within 20 days. Exhibit A, Sales Confirmation at 3. Eagle Casting paid no Statement by its due date or at any time afterward. Calculated at 1.5% per month (18% per year, computed daily) on each Statement's Service Charges from its due date through September 1, 2026, the Contractual Interest totals $61,434.62: $52,141.09 on Account 0299 and $9,293.53 on Account 0300. Exhibit C at 1. The Contractual Interest replaces the late-payment charges shown on the Statements, which ENGIE does not seek separately.

15. The Facility used about 2.76 million kWh during the Post-Petition Period, with use continuing on both Accounts throughout. From the first to last billing period, average daily use fell from 26,420 to 3,496 kWh on Account 0299 and from 3,152 to 2,674 kWh on Account 0300.

16. All electricity was supplied before conversion; the Administrative Claim is therefore a chapter 11 administrative expense. ENGIE does not seek a determination of priority relative to any DIP claim, lien, or other administrative expense.

## ARGUMENTS AND AUTHORITIES

**A. What constitutes a claim under Section 503(b)(1)(A).**

17. Section 503(b)(1)(A) allows the actual, necessary costs of preserving the estate. In order to qualify as an "actual and necessary cost" under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee that benefitted the estate. *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001), see also *Toma Steel Supply, Inc. v. Transamerican Natural Gas Corp. (In the Matter of Transamerican Natural Gas Corp.),* 978 F.2d 1409, 1416 (5th Cir. 1992).

18. A creditor can establish that its expenses are attributable to the actions of the bankruptcy estate through evidence of either a direct request from the debtor in possession or other inducement via the knowing and voluntary post-petition acceptance of desired goods or services. *See Nabors Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.)*, 931 F.3d 432, 443 (5th Cir. 2019)

19. The Administrative Claim arises from post-petition transactions with Eagle Casting. It covers only electricity supplied on and after the Petition Date. After taking assignment pre-petition, Eagle Casting continued drawing power at the Facility as debtor in possession for more than six months, including at the post-term rate after expiration. ENGIE billed each period. Eagle Casting's continued acceptance of service is a post-petition transaction with the estate.

**B. ENGIE provided a benefit to the estate.**

20. The electricity preserved and benefited Eagle Casting's estate. Whether Eagle Casting was producing at the Facility or winding down its operations, it needed ENGIE's electricity to operate, maintain, and protect estate property.

21. The Statements itemize index energy and retail-adder charges per kWh; capacity, transmission, and ancillary-services settlement charges; and Pennsylvania gross receipts and state sales taxes. Capacity and transmission charges equal each Account's assigned kW obligation multiplied by the daily rate and billing days, regardless of consumption.

22. As consumption fell, fixed obligations drove up the effective rate. Account 0299's capacity obligation remained 3,899.68–3,914.69 kW, and its transmission obligation never fell below 2,822.24 kW. In its final billing period, settlement charges were $55,777.39 of $67,413.47 total charges. Its effective rate rose from $0.12953 to $0.57060 per kWh from the first to last post-petition period. Those obligations accrue while the Facility remains connected to the grid, and the estate kept the Facility connected throughout the Post-Petition Period.

**C. The Contractual Interest is part of the Administrative Claim.**

23. Interest that accrues because a debtor in possession fails to pay a post-petition obligation when due is itself an administrative expense. *In re Al Copeland Enters., Inc.*, 991 F.2d 233 (5th Cir. 1993) (holding that interest on post-petition sales taxes the debtor failed to pay when due was an administrative expense). The Eleventh Circuit has applied the same rule to post-petition trade debt, holding that interest accruing during the chapter 11 case shares the administrative priority of the underlying debt. *Varsity Carpet Servs., Inc. v. Richardson (In re Colortex Indus., Inc.)*, 19 F.3d 1371 (11th Cir. 1994), *aff'g* 146 B.R. 881, 887 (N.D. Ga. 1992). Denying interest would turn months of unpaid electricity service into an interest-free loan to the estate. Consistent with *Colortex*, ENGIE calculates the Contractual Interest only through

September 1, 2026, the date of conversion. *See Varsity Carpet Servs.*, 146 B.R. at 888 n.3. If the Court declines to allow the Contractual Interest, ENGIE asks that the Court allow the Service Charges of $718,049.05 as an administrative expense.

24. A pre-conversion administrative-expense request is timely if filed before conversion or within a court-fixed time. Fed. R. Bankr. P. 1019(f)(1).

25. Any distribution remains subject to the Bankruptcy Code's priorities, available funds in Eagle Casting's estate, other allowed administrative expenses, the Conversion Order, and other controlling orders.

**D. Pause on seeking administrative claims.**

26. ENGIE does not seek immediate payment of the Administrative Claim unless allowed by the Court given any pause previously imposed. If the Court lifts that stay or allows or authorizes payment of any other non-professional administrative expense, ENGIE may seek payment of the Administrative Claim on the same terms.

27. This Motion does not determine the allowance, amount, or priority of any pre-petition claim.

**PRAYER**

WHEREFORE, ENGIE Resources LLC respectfully requests that the Court enter an order, substantially in the form filed with this Motion, (i) allowing the $779,483.67 Administrative Claim, consisting of $718,049.05 in Service Charges and $61,434.62 in Contractual Interest, against Eagle Casting's estate under § 503(b)(1)(A), or, alternatively, allowing the Service Charges of $718,049.05 as an administrative expense; and (ii) granting any other relief, at law or in equity, to which ENGIE is entitled.

Dated: November 22, 2026

Respectfully submitted,

**THE LANE LAW FIRM, PLLC**

By: */s/ Matthew W. Bourda*
Matthew W. Bourda
Texas Bar No. 24091948
6200 Savoy Drive, Suite 1150
Houston, TX 77036
Email: matt.bourda@lanelaw.com

*Counsel for ENGIE Resources LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas to all parties registered to receive service. I also certify that on November 22, 2026, a true and correct copy of the foregoing was sent to those parties below via electronic mail.

jwolfshohl@porterhedges.com
eenglish@porterhedges.com
sjohnson@porterhedges.com
gsarda@porterhedges.com
eengelhart@rossbanks.com
clifford.carlson@weil.com
vianey.garza@usdoj.gov
jayson.b.ruff@usdoj.gov
rstark@brownrudnick.com
jjonas@brownrudnick.com
mwinograd@brownrudnick.com
bsilverberg@brownrudnick.com
kaulet@brownrudnick.com
acarty@brownrudnick.com
ecastano@brownrudnick.com
taxelrod@brownrudnick.com
msawyer@brownrudnick.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
iphillips@coleschotz.com

*/s/ Matthew W. Bourda*
Matthew W. Bourda